M. PATRICIA THAYER (SBN 90818)
pthayer@sidley.com
MARC R. ASCOLESE (SBN 251397)
mascolese@sidley.com
SIDLEY AUSTIN LLP
555 California Street
San Francisco, CA 94104
Telephone:   (415) 772-1200
Facsimile:   (415) 772-7400

BRYAN A. ANDERSON (SBN 170666)
bkanderson@sidley.com
SIDLEY AUSTIN LLP
1801 Page Mill Road, Suite 110
Palo Alto, CA 94304
Telephone:   (650) 565-7000
Facsimile:   (650) 565-7100

KATHLEEN D. PATTERSON (SBN 124768)
kpatterson@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:   (415) 773-5700
Facsimile:   (415) 773-5759

Attorneys for Plaintiff
Conceptus, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CONCEPTUS, INC., <br><br> Plaintiff, <br><br> v. <br><br> HOLOGIC, INC., <br><br> Defendant. | Case No. 09-cv-02280-WHA <br><br> **SECOND AMENDED AND SUPPLEMENTAL COMPLAINT FOR PATENT INFRINGEMENT, DECLARATORY JUDGMENT, AND UNFAIR COMPETITION** <br><br> **Jury Trial Demanded** |

Complaint Filed:  May 22, 2009
Trial Date:  February 28, 2011

*William H. Alsup*

Conceptus's Second Amended and Supplemental Complaint for
Patent Infringement, Declaratory Judgment, and Unfair Competition

Case No. 09-cv-02280-WHA

Plaintiff/Counterclaim Defendant Conceptus, Inc. ("Conceptus") brings this action for patent infringement, declaratory judgment of patent infringement, and unfair competition in violation of Lanham Act § 43(a) and California Business & Professions Code §§ 17200 *et. seq.* against Defendant/Counterclaim Plaintiff Hologic, Inc. ("Hologic") as follows:

## JURISDICTION

1. This is an action for patent infringement, declaratory judgment of patent infringement, unfair competition in violation of Lanham Act § 43(a), and unfair competition in violation of California common law and California Business and Professions Code §§ 17200 *et seq.* Jurisdiction is conferred under 28 U.S.C. §§ 1331, 1338, and 1367(a) and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

2. Upon information and belief, this Court has jurisdiction over Hologic because Hologic has transacted and is transacting business and has regularly solicited and is soliciting business in California and specifically in this judicial district and has purposefully availed itself of the jurisdiction of this Court.

## VENUE

3. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400 in that a substantial part of the acts or omissions giving rise to the claims complained of herein occurred or will occur in this judicial district and cause their harm in this district. Hologic will imminently commit and has committed acts of infringement throughout the United States, including California and specifically in this judicial district. Hologic is doing business in this judicial district and is subject to personal jurisdiction in this judicial district.

## THE PARTIES

4. Conceptus is a Delaware corporation with its headquarters and principal place of business located at 331 East Evelyn Avenue, Mountain View, CA 94041.

5. Upon information and belief, Hologic is a Delaware corporation with its headquarters and principal place of business located at 35 Crosby Drive, Bedford, MA 01730.

## BACKGROUND

6. Tubal ligation, commonly referred to as someone having their "tubes tied," is currently the most prevalent form of permanent birth control for women.

7. Tubal ligation involves abdominal incisions via laparotomy, minilaparotomy or laparoscopy to access the fallopian tubes, to sever and seal, or "pinch shut" the tubes in order to prevent pregnancy as shown in Figs. 1(a) and 1(b) below.




8. This traditional incisional approach, however, has known risks normally associated with general anesthesia, post-operative pain, and longer recovery periods than less invasive approaches. As with other surgeries, there are risks involved with the traditional incisional tubal ligation approach, including infection, damage to organs (including bowels, bladder, uterus, ovaries, and nerves), ectopic pregnancy, bleeding, and reaction to anesthetics. Although rare, deaths have also been reported in incisional tubal ligation procedures.

### Conceptus

9. Conceptus, a publicly traded company based in Mountain View, California, was the first to design, develop and obtain FDA approval for a *non-incisional* permanent birth control product – the Essure® permanent birth control system ("Essure System").

10. The Essure System is the only product marketed by Conceptus.

11. Conceptus's patented transcervical / hysteroscopic approach to tubal sterilization offers an alternative for women seeking permanent birth control that does not require general anesthesia and can be performed in an outpatient or office setting instead of an operating

1  room. Presently, more than 50% of Essure procedures are performed in an office setting. The
2  Conceptus Essure system delivers a small flexible device, called a micro-insert, within each of the
3  patient's fallopian tubes, to provide permanent birth control by causing tissue in-growth to help
4  block, or occlude, the fallopian tubes. This approach is illustrated in Figs 2(a)-2(c) below.



12. Until recently, Conceptus's Essure System was the only FDA approved non-incisional permanent birth control alternative to tubal ligation.

13. Since receiving FDA approval in 2002, Conceptus has invested and continues to invest substantial sums of money, time, effort and talent to develop market acceptance for transcervical, hysteroscopic sterilization. For example, Conceptus has hired numerous sales, marketing and manufacturing personnel and has spent hundreds of millions of dollars on developing, marketing and selling its product.

**Patents-In-Suit**

14. On October 21, 2003, United States Patent No. 6,634,361 ("the '361 patent") entitled "Contraceptive Transcervical Fallopian Tube Occlusion Devices and Methods" was duly and legally issued to inventors Julian N. Nikolchev, Dai T. Ton, Ashish Khera, Donnell W. Gurskis, and Steven Bacich. Conceptus is the owner by assignment of all right, title, and interest in the '361 patent. A true and correct copy of the '361 patent is attached as Exhibit 1.

15. On March 24, 2009, United States Patent No. 7,506,650 ("the '650 patent") entitled "Deployment Actuation System For Intrafallopian Contraception" was duly and legally issued to Swann and Roberto Silva-Torres. Conceptus is the owner by assignment of all right, title and interest in the '650 patent. A true and correct copy of the '650 patent is attached as Exhibit 2.

**Hologic**

16. Hologic is a large, diversified diagnostic and medical device company that acquired the Adiana Transcervical Sterilization System ("Adiana System") rather than develop the technology itself. Hologic now seeks to and is entering the hysteroscopic permanent birth control market with the Adiana System.

17. Upon information and belief, the Adiana System was initially developed by Adiana, Inc. ("Adiana").

18. Cytyc Corporation (Cytyc) purchased Adiana in March 2007. Cytyc later merged with Defendant Hologic in October of 2007 to create a reportedly $10 billion company offering a wide array of products in women's health, including breast cancer diagnosis and treatment, cervical cancer screening, treatment of menorrhagia, prenatal testing, and osteoporosis detection.

19. Any and all acts alleged herein to have been committed by Adiana or Cytyc are imputed to Hologic.

20. Upon information and belief, Hologic now employs over 1,200 sales and services professionals and plans to utilize its robust existing sales force to commercialize the Adiana System.

21.	Hologic's Adiana System unlawfully incorporates Conceptus's proprietary and patented technology and infringes the valid and duly issued patents owned by Conceptus, including the Patents-In-Suit.

22.	Upon information and belief, at all times relevant hereto, Hologic was aware of Conceptus's presence and work in developing this market.  In a February 26, 2007 teleconference call with industry analysts, the Chief Financial Officer for Cytyc openly claimed that the company had "the potential to be ahead of Conceptus in terms of market share within a couple of years after commercial launch" of the Adiana System.

23.	On February 1, 2007, Conceptus through its counsel provided written notice to Adiana informing it of Conceptus's patent rights.

24.	On March 16, 2007, Conceptus through its counsel provided written notice to Cytyc informing it of Conceptus's patent rights.

25.	Adiana, Cytyc and Hologic never responded to Conceptus's letters and continued their plan to infringe Conceptus's patents.

26.	Hologic had (and continues to have) actual notice of Conceptus's patent rights.

27.	Upon information and belief, Adiana, Cytyc and Hologic had (and continue to have) actual or constructive notice of the Patents-In-Suit.

28.	Hologic's conduct has been deliberate because, <u>inter alia</u>, it continued its plan to release, and in fact released, its infringing product after receiving notice of Conceptus's patents.

29.	Hologic's conduct is willful, wonton, malicious, with full knowledge of Conceptus's rights, and will continue after service of this complaint unless enjoined.

30.	Hologic's infringing Adiana System is wholly without license from Conceptus or anyone authorized to consent thereto.

31.	Unless restrained by this Court, Hologic's proposed and actual acts and conduct will cause irreparable harm to Conceptus, which cannot be adequately compensated by money damages.  Hologic's proposed and actual conduct deprives Conceptus of its ability to

1  exploit the unique intellectual property represented by the Patents-In-Suit.  Conceptus therefore
2  seeks an injunction prohibiting Hologic from infringing the Patents-In-Suit.

3        32.    The Adiana System and procedure use a catheter which is inserted through
4  the patient's vagina and cervix and into the uterus.

5        33.    The Adiana System's catheter is then positioned inside the patient's
6  fallopian tube using a hysteroscope.

7        34.    The Adiana System's catheter then delivers a so-called "matrix."

8        35.    Tissue will grow into the matrix, creating a blockage, or occlusion, of the
9  fallopian tube.

10        36.    Hologic has engaged in concrete steps to infringe Conceptus's Patents-In-
11  Suit, with the intent to conduct infringing activity.

12        37.    Upon information and belief, Hologic was and is prepared to make, use or
13  sell the Adiana System in the U.S. and to import the Adiana System into the U.S.

14        38.    Upon information and belief, Hologic has hired and/or trained existing
15  personnel, whose duties include marketing and selling the Adiana System in the U.S.

16        39.    On March 3, 2009, the FDA determined that Hologic's Pre-Market
17  Approval Application (PMA) is approvable "subject to inspection of [its] manufacturing facility."

18        40.    On or about July 7, 2009, Hologic received final FDA approval for its
19  Adiana System.

20        41.    Upon information and belief, Hologic imports, offers for sale, sells and
21  markets the Adiana System in the U.S.

22        42.    Since obtaining final approval, Hologic has been and continues to infringe
23  the Patents-In-Suit.

24  **FIRST CAUSE OF ACTION**

25  **(Declaration of Infringement of the '361 patent)**

26        43.    Conceptus incorporates the allegations set forth in the paragraphs above as
27  if fully set forth herein.

28        44.    Upon information and belief, Hologic will literally infringe and/or infringe

Conceptus's Second Amended and Supplemental Complaint for
Patent Infringement, Declaratory Judgment, and Unfair
Competition       6      Case No. 09-cv-02280-WHA

1 under the doctrine of equivalents one of more claims of the '361 patent in violation of 35 U.S.C. § 271 by, without authority, (1) using methods or making, using, importing, offering to sell or selling products that embody the inventions claimed in the '361 patent, and/or (2) actively inducing and/or contributing to others' infringement of the '361 patent.

45. Hologic's infringing acts will be willful, with full knowledge of Conceptus's rights, and will continue as planned after service of this complaint.

46. As a result of Hologic's infringement, Conceptus will suffer damages.

47. Unless Hologic is enjoined by this Court from infringing the '361 patent, Conceptus will suffer irreparable harm and impairment of the value of its patent rights for which there is no adequate remedy at law.

## SECOND CAUSE OF ACTION

### (Infringement of the '361 patent)

48. Conceptus incorporates the allegations set forth in the paragraphs above as if fully set forth herein.

49. Upon information and belief, Hologic literally infringes and/or infringes under the doctrine of equivalents, one or more claims of the '361 patent in violation of 35 U.S.C. § 271 by, without authority, (1) using methods or making, using, importing, offering to sell or selling products that embody the inventions claimed in the '361 patent, and/or (2) actively inducing and/or contributing to others' infringement of the '361 patent.

50. Hologic's infringing acts are willful, with full knowledge of Conceptus's rights.

51. As a result of Hologic's infringement, Conceptus is suffering damages.

52. Unless Hologic is enjoined by this Court from infringing the '361 patent, Conceptus will continue to suffer irreparable harm and impairment of the value of its patent rights for which there is no adequate remedy at law.

## THIRD CAUSE OF ACTION

### (Declaration of Infringement of the '650 patent)

53. Conceptus incorporates the allegations set forth in the paragraphs above as

1  if fully set forth herein.

2  54.    Upon information and belief, Hologic will literally infringe and/or infringe
3  under the doctrine of equivalents one of more claims of the '650 patent in violation of 35 U.S.C.
4  § 271 by, without authority, (1) using methods or making, using, importing, offering to sell or
5  selling products that embody the inventions claimed in the '650 patent, and/or (2) actively
6  inducing and/or contributing to others' infringement of the '650 patent.

7  55.    Hologic's infringing acts will be willful, with full knowledge of
8  Conceptus's rights.

9  56.    As a result of Hologic's infringement, Conceptus is suffering damages.

10  57.    Unless Hologic is enjoined by this Court from infringing the '650 patent,
11  Conceptus will continue to suffer irreparable harm and impairment of the value of its patent rights
12  for which there is no adequate remedy at law.

## FOURTH CAUSE OF ACTION

### (Infringement of the '650 patent)

15  58.    Conceptus incorporates the allegations set forth in the paragraphs above as
16  if fully set forth herein.

17  59.    Upon information and belief, Hologic literally infringes and/or infringes
18  under the doctrine of equivalents, one or more claims of the '650 patent in violation of 35 U.S.C.
19  § 271 by, without authority, (1) using methods or making, using, importing, offering to sell or
20  selling products that embody the inventions claimed in the '650 patent, and/or (2) actively
21  inducing and/or contributing to others' infringement of the '650 patent.

22  60.    Hologic's infringing acts are willful, with full knowledge of Conceptus's
23  rights.

24  61.    As a result of Hologic's infringement, Conceptus is suffering damages.

25  62.    Unless Hologic is enjoined by this Court from infringing the '650 patent,
26  Conceptus will continue to suffer irreparable harm and impairment of the value of its patent rights
27  for which there is no adequate remedy at law.

28

## FIFTH CAUSE OF ACTION

### (Unfair Competition in Violation of Lanham Act §43(a))

63. Conceptus incorporates the allegations set forth in the paragraphs above as if fully set forth herein.

64. Hologic markets, advertises, and offers for sale the Adiana Permanent Contraception device, directed toward permanent female sterilization.

65. Hologic is disparaging Conceptus and its Essure product through a marketing scheme that includes false and misleading representations of fact intended to mislead clinicians and other potential purchasers of Hologic's Adiana device. As specifically alleged below, Hologic's improper marketing scheme involves misrepresenting clinical data concerning Adiana and Essure, providing false and misleading information concerning the side effect profiles of Adiana and Essure, and disseminating inaccurate, false, and/or mischaracterized information comparing Adiana and Essure in a misleading manner.

66. On September 16, 2009, Dr. Peter Heinlein, Chief of Obstetrics and Gynecology of the Kaiser-Permanente Medical Center of San Rafael, California emailed his colleagues to "address the misinformation being presented by the [H]ologic reps," who were marketing Adiana to him and his northern California colleagues following the FDA's approval of Adiana in July, 2009.

67. Dr. Heinlein reported that during Hologic sales representatives were "pushing hard to exaggerate the nickel allergy issue with the Essure device" despite the fact that a nickel allergy was not an exclusion criterion during FDA trials for Essure and despite no reports of that problem by study participants. The exaggeration of a supposed nickel allergy issue by Hologic sales representatives during their summer 2009 campaign to sell Adiana to Kaiser-Permanente unfairly creates a false impression about the potential side effects of Essure.

68. Dr. Heinlein also reported that the Hologic sales representatives presented "placement rate" data in a misleading way by comparing placement data from Adiana's and Essure's FDA trials (94% to 88% respectively) despite the fact that the Essure catheter delivery system has changed since the clinical trials. The subsequent placement rates for Essure have been

established through an FDA post-approval study as 94.6%. This misleading use of obsolete placement rate data by Hologic sales representatives during their summer 2009 campaign to sell Adiana to Kaiser-Permanente unfairly creates a false impression about Essure, and particularly about Essure in comparison with Adiana.

69. Dr. Heinlein reported that the Hologic sales representatives described the "perforations [and] expulsions" data of the Adiana implant in a misleading manner, implying that it does not cause expulsions despite the inefficiency of the only method used to detect placement success and issues such as expulsions, the hystero-salpingogram (HSG) occlusion tests. Because Dr. Heinlein was aware of nine pregnancies where the HSG confirmed occlusion, and because the Adiana polymer is not radio-opaque (and therefore undetectable by HSG), he states that HSG is an unreliable test to confirm or exclude occlusion. Additionally, Hologic sales representatives have made the false and misleading claim that a future benefit of Adiana is the ability to forego HSGs altogether because the mechanism of occlusion happens faster, when in fact pregnancies have resulted even after an HSG supposedly confirmed occlusion.

70. At least during August 2009, Hologic sales representatives in at least the Los Angeles area were distributing marketing collateral to doctors that included a pie chart entitled "Essure Adverse Events." This pie chart contains wedges for a number of specific adverse events, and associates percentages with each that supposedly describe the occurrence rate of the adverse event. This pie chart expressly states that it is based on data from the FDA's Manufacturer and User Facility Device Experience Database (MAUDE). This pie chart violates the FDA's express statement that MAUDE data is "not intended to be used either to evaluate rates of adverse events or to compare adverse event occurrence rates across devices." Hologic's use of MAUDE data to evaluate rates of adverse events for Essure is not only contrary to the FDA's rules and instructions regarding the MAUDE database, it is misleading because the nature of the data does not support it being used to characterize comparative rates.

71. At least during August 2009, the marketing collateral distributed as described in the foregoing paragraph also contained a graphic entitled "Adiana Well Within CREST Range" that purported to depict Adiana clinical success rates. Disseminating this Adiana

data with the "Essure Adverse Events" data creates the false impression that the "adverse events" were a result of head-to-head comparisons with Adiana.

72. In at least one email sent in September, 2009 as a follow-up to a two-day dinner course promoting Adiana to doctors, at least one Hologic sales representative unfairly presented Essure commercial pregnancy data in a misleading fashion relative to Adiana clinical trial pregnancy data. Specifically, the email stated that Essure has over 300 reported pregnancies without explanation of the data while simultaneously explaining the alleged details leading to false positives with the "six" Adiana pregnancies that occurred in the first year of Adiana's clinical trial. Adiana also excludes from the discussion an additional six pregnancies that occurred in years 2-5 using Adiana. This email is part of Hologic's scheme to create the false and misleading impression that Adiana has better efficacy than Essure. On information and belief, the Hologic sales representative that sent the email described herein was Mr. Brian Sackman.

73. In at least the email described in the foregoing paragraph, Hologic sales representatives have misrepresented the clinical data about Adiana as establishing that Adiana does not causing perforations, when in fact perforations that may be caused by the non radio-opaque Adiana matrix cannot be detected. For example, this email's statement that "Adiana has no expulsions, migrations, perforations due to PDA guiding physician" create the misleading impression that Adiana does not cause perforations, migrations or expulsions, where that conclusion cannot be established by the clinical data that Hologic has. Moreover, in at least the this email, Hologic sales representatives have made the false claim that the Adiana procedure is a "visual" procedure, but that the Essure procedure is performed "blind" creating the false and misleading impression that the Essure procedure is riskier. This statement is misleading because placement of Essure is done "visually" by using a small telescope and observing the successful placement by visualizing the number of coils from the implanted device in the uterus, unlike with Adiana, where such "visual" confirmation is not possible. Additionally, confirmation of the placement of Essure is possible radiographically, unlike Adiana. Thus, at least one Hologic sales representative has created a false and misleading impression about the relative merits of Adiana and Essure.

1    74.    In at least February 2010, Hologic caused to be disseminated a "Dear Customer" letter regarding its NovaSure Endometrial Ablation system and the use of that system in patients who have received Essure micro-inserts. Among other things, the "Dear Customer" letter is false and misleading in that it (a) suggests that the FDA has determined that "any thermal based endometrial ablation technology" is unsafe in patients using Essure; (b) implies that the FDA has determined that "the potential for thermal injury, especially in the event that the micro insert [Essure] had perforated the fallopian tube," "raised the safety concern" to a level that required a contraindication for Essure with any thermal-based endometrial ablation technology; and (c) states that "perforation of the fallopian tube" was reported at a "3.4% occurrence rate" in the "Essure Phase 2 pivotal study." Hologic knows or should know, on the basis of publicly-available information, that the FDA has specifically determined that two forms of thermal based endometrial ablation technology (i.e., Thermachoice® Uterine Balloon System and HTA® System) can be safely and effectively performed with the Essure micro-inserts in place. In addition, Hologic knows or should know, on the basis of publicly-available information, that the cited statement regarding the perforation rate for the "Essure Phase 2 pivotal study" is false and misleading in several aspects. There is no study that is properly referred to as an Essure "Phase 2 pivotal study;" moreover, in the pivotal clinical trial of Essure the perforation rate was 1.1% in the 476 study participants who had at least one micro-insert placed.

75.    The actions by Hologic's sales force as described herein are malicious, intentional, and willful attempts to damage the goodwill that Conceptus has tenaciously worked to attain. These false and/or misleading marketing efforts are causing irreparable harm to Conceptus.

76.    As a result of the foregoing, Hologic is unfairly competing with Conceptus in violation of 15 U.S.C. § 1125(a). Accordingly, Conceptus is entitled to injunctive relief and to recover Hologic's profits, actual damages, enhanced profits and damages, costs, and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1125(a), 1116, and 1117.

## SIXTH CAUSE OF ACTION

### (Violation of California Unfair Competition And False Advertising Law)

77. Conceptus incorporates the allegations set forth in the paragraphs above as if fully set forth herein.

78. The actions of Hologic in disparaging Conceptus and Essure through a marketing scheme that includes false and misleading representations of fact intended to and likely to mislead customers, as well as marketing information created in violation of FDA rules and instructions, as stated above, constitute unlawful, unfair, and fraudulent business practices within the meaning of the Cal. Bus. & Prof. Code §§ 17200 et. seq.

79. The actions of Hologic in disparaging Conceptus and Essure through a marketing scheme that includes false and misleading representations of fact intended to mislead customers, as stated above, constitute untrue and misleading advertising within the meaning of the Cal. Bus. & Prof. Code §§ 17500 et. seq.

80. Conceptus and its products are directly harmed by these actions causing actual injury as a result of this unfair competition, including physicians saying that they were now committed to using Adiana over Essure as a result of these false and misleading claims.

81. The harm to Conceptus caused by these acts outweighs any benefit to Hologic and the fraudulent practices are such that the consumers are likely to be deceived.

82. Hologic's actions alleged herein, including its unlawful trade practices are willful and intentional and are likely to cause substantial injury to the public and to Conceptus, all of which warrants injunctive relief pursuant to Cal. Bus. & Prof. Code § 17203.

## SEVENTH CAUSE OF ACTION

### (Violation of Common Law Unfair Competition Law)

83. Conceptus incorporates the allegations set forth in the paragraphs above as if fully set forth herein.

84. Hologic's acts complained herein constitute unfair competition under the common law of the State of California.

## CONCEPTUS'S PRAYER FOR RELIEF

WHEREFORE, Conceptus prays for relief as follows:

1. The entry of Declaratory Judgment that the Patents-In-Suit are valid, enforceable, and infringed by Hologic;

2. Judgment that the Patents-In-Suit are valid, enforceable, and infringed by Hologic.

3. A permanent injunction enjoining Hologic, its officers, agents, servants, employees, successors, assignees and those persons acting in concert or in participation with them from infringing, inducing the infringement of, or contributorily infringing the Patents-In-Suit;

4. An award of profits and damages arising out of Hologic's infringement, inducement of infringement, and/or contributory infringement of the Patents-In-Suit, together with interest, and a judgment that the profits and damages so adjudged be trebled pursuant to 35 U.S.C. § 284 for Hologic's willful and deliberate infringement;

5. A declaration that this is an exceptional case under 35 U.S.C. § 285 and for an award of reasonable attorneys' fees to Conceptus;

6. An award of the costs and expenses Conceptus has incurred in this action;

7. An order be entered that Hologic and each of its officers, employees, agents, alter egos, attorneys and any other persons in active concert or participation with them, are enjoined from:

   i. Disparaging Conceptus' products by making false and/or misleading representations of fact;

   ii. Engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding; and

   iii. Otherwise competing unfairly with Conceptus in any manner;

8. That Hologic be required, in accordance with 15 U.S.C. § 1117, to account for and pay to Conceptus the following:

   i. All gains, profits, benefits, and advantages derived by Hologic, and three times all damages suffered by Conceptus from the above described acts of

|   |   |   |
|---|---|---|
| 1 | | unfair trade practice and competition, amounts of which shall be determined by the Court; |
| 3 | ii. | All other damages that the Court deems just; and |
| 4 | iii. | All costs and attorneys fees incurred in this action; and |
| 5 | 9. | For such other and further relief as the Court deems just and equitable. |

**<u>JURY DEMAND</u>**

Conceptus, pursuant to Fed. R. Civ. P. 38(b) and L.R. 3-6, hereby demands a trial by jury as to all issues so triable.

Dated: April 13, 2010                                  SIDLEY AUSTIN LLP


  /s/  M. Patricia Thayer
M. PATRICIA THAYER (SBN 90818)
pthayer@sidley.com
MARC R. ASCOLESE (SBN 251397)
mascolese@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA  94104-1715
Telephone:     415-772-1200
Facsimile:      415-772-7400

BRYAN A. ANDERSON (SBN 170666)
bkanderson@sidley.com
SIDLEY AUSTIN LLP
1801 Page Mill Road, Suite 110
Palo Alto, CA 94304
Telephone:     (650) 565-7000
Facsimile:      (650) 565-7100

KATHLEEN D. PATTERSON (SBN 124768)
kpatterson@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     (415) 773-5700
Facsimile:      (415) 773-5759

*Counsel for Plaintiff Conceptus, Inc.*