Matthew M. Wolf (*pro hac vice*)
Sara P. Zogg (*pro hac vice*)
**HOWREY LLP**
1299 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone:  (202) 783-0800
Facsimile:  (202) 383-6610
Email: wolfm@howrey.com
Email: zoggsara@howrey.com

Jennifer A. Sklenar (SBN 200434)
Nicholas H. Lee (SBN 259588)
**HOWREY LLP**
550 South Hope Street, Suite 1100
Los Angeles, CA  90071
Telephone:  (213) 892-1800
Facsimile:  (213) 892-2300
Email:  sklenarj@howrey.com
Email:  leen@howrey.com

Katie J.L. Scott (SBN 233171)
Anna W. Lam (SBN 258089)
**HOWREY LLP**
1950 University Avenue, 4th Floor
East Palo Alto, CA  94303
Telephone:  (650) 798-3500
Facsimile:  (650) 798-3600
Email: scottk@howrey.com
Email: lama@howrey.com

Attorneys for Defendant
HOLOGIC, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| CONCEPTUS, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>HOLOGIC, INC.,<br><br>        Defendant. | Case No.  3:09-cv-02280 WHA<br><br>**HOLOGIC, INC.'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE EXPERT OPINIONS SUBMITTED ON BEHALF OF CONCEPTUS, INC. AND PORTIONS OF CONCEPTUS' SUMMARY JUDGMENT MOTION**<br><br>Date:          December 9, 2010<br>Time:          8:00 a.m.<br>Courtroom:   9; 19th Floor<br>Judge:         Hon. William Alsup |

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................1

II. MR. SHEEHAN'S INFRINGEMENT THEORIES FOR THE "BOND"
    LIMITATION OF CLAIM 8 ARE UNHELPFUL, UNRELIABLE AND
    UNTIMELY ...........................................................................................................2

    A.  Even After the Close of Expert Discovery, Conceptus Continues to
        Offer New Infringement Theories for the "Bond" Limitation of
        Claim 8 ...........................................................................................................2

    B.  Mr. Sheehan's Cure-Sequence Theory of "Bond" Formation is
        Untimely and Unreliable ..............................................................................3

    C.  Conceptus Has Provided No Evidence that it Timely Disclosed its
        Doctrine of Equivalents Theory for the "Bond" Limitation of
        Claim 8 ...........................................................................................................5

    D.  Mr. Sheehan Offered New Evidence in His Reply Report .............................6

III. DR. GLASSER'S OPINIONS REGARDING CLAIMS 37-38 ARE
     UNTIMELY AND UNRELIABLE ........................................................................7

    A.  Dr. Glasser's Opinion Regarding Whether the Adiana Device is
        Contraceptive While Open is Untimely and Unreliable...................................7

    B.  Dr. Glasser's Reply Opinion Concerning When the Adiana Device
        is Permanently Affixed is Untimely and Prejudicial .......................................9

IV. DR. GLASSER'S OPINIONS THAT ESSURE ALLEGEDLY
    EMBODIES THE "OPEN" LIMITATION OF CLAIMS 37-38 ARE
    UNTIMELY, UNRELIABLE AND IMPROPER .....................................................11

    A.  Dr. Glasser's Opinions Regarding Whether Essure is Contraceptive
        While Open Are Untimely And Unreliable......................................................11

    B.  Dr. Glasser Improperly Supplements His "Permanently Affixing"
        Opinions in His Reply Report ........................................................................12

V.  DR. GLASSER'S INDIRECT INFRINGEMENT OPINIONS ARE
    UNTIMELY AND DEFICIENT ............................................................................13

    A.  Contributory Infringement............................................................................14

    B.  Inducement Infringement ..............................................................................15

VI. CONCLUSION .....................................................................................................15

1

## <u>TABLE OF AUTHORITIES</u>

2

### <u>CASES</u>

3

*Burleson v. Tex. Dep't of Crim. Justice*,
    393 F.3d 577 (5th Cir. 2004) ..................................................................................9

*Carnegie Mellon Univ. v. Hoffmann-LaRoche, Inc.*,
    55 F. Supp. 2d 1024 (N.D. Cal. 1999)....................................................................9

*Daubert v. Merrill Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ........................................................................................4, 9, 12

*General Elec. Co. v. Joiner*,
    522 U.S. 136 (1997) .........................................................................................4, 8, 9

*Hochstein v. Microsoft Corp.*,
    No. 04-73071, 2009 U.S. Dist. LEXIS 72223 (E.D. Mich. Aug. 17, 2009) ................6

*Kennedy v. Collagen Corp.*,
    161 F.3d 1226 (9th Cir. 1998) ..................................................................................9

*Microscan Sys., Inc. v. Cognex Corp.*,
    No. C 08-833 RSM, 2010 U.S. Dist. LEXIS 95627 (W.D. Wash. Sept. 10,
    2010)......................................................................................................................6

*O2 Micro Int'l Ltd. v. Monolithic Power Sys. Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006) ................................................................................6

*Regents of the Univ. of Cal. v. Micro Therapeutics, Inc.*,
    No. C 04-05669 JW, 2007 U.S. Dist. LEXIS 64897 (N.D. Cal. Aug. 23,
    2007).....................................................................................................................2

### <u>STATUTES</u>

Fed. R. Evid. 702 ..............................................................................................................4

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.    INTRODUCTION

Though it was undeniably Conceptus' burden to come forward with timely and reliable evidence of infringement, Conceptus' opposition demonstrates that it has completely failed to do so. Conceptus cannot dispute that many of its experts' theories, and alleged evidence in support thereof, were not disclosed in its infringement contentions, as required by the Patent Local Rules, and/or in its opening expert reports, including:

- That the "bond" required by claim 8 is an alleged third physical structure of material in the Adiana matrix (disclosed for the first time in Mr. Sheehan's reply report);

- The cure-sequence theory of "bond" formation (disclosed for the first time in Mr. Sheehan's opening expert report, and supplemented with new evidence in his reply report);

- The doctrine of equivalents theory of infringement for the "bond" limitation (disclosed for the first time in Mr. Sheehan's opening report);

- The theories that the Adiana matrix is contraceptive while the fallopian tube is partially open as required for claim 36 (disclosed for the first time in Dr. Glasser's opening report and supplemented with a rudimentary statistical analysis in his reply report);

- The documents allegedly establishing that the Adiana matrix is permanently affixed while the fallopian tube is open (disclosed for the first time in Dr. Glasser's reply report); and

- The specific factual bases of Conceptus' indirect infringement claims (much of which was disclosed for the first time in Dr. Glasser's reply report).

Throughout its opposition, Conceptus simply fails to come to terms with its obligation as a patent plaintiff or to appreciate the extreme prejudice facing Hologic should Conceptus be permitted to go forward with positions on summary judgment or at trial for which Hologic has had no opportunity to respond. Instead, Conceptus raises an array of hollow and inconsistent arguments in an effort to justify its tardy disclosures. For example, it repeatedly cobbles together unrelated portions of its various expert reports in an effort to show that certain opinions were somehow presented in its opening round expert reports, yet at the same time it tries to deflect responsibility for its failure to provide the ***bases*** for these opinions onto Hologic, suggesting that Conceptus had no obligation to explain and support its

1   experts' opinions until Hologic unequivocally took the contrary position.  This "wait to explain" tactic

2   runs counter to the governing discovery rules and fundamental notions of fairness, particularly given

3   Conceptus' request for patent damages and an injunction.  Thus, for this reason and as set forth below,

4   Hologic's motion should be granted.

5   **II.    MR. SHEEHAN'S INFRINGEMENT THEORIES FOR THE "BOND" LIMITATION OF CLAIM 8 ARE UNHELPFUL, UNRELIABLE AND UNTIMELY**

6

7       **A.      Even After the Close of Expert Discovery, Conceptus Continues to Offer New Infringement Theories for the "Bond" Limitation of Claim 8**

8           Just as Hologic predicted in its motion, Conceptus and Mr. Sheehan have changed infringement

9   theories yet again.  (*See* Dkt. No. 284 at 9.)  Though Mr. Sheehan opined in his opening report that the

10   "bonds" in the Adiana matrix are "those portions of the porous architecture and the solid core that

11   serve as the bridges between them" (*i.e.*, that the matrix is a two-part structure) (Dkt. No. 275-16, Ex.

12   P at 9; *see also* Dkt. No. 284 at 6 (demonstrating that Mr. Sheehan described the matrix as two-part

13   device)), Conceptus now contends – through only attorney argument and by retrospectively reworking

14   Mr. Sheehan's opinions – that Mr. Sheehan opined all along that the Adiana matrix includes "three

15   different structures."[1]  (Dkt. No. 317 at 14.)  Conceptus' selective citations to various portions of Mr.

16   Sheehan's opening report at best demonstrate that Mr. Sheehan had identified in the Adiana matrix

17   (1) a solid core and (2) a porous configuration surrounding the solid core.  None of the passages cited

18   by Conceptus even hint that Mr. Sheehan considered the purported "bond" to be a third physical

19   structure *or more importantly what such a third structure might be*.  (*See generally id.* at 14-15.)

20   This is not surprising, since Mr. Sheehan admitted at deposition that his opening report contained no

21   disclosure of an alleged three-part matrix and that this opinion did not appear for the first time until his

22   reply report.  (Dkt. No. 285-3, Ex. C at 161:5-24.)

23

─────────────

24   [1] Conceptus likely changes its position so that it never has to address the critical deficiency identified in Hologic's motion – that Mr. Sheehan's opinion that the matrix is a two-part structure is contrary to

25   the Court's claim construction.  (Dkt. No. 189 at 12 (claim 8 "separately lists … three distinct components"); Dkt. No. 284 at 6.)  Because Conceptus never opposes Hologic's motion on this issue,

26   Hologic's request to strike Mr. Sheehan's opinions on a two-part device, and to preclude opinion at trial regarding the same, should be granted.  *Regents of the Univ. of Cal. v. Micro Therapeutics, Inc.*,

27   No. C 04-05669 JW, 2007 U.S. Dist. LEXIS 64897, at *10-12 (N.D. Cal. Aug. 23, 2007) (expert's opinion stricken for failing to comply with the Court's claim construction order).

28

Conceptus' after-the-fact alteration of Mr. Sheehan's opinions on claim 8 must be rejected and Mr. Sheehan cannot be permitted to proffer opinions that indisputably never appeared until his reply report. Hologic's motion to preclude Mr. Sheehan from offering any opinion that the "bond" in the Adiana matrix is a separate structure (*i.e.*, not portions of the porous architecture and solid core as he opined in his opening report) should be granted.

**B. Mr. Sheehan's Cure-Sequence Theory of "Bond" Formation is Untimely and Unreliable**

Regardless of whether Conceptus and Mr. Sheehan contend that the Adiana matrix comprises two parts (*i.e.*, the purported "bond" includes portions of the solid core and retention structure) or three (*i.e.*, the purported "bond" is a separate structure), Mr. Sheehan's opinions regarding formation of the bond[2] are untimely, unsupported and fail to apply the Court's claim construction. (Dkt. No. 284 at 7.)

In a vain attempt to circumvent the untimeliness issue, Conceptus now argues that it was not required to disclose in its Patent L.R. 3-1 contentions "how the bonds are formed" because claim 8 "does not contain any limitation concerning how the apparatus is made."[3] (Dkt. No. 317 at 11.) The fallacy of this argument is that Conceptus repeatedly raises the silicone curing process as a critical component of its infringement theory. (*See generally* Dkt. No. 317 at 14-15.) Conceptus was required to "identify[] specifically *where each limitation* of each asserted claim *is found within each Accused Instrumentality*." Patent L.R. 3-1(c) (emphasis added). Because Conceptus relies on its (erroneous) assertion of "how the bonds are formed" in identifying where the "bonds" are allegedly found within the Adiana matrix, Conceptus' should have disclosed its cure-sequence theory in its Patent L.R. 3-1 disclosure. There is no dispute that Conceptus did not. (*See generally* Dkt. No. 285-1, Ex. A; Dkt. No.

---

[2] As described in Hologic's motion, Mr. Sheehan has opined that the portions of silicone that form the porous architecture of the Adiana matrix cure faster in the mold than the portions of silicone that form the solid core (hereinafter, "cure-sequence theory"). (Dkt. No. 284 at 7.)

[3] Conceptus also asserts that Hologic never asked Conceptus in an interrogatory to describe how the matrix is made. (Dkt. No. 317 at 11 (citing Dkt. No. 285-8, Ex. H at 10:8-12).) It is unclear what Conceptus means by this. Hologic did not rely on that interrogatory response to support its motion to strike opinions related to claim 8. (*See generally* Dkt. No. 284 at 7-8.) Regardless, there should have been no need for Hologic to serve an interrogatory to understand Conceptus' infringement contentions. This is after-all the very point of the Patent Local Rules requirements.

285-2, Ex. B; Dkt. No. 277-1, Corrected Ex. J.)  Accordingly, Mr. Sheehan's opinions relating to the cure-sequence theory should be stricken as untimely.

In addition to its untimeliness, Mr. Sheehan's cure-sequence theory suffers from other deficiencies, which Conceptus ignores altogether in its opposition and which render his opinion unreliable.  First, Conceptus does not dispute Mr. Sheehan's admission that he did not perform any tests or observe the matrix manufacturing process in reaching his conclusion that bonds form as the silicone cures.[4]  (*See generally* Dkt. No. 317 at 15; *see also* Dkt. No. 284 at 7.)  Second, Conceptus never explains how Mr. Sheehan's cure-sequence theory comports with the Court's claim construction, which requires that the "bond" join "two disparate components."  (*See generally* Dkt. No. 317 at 15; Dkt. No. 189 at 12; Dkt. No. 284 at 7.)  Merely stating that Mr. Sheehan has followed the Court's claim construction (Dkt. No. 317 at 13-14) does not make it so.  For example, Conceptus does not dispute that:  (1) Mr. Sheehan provides no opinion that the alleged "bonds" form *after* the porous outer architecture and solid core; and (2) Mr. Sheehan provides no timeline indicating when in the curing period each of the solid core, porous architecture and purported "bonds" cure from liquid to solid state.  (*See* Dkt. No. 284 at 7; Dkt. No. 317 at 13-15.)  If the bond is a disparate, third component as Conceptus and Mr. Sheehan apparently now contend, Conceptus should have addressed at least these issues or in some other way explained the basis of how Mr. Sheehan's cure-sequence theory results in a three component device.  (*See* Dkt. No. 189 at 12.)  Conceptus did not.  Thus, Mr. Sheehan's cure-sequence theory is indisputably "not based on sufficient facts or data," and should be stricken.  *See* Fed. R. Evid. 702; *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

---

[4] Rather, Conceptus asserts that Mr. Sheehan's speculative cure-sequence theory is based on his "own extensive experience in the design and manufacture of medical devices" as well as his analysis of manufacturing documents and records concerning the structure of the matrix, which say nothing about the formation of "bonds" in the Adiana matrix.  (Dkt. No. 317 at 15; Dkt. No. 284 at 7.)  If Mr. Sheehan did rely upon his experience or other documents, he did not disclose this fact in his opening report.  (*See* Dkt. No. 275-16, Ex. P at 2, 8-9; Dkt. No. 285-4, Ex. D at 2; Dkt. No. 317 at 15 (citing Dkt. No. 302, ¶ 19).)  Moreover, Conceptus does not even cite to Mr. Sheehan's reports.  It cites only to his declaration submitted with Conceptus' summary judgment motion (Dkt. No. 302), which contains several conclusory assertions and cites only one document, NS000364, that is itself the subject of Hologic's motion to strike.  (*See* Dkt. No. 317 at 15 (citing Dkt. No. 302, ¶ 30).)

**C.    Conceptus Has Provided No Evidence that it Timely Disclosed its Doctrine of Equivalents Theory for the "Bond" Limitation of Claim 8**

Conceptus' opposition confirms that Conceptus did not disclose its reliance on the doctrine of equivalents – let alone the factual basis of its equivalents theory – in its Patent L.R. 3-1(e) disclosures. Conceptus offers three arguments in an attempt to justify this absolute failure. Because none of them establish Conceptus' compliance with Patent L.R. 3-1(e), they are immaterial to the resolution of Hologic's motion to strike.

First, Conceptus points to one-line statements in its Patent L.R. 3-1(e) disclosures and its identification of issues for expert testimony that generally mention the doctrine of equivalents. (*See* Dkt. No. 317 at 2, 11; Dkt. No. 285-1, Ex. A at 7 ("Conceptus contends that Adiana infringes each of the Asserted Claims under the doctrine of equivalents"); Dkt. No. 300-61, Ex. 60, ¶ 10 ("Hologic's importation, sale, offer for sale, and/or use of [Adiana] directly infringes, either literally or under the doctrine of equivalents, claims 8, 37, and/or 38 of the '361 patent.").) It is beyond dispute that these generic statements fail to comply with Patent L.R. 3-1, which requires that Conceptus identify "[w]hether ***each limitation of each asserted claim*** is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality." Patent L.R. 3-1(e) (emphasis added).

Second, Conceptus argues that "[e]quivalency is generally an issue for experts" (Dkt. No. 317 at 1 n.1), and that it timely disclosed that its experts might opine on doctrine of equivalents under the Court's Case Management Order. (*Id*. at 1 (citing Dkt. No. 130).) This is nonsensical. Patent L.R. 3-1 specifically requires that the party asserting infringement serve its disclosure of asserted claims and infringement contentions ***early in the case*** – *i.e.*, within 14 days after the Initial Case Management Conference. (Patent L.R. 3-1.) Conceptus cannot circumvent its obligations through improper reliance on the Case Management Order, which, irrespective of the 28-day expert disclosure provision (Dkt. No. 130, ¶ 8), specifically requires that "[t]he local patent rules disclosures must be made on the schedule set forth in the local patent rules." (*Id*., ¶ 5.)

Third, Conceptus argues that Patent L.R. 3-1(e) "does not require that Conceptus describe why any differences between a claim element and the accused instrumentality are insubstantial, or apply a

1   function/way/result analysis." (Dkt. No. 317 at 11.)  This is beside the point.  The deficiency in the

2   disclosures lies in the fact that Conceptus completely failed to provide notice of which limitations it

3   contended were satisfied under the doctrine of equivalents.

4        The undisputed facts are that Conceptus identified its equivalents theory for the bond limitation

5   of claim 8 and provided the factual basis for its theory for the first time in Mr. Sheehan's opening

6   report.  This disclosure is untimely and should be stricken.  *O2 Micro Int'l Ltd. v. Monolithic*

7   *Power Sys. Inc.*, 467 F.3d 1355, 1360-61, 1368-71 (Fed. Cir. 2006); *Microscan Sys., Inc. v. Cognex*

8   *Corp.*, No. C 08-833 RSM, 2010 U.S. Dist. LEXIS 95627, at * 17-19 (W.D. Wash. Sept. 10, 2010);

9   *Hochstein v. Microsoft Corp.*, No. 04-73071, 2009 U.S. Dist. LEXIS 72223, at *12-16 (E.D. Mich.

10  Aug. 17, 2009).

11       **D.    Mr. Sheehan Offered New Evidence in His Reply Report**

12       Conceptus admits that Mr. Sheehan cited to NS000364 for the first time in his reply report to

13  bolster and support his cure-sequence theory of bond formation, for which he had provided no

14  evidentiary or documentary support in his opening report.  (*See* Dkt. No. 275-16, Ex. P at 9; Dkt. No.

15  317 at 15 (contending that Mr. Sheehan refers to "additional literature from NuSil" to demonstrate that

16  thin sheets of elastomer will cure quicker than a thick section).)  Conceptus justifies Mr. Sheehan's

17  untimely reliance on NS000364 by arguing that ***Hologic*** changed positions on whether the solid core

18  and porous architecture cure at different rates.  (*Id.* at 15-16.)  As an initial matter, it is impossible for

19  Hologic to have changed positions on this issue, as Hologic was completely unaware of Conceptus'

20  cure-sequence theory until Mr. Sheehan's opening report (*see* Dkt. No. 284 at 7) and did not receive a

21  copy of the Nusil document at issue until after all expert reports had been served.  (*Id.* at 9.)  Moreover,

22  if Mr. Sheehan was aware of evidence to support his cure-sequence theory, he should have included it

23  in his opening report, and not withheld it until reply when Hologic's expert would have no chance to

24  refute it.  As Conceptus readily admits, Mr. Sheehan cited to ***other*** NuSil product literature in different

25  sections of his opening report (Dkt. No. 317 at 15) and it provides no justifiable reason why Mr.

26  Sheehan withheld NS000364 until reply.  Thus, Hologic's motion to strike Mr. Sheehan's reliance on

27  NS000364 and to preclude him from offering any opinions on NS000364 at trial should be granted.

28

## III.   DR. GLASSER'S OPINIONS REGARDING CLAIMS 37-38 ARE UNTIMELY AND UNRELIABLE

### A.   Dr. Glasser's Opinion Regarding Whether the Adiana Device is Contraceptive While Open is Untimely and Unreliable

Conceptus cannot dispute (i) that its Patent Local Rules disclosure failed to allege that Adiana is contraceptive prior to occlusion or (ii) that Dr. Glasser did not present his rudimentary statistical analysis, in which he purports to prove this issue, until his reply report.  (*See* Dkt. No. 284 at 10; Dkt. No. 277-1, Corrected Ex. J at 3-6 (Contentions); Dkt. No. 275-18, Ex. R (Opening Report).)  Instead, Conceptus tries to blame Hologic for not making it sufficiently clear that contraception prior to occlusion might be a disputed issue in the litigation.  (*See* Dkt. No. 317 at 20-21.) [5]  Yet, the fact that Dr. Glasser rendered an opinion – albeit a conclusory one – on this issue in his opening report demonstrates full well that Conceptus understood that this issue was germane to infringement of claim 36 (Dkt. No. 275-18, Ex. R at 32).[6]  Moreover, Hologic's counsel questioned several witnesses on this issue throughout the case.  (*See* Dkt. No. 271 at 3-4; Dkt. No. 296 at 5.)  It defies credulity that Conceptus had no idea that Hologic contended contraception prior to occlusion was required of claim 36.  The prejudice to Hologic is not merely hypothetical – it is left with no opportunity to rebut this argument.  Moreover, if it had known that Conceptus intended to present infringement evidence in the form of a medical statistical analysis (which was never disclosed pursuant to the Case Management Order), Hologic would have hired an expert specifically in that area.  (*See* Dkt. No. 300-61.)

Even if the Court were inclined to consider Dr. Glasser's reply report statistics-based opinion, Conceptus fails to address any of the concerns that Hologic identified as undermining the reliability of Dr. Glasser's methodology.  (*Compare* Dkt. No. 284 at 12-15, *with* Dkt. No. 317 at 19-22.)

---

[5] Conceptus repeatedly suggests that Hologic did not disclose certain noninfringement positions in its interrogatory responses.  Conceptus is wrong.  (*See* Dkt. No. 268-29 at Response 12.)  Regardless, as a patent plaintiff, Conceptus must present affirmative evidence on each claim limitation, whether or not it believes such limitation will ultimately be in dispute.  Moreover, if Conceptus believed that more detail was necessary from Hologic, it could have raised this issue with counsel or filed a motion to compel, which it never did.

[6] Dr. Glasser's disclosure of his opinion on this issue in his opening expert report amounted to three conclusory sentences with no explanation as to how he arrived at his opinion.  (Dkt. No. 275-18, Ex. R at 32.)

1 Dr. Glasser takes at least 6 significant logical leaps in an attempt to arrive at three month pregnancy

2 data for alternative methods of birth control, which he then compares with certain Adiana

3 pregnancies:[7]

4

| Comparative Methods | Adiana |
|---|---|
| Assumption: Utilize alternative birth control methods with high failure rates, not only those required by Adiana trial guidelines | Assumption: Extrapolate 5 pregnancies in population of 604 to 8 out of 1000 |
| ↓ | ↓ |
| Assumption: Utilize "typical use" failure rates for alternative birth control methods, with no evidence that trial participants are "typical use" patients | Assumption: Use 3-month failure rate as appropriate metric even though occlusion occurs before 3-month mark |
| ↓ | |
| Assumption: Pro-rate annual failure rate for alternative birth control methods to 3-month rate by dividing yearly rate by 4 | → Assumption: Compare pro-rated "typical use" failure rates of high-failure-rate methods to extrapolated 3-month Adiana failure rate *with no verification that difference is statistically significant* |

16    The three month pregnancy rate data cannot reliably be used for assess whether Adiana is

17 contraceptive prior to occlusion.  Significantly, there is no evidence that *three months* is even the

18 relevant window for comparison (*see* Dkt. No. 284 at 14-15.)  *See General Elec. Co. v. Joiner*, 522

19 U.S. 136, 144-45 (1997) (upholding rejection of expert's opinions that were founded upon studies that

20 were dissimilar to the facts presented in the litigation).  Conceptus attempts to impart an air of

21 reliability to Dr. Glasser's statistics approach by asserting that pregnancy rates are generally published

22 by the FDA and in publications.  *See* Dkt. No. 317 at 21.  Yet, the published data includes only *annual*

23 pregnancy rates for various methods of birth control and the gross number of pregnancies in women

24 involved in the clinical trials.  There is no publications to support Dr. Glasser's extrapolations and pro-

25 rating.  Indeed, Conceptus has not cited a single publication to support the numerous assumptions set

26

27 [7] These flawed assumptions are described in detail in Hologic's motion to strike (Dkt. No. 284 at 12-15) and Hologic's reply in support of summary judgment (Dkt. No. 309 at 5-6).

28

Hologic's Reply in Supp. of Its Mot. to Strike Expert        8
Opinions
Case No. 3:09-cv-02280-WHA

DM_US:23542852_1

1  forth above that Dr. Glasser makes with his statistic-based approach.  And most notably, Dr. Glasser

2  has not verified that the difference between the cited alternative failure rates and the calculated Adiana

3  failure rate is even statistically significant.  These flaws more than justify exclusion under *Daubert*.

4  *See General Elec.*, 522 U.S. at 146; *Carnegie Mellon Univ. v. Hoffmann-LaRoche, Inc.*, 55 F. Supp. 2d

5  1024, 1040 (N.D. Cal. 1999) ("Dr. Brown, like the expert in *Joiner*, fails to connect the existing data to

6  his conclusions using a valid scientific method . . . ."); *see also Burleson v. Tex. Dep't of Crim. Justice*,

7  393 F.3d 577, 585-87 (5th Cir. 2004).[8]

8       Conceptus attempts to overcome Hologic's motion by citing to *Kennedy v. Collagen Corp.*, 161

9  F.3d 1226, 1230-31 (9th Cir. 1998) and other cases, suggesting that the issues raised in Hologic's

10  motion go to the weight to be afforded its experts' testimony rather than its admissibility.  (*See* Dkt.

11  No. 317 at 13.)  This argument is without merit.  As is clear from *Daubert v. Merrill Dow Pharm., Inc.*,

12  509 U.S. 579, 589 (1993), expert testimony is admissible under Federal Rule of Evidence 702 only if it

13  is sufficiently reliable to assist the trier of fact.  Here, there is no showing that certain of Mr. Sheehan's

14  and Dr. Glasser's opinions meet this threshold standard.

15       **B.   Dr. Glasser's Reply Opinion Concerning When the Adiana Device is**
    **Permanently Affixed is Untimely and Prejudicial**

16

17       Conceptus has failed to explain why Dr. Glasser's untimely reply opinion on the issue of

18  whether the Adiana matrix is permanently affixed "so that at least a portion of the fallopian tube is

19  open" should not be stricken.  Conceptus does not dispute that in Dr. Glasser's opening report, he

20  asserts that the Adiana matrix is permanently affixed within the fallopian tube by "tissue growth into

21  and around the matrix," citing the Instructions For Use that relates to "***occlusion*** of the fallopian

22  tubes." [9]  (Dkt. No. 275-18, Ex. R at 31-32.)  Nor can it genuinely dispute that it was only after

23

---

24  [8] Although Conceptus tries to use Dr. Ryan's opinion on ***prior art devices*** to bolster Dr. Glasser's opinion as to ***Adiana*** (Dkt. No. 317 at 20-21)**,** it fails to provide any explanation as to why evidence

25  relating to a different technique is somehow reliable or even probative on the issue of alleged infringement.

26  [9] Dr. Glasser's opening opinion was consistent with Conceptus' Patent Local Rules disclosure and interrogatory response.  Although Conceptus now tries to piece together portions of those documents

27  to suggest that it contended that the Adiana matrix is permanently affixed when the fallopian tube remains open, it failed to address its repeated assertions that the Adiana matrix is "***permanently affixed***

28                                                                                          (Continued...)

Hologic's expert pointed out in rebuttal that this evidence related to occlusion and not permanent affixation while **open** that Dr. Glasser (1) offered a new opinion for the first time in his reply report that permanent affixation occurs as a result of a patient's tissue ingrowth **one to two weeks** after the device is placed but "while the tube is still open" and (2) purported to rely on several **different** documents as alleged evidence of when permanent affixation occurs.

It is inescapable that this theory and evidence by Dr. Glasser is untimely and prejudicial to Hologic. Dr. Glasser himself was unable to say that he provided this opinion in his opening report:

> Q. Where do you say in your opening report that the Adiana device becomes permanently affixed at the one- to three-week range?
>
> A. I don't think I mentioned that, because it may take longer in some patients and shorter in others.
>
> Q. You didn't give any time frame in your opening report for when the Adiana device becomes permanently affixed; is that right?
>
> A. Not as I can recall.

(Dkt. No. 285-6, Ex. F at 534:11-24.) Despite Dr. Glasser's own deposition testimony, Conceptus now tries to assert that Dr. Glasser actually **did** somehow opine that permanent affixation occurs at a one-to-two week time frame in his opening report. (Dkt. No. 317 at 16.) Yet, because Conceptus has nothing explicit to point to, it instead pieces together scattered quotes and phrases from Dr. Glasser's opening report that were never offered or explained as relevant to when permanent affixation occurs at all, let alone that it occurs one-to-two weeks after the Adiana procedure. (Dkt. No. 317 at 16; Dkt. 275-18, Ex. R at 25-36.) Tellingly, most of the quotations upon which Conceptus now seeks to rely do not even appear in the section (IX(D)) of Dr. Glasser's report that discusses the "permanently affixing" requirement.[10] (*Id.*)

---

(...Continued)

within the fallopian tube **by tissue ingrowth that occludes the tube** and inhibits conception." (Dkt. No. 277-1, Corrected Ex. J at 4; Dkt. No. 285-8, Ex. H at 11.)

[10] For example, according to Conceptus, "Dr. Glasser expressly identified and quoted in his opening report Hologic records stating 'that the matrix becomes biologically integrated within the fallopian tube **a few weeks after placement**.'" (Dkt. No. 317 at 16; Dkt. 275-18, Ex. R at 25-36.) This discussion appeared in Section IX(E) of his report (relating to claims 37 and 38) and in no way was connected to a discussion of the "permanently affixing" while "open" requirement. And more

(Continued...)

Conceptus takes the same approach with many new documents that Dr. Glasser discussed for the first time in his reply report as allegedly relevant to the permanently affixing while open limitation. (Dkt. No. 317 at 17-18; Dkt. 284 at 16-17.)  While Conceptus again tries to argue that Dr. Glasser quoted to and cited portions of such documents, it neglects to mention that they were never discussed as having any bearing on the permanently affixing requirement.  (Dkt. No. 317 at 17.)  Conceptus also argues that Hologic's expert cannot be surprised that the documents were addressed for the first time in Dr. Glasser's reply report because Hologic's expert should have been familiar with them and anticipated the argument.  (*Id.*)  This cannot be a credible defense to raising new evidence on reply, particularly given this Court's warning on this very issue.  (Dkt. No. 130, ¶ 8.) [11]

## IV.     DR. GLASSER'S OPINIONS THAT ESSURE ALLEGEDLY EMBODIES THE "OPEN" LIMITATION OF CLAIMS 37-38 ARE UNTIMELY, UNRELIABLE AND IMPROPER

### A.     Dr. Glasser's Opinions Regarding Whether Essure is Contraceptive While Open Are Untimely And Unreliable

Rather than respond to Hologic's arguments in support of striking Dr. Glasser's untimely and unreliable opinion that Essure is contraceptive while open, Conceptus confuses the issues by addressing Essure and Adiana together.  Dr. Glasser's opinion on Essure is distinct from his opinion regarding Adiana, and should be addressed separately.

First, Conceptus failed to disclose its theory that Essure was contraceptive while open in responding to a contention interrogatory.  (Dkt. No. 285-12, Ex. L at 12-15.)  Even when Conceptus disclosed this theory for the first time in Dr. Glasser's opening expert report (Dkt. No. 275-18, Ex. R. at 21), that opinion was supported by no relevant evidence and was directly at odds with Conceptus'

---

(...Continued)
fundamentally, nowhere has Dr. Glasser opined that the fallopian tube would remain at least partially open "a few weeks after placement." Thus, neither Dr. Glasser nor Conceptus has connected the dots as to why "biologically integrated" can be interpreted as "permanently affixing . . . so that at least a portion of the fallopian tube is open."

[11] Similarly, Conceptus has failed to plausibly explain why Dr. Glasser should now be permitted to assert that the "lumen traversing region" of claim 36 is satisfied by the porous portion of the Adiana matrix when it previously alleged that the cross-sectional width of the matrix satisfied that claim requirement.  (*See* Dkt. No. 284 at 17; Dkt. No. 317 at 18-19.)

1   own Instructions For Use that Essure is contraceptive upon occlusion of the fallopian tubes. (*See* Dkt.

2   No. 275-18, Ex. R. at 21 (Essure IFU makes clear that patients may not rely on device for

3   contraception until HSG test if performed).

4          Second, even if it were timely (which it is not), Dr. Glasser's opinion is unreliable.  He has

5   cited no evidence that Essure is contraceptive while open.  The single document cited by Dr. Glasser in

6   support of his opinion is an article referencing a study where there were six pregnancies ***prior to***

7   Essure placement, seven pregnancies ***after*** the patients were told they could rely on the Essure device

8   (*i.e.*, after apparent occlusion), and 21 pregnancies where there was inadequate follow-up with the

9   patient.  (Dkt. No. 285-9, Ex. I at HOL-CON 0008514-15; Dkt. No. 275-18, Ex. R. at 21; Dkt. No.

10  275-22, Ex. V at 19 n.25.)  This data does not address the contraceptive effect ***after*** Essure placement

11  but ***before*** occlusion, and is therefore irrelevant to the issue of whether Essure is contraceptive during

12  this time period.  Yet, from this irrelevant evidence, Dr. Glasser speculates that "[t]hese pregnancy

13  numbers would be much higher if the implant did not inhibit conception prior to complete occlusion."

14  (Dkt. No. 275-18, Ex. R. at 21.)  In the near-page of cited "evidence" in Conceptus' opposition, there

15  is not a single document cited that supports the opinion that Essure is contraceptive prior to occlusion.

16  (*See* Dkt. No. 317 at 18-22.)  In fact, none of the cited documents relate to pregnancy rates during the

17  relevant time period – after Essure placement but before occlusion.  Conceptus' vague argument that

18  FDA documents and publications recite *annual* pregnancy rates for various methods of birth control is

19  insufficient to impart any support or measure of reliability onto Dr. Glasser's opinion.  *See Daubert*,

20  509 U.S. at 591 ("'Fit' is not always obvious, and scientific validity for one purpose is not necessarily

21  scientific validity for other, unrelated purposes.").  Dr. Glasser's opinion that Essure is contraceptive

22  while open is therefore unreliable because it is based on irrelevant evidence and pure speculation, and

23  as such, should be stricken.

24        **B.     Dr. Glasser Improperly Supplements His "Permanently Affixing" Opinions
               in His Reply Report**

25

26        Conceptus also fails to explain why Dr. Glasser's new opinions and evidence relating to when

27  the Essure device becomes permanently affixed should not be stricken.  For the first time in his reply

28

1 report, Dr. Glasser interjects a discussion and citations relating to Essure histological studies, and

2 opines for the first time that tissue ingrowth begins as early as 8 days after device placement and the

3 device is permanently affixed "[w]ell before complete occlusion." (Dkt. No. 275-22, Ex. V at 29; *see*

4 *also* Dkt. No. 269, ¶ 26; *but see* Dkt. No. 275-18, Ex. R at 20 (no disclosure of opinion or evidence in

5 opening report).)

6        Conceptus asserts in its opposition that Dr. Glasser did in fact disclose in his opening report

7 information regarding histological data for Essure. However, the citation to Dr. Glasser's report is not

8 to the portion that relates to the "permanently affixing . . . while at least a portion of the fallopian tube

9 is open" limitation, Section IX(D), and nowhere did Dr. Glasser explain how Essure histological data

10 bears on this limitation. (Dkt. No. 317 at 17-18.) There is no reason for this new opinion, except to

11 provide detail that Dr. Glasser's failed to provide in his opening report and that Conceptus failed to

12 provide in response to Hologic's interrogatory. (Dkt. No. 275-18, Ex. R at 20; Dkt. No. 285-12, Ex. L

13 at 12-15.) Thus, Conceptus has failed to show why such testimony should not be excluded.

14 **V.     DR. GLASSER'S INDIRECT INFRINGEMENT OPINIONS ARE UNTIMELY AND**
15 **DEFICIENT**

16        There can be no real dispute that Conceptus' infringement contentions were completely

17 inadequate to put Hologic on notice of its indirect infringement theories. Conceptus was required to

18 identify any direct infringement and "describe the acts of the alleged indirect infringer that contribute

19 to or are inducing that direct infringement." Patent L.R. 3-1(d). Conceptus' only evidence that it

20 complied with this requirement is that it included a statement in its identification of issues for expert

21 testimony that its experts might opine on Hologic's indirect infringement of claims 8, 37 and 38 (Dkt.

22 No. 300-61, ¶¶ 12, 13; Dkt. No. 317 at 1) and that its disclosures included general assertions of

23 contributory and induced infringement. (*Id*. at 2.) Though Conceptus once again attempts to blame

24 Hologic for Conceptus' failure to comply with Patent L.R. 3-1(d)[12] (*see* Dkt. No. 317 at 10), it cannot

25

26 [12] Now that it is faced with a motion to strike, Conceptus belatedly contends that it lacked "critical
discovery" on the training and use of the Adiana system that prevented it from providing substantive
27 disclosures and interrogatory responses on indirect infringement. (Dkt. No. 317 at 10.) This argument
is a red herring. Conceptus never moved to compel the so-called critical discovery.
28

1    and does not refute that Hologic notified Conceptus of the insufficiency of its contentions and

2    interrogatory responses on this issue, but that it contended that both were adequate.  (Dkt. No. 284 at

3    19.)  Conceptus purposefully avoided disclosing its indirect infringement contentions to Hologic in a

4    timely fashion as required by Rule 3-1(d) and it must now live with the consequences.

5           **A.     Contributory Infringement**

6           There is no dispute that Dr. Glasser failed to provide opinions relating to Hologic's alleged

7    contributory infringement of claims 37 and 38 on a limitation-by-limitation basis.  Conceptus' only

8    response[13] to this obvious deficiency is that, "[b]ecause ***Dr. Glasser's opinions concern the direct***

9    ***infringement of claims 37 and 38*** by physicians using the Adiana method and system, ***and conclude***

10   ***that the Adiana system (including the matrix) is especially adapted to practice the infringing***

11   ***method***, his opinions will assist the jury in establishing contributory infringement."  (Dkt. No. 317 at

12   22 (emphasis added).)  But Dr. Glasser's opinions on the "especially adapted" issue are completely

13   insufficient.  Conceptus provides only two citations, one of which is a citation to Mr. Sheehan's report

14   that does not even address claims 36-38.  (Dkt. No. 317 at 22 n.14 (citing Dkt. No. 275-16, Ex. P at

15   37).)  The second citation is to six pages of Dr. Glasser's opening report with no discussion of any

16   provisions therein.  (*Id*. at 22-23 (citing Dkt. No. 275-18, Ex. R at 37-42).)  Hologic discussed these

17   opinions in its motion.  (*See* Dkt. No. 284 at 21-22.)  Of the few pages that discuss the matrix, Dr.

18   Glasser specifically describes only one limitation in his opening report, the "imposing an anchoring

19   force" limitation of claim 36.  He does not address any of the other limitations until his reply report,

20   and even then only in a cursory manner.  (*See id.*)

21

22

23

---

24   [13] The remainder of Conceptus' arguments go to the merits of contributory infringement, and are
     immaterial to the adequacy of Dr. Glasser's opinions.  Notably, in arguing the merits, Conceptus does
25   not cite to a single page of Dr. Glasser's reports.  (Dkt. No. 317 at 23 (citing generally to Dkt. Nos. 206
     (Apr. 28, 2010 minute entry noting that case did not settle), 280 (Conceptus' summary judgment
26   motion), 299 (Conceptus' opposition to Hologic's summary judgment motion).)  In addition, as
     demonstrated in Hologic's motion and in the parties' summary judgment briefs, Dr. Glasser applied the
27   wrong legal standard, which renders his opinions unreliable.  (Dkt. No. 284 at 20-21; Dkt. No. 271 at
     14-15.)

28

1    Conceptus has presented no evidence that Dr. Glasser rendered reliable opinions on Hologic's

2    alleged contributory infringement of claims 37-38.  Thus, Hologic's motion to strike Dr. Glasser's

3    opinions and to preclude him from offering opinion at trial should be granted.

4    **B.     Inducement Infringement**

5    Conceptus does not dispute that Dr. Glasser's reports contain no opinion relating to the alleged

6    induced infringement of claims 37 and 38.  It has come forward with no evidence to the contrary in its

7    opposition, never once providing any citations to Dr. Glasser's reports or discussing the substance of

8    his opinions on this issue.  (*See generally* Dkt. No. 317 at 24-25.)  Conceptus ignores Dr. Glasser's

9    reports entirely, instead attempting to reargue the merits of induced infringement based upon other

10   alleged evidence.  (*Id.*)  This argument is unresponsive[14] and cannot negate the fact that Conceptus'

11   expert failed to provide any opinions on induced infringement in his reports.  Thus, Hologic's motion

12   to preclude Dr. Glasser from offering any opinion relating to induced infringement should be granted.

13   **VI.    CONCLUSION**

14   For the foregoing reasons, and those set forth in Hologic's Motion, the Court should strike the

15   identified opinions of Conceptus' experts, the portions of Conceptus' summary judgment motion that

16   reflect or rely upon those opinions, and preclude any testimony at trial regarding the same.

17   Dated:  November 29, 2010                    Respectfully submitted,

18

19                               By:    */s/ Katie J.L. Scott*
                                        Katie J.L. Scott (SBN 233171)

20
                                        **HOWREY LLP**
21                                      1950 University Avenue, 4th Floor
                                        East Palo Alto, CA  94303
22                                      Telephone:  (650) 798-3500
                                        Facsimile:  (650) 798-3600
23                                      Email: scottk@howrey.com

24                                      Attorneys for Defendant HOLOGIC, INC.

25

26   [14] Conceptus' allegations of induced infringement are fully addressed in Hologic's motion for
     summary judgment and the related briefing, which demonstrate that Hologic does not induce
27   infringement of claims 37 and 38.  (*See* Dkt. Nos. 271 at 13-14; Dkt. No. 299 at 9-11; Dkt. No. 309
     at 8-9.)

28