**ARNOLD & PORTER LLP**
MATTHEW M. WOLF (*pro hac vice*)
matthew.wolf@aporter.com
JOHN E. NILSSON (*pro hac vice*)
john.nilsson@aporter.com
SARA P. ZOGG (*pro hac vice*)
sara.zogg@aporter.com
555 Twelfth Street, NW
Washington, DC 20004
Telephone:     202-942-5000
Facsimile:     202-952-5999

JENNIFER A. SKLENAR (SBN 200434)
jennifer.sklenar@aporter.com
NICHOLAS H. LEE (SBN 259588)
nicholas.lee@aporter.com
777 South Figueroa Street, 44th Floor
Los Angeles, CA  90071
Telephone:     213-243-4000
Facsimile:     213-243-4199

MICHAEL A. BERTA (SBN 194650)
michael.berta@aporter.com
One Embarcadero Center, 22nd Floor
San Francisco, CA  94111-3711
Telephone:     415-356-3000
Facsimile:     415-356-3099

Attorneys for Defendant
HOLOGIC, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CONCEPTUS, INC.,<br><br>            Plaintiff,<br><br>     v.<br><br>HOLOGIC, INC.,<br><br>            Defendant. | Case No.: 3:09-cv-02280 WHA<br><br>**HOLOGIC, INC.'s MOTION IN LIMINE NO. 1 TO EXCLUDE INFRINGEMENT OPINION OF MARK GLASSER ON THE "PERMANENTLY AFFIXING . . . SO THAT AT LEAST A PORTION OF THE FALLOPIAN TUBE IS OPEN" LIMITATION AS UNRELIABLE UNDER** *DAUBERT* **AND UNTIMELY**<br><br>Date:          September 16, 2011<br>Time:         9:00 a.m.<br>Courtroom: 9; 19th Floor<br>Judge:        Hon. William Alsup |

## I. INTRODUCTION

Defendant Hologic, Inc. ("Hologic") moves *in limine* under Fed. R. Evid. 702 to exclude Plaintiff Conceptus, Inc.'s, ("Conceptus") expert, Dr. Mark Glasser, from testifying that use of the accused Adiana system meets independent claim 36's requirement of "permanently affixing the resilient structure within the fallopian tube . . . so that at least a portion of the fallopian tube is open." Dr. Glasser's opinion fails to meet the admissibility requirements mandated by *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 499 (1993) ("*Daubert I*") because he does not identify or explain any scientific method or foundation upon which his opinion is based. In addition, much of this substantively inadmissible opinion was untimely disclosed.

## II. APPLICABLE LEGAL STANDARDS

In its role as Rule 702's "gatekeeper," the Court must "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable" before such evidence is admitted. *Daubert*, 509 U.S. at 499. Thus, before an expert can be permitted to give a scientific opinion,[1] the Court must undertake "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts at issue." *Id.* In short, the Court must be satisfied that the proffered testimony is (1) "reliable and (2) that it "fits" the inquiry before the jury. *Id.* at 590-91.

In order to qualify as reliable "*scientific knowledge*," an expert's assertion "must be derived by the scientific method"; that is, it "must be supported by appropriate validation – *i.e.* 'good grounds,' based on what is known." *Id.* While there is no definitive test in this regard, there are several well-recognized factors that may be used to determine whether scientific knowledge is sufficiently reliable, including: (i) whether the theory has "general acceptance" in the field; (ii) whether a theory has been or can be tested; (iii) whether a theory has been subjected to peer review

---

[1] Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

Hologic Mot. In Limine No. 1
Case No. 09-cv-02280-WHA                                       - 1 -

and publication; and (iv) whether in the case of scientific technique, there is a known or potential error rate. *Id.* at 593-594; *Daubert v. Merrell Dow Pharms., Inc.* ("*Daubert II"*), 43 F.3d 1311, 1316-17 (9th Cir. 1995); *see also Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1227 n.1 (9th Cir. 1998) (judging admission of clinical medical testimony by *Daubert* standard in case involving the injection of a substance by a medical doctor for medical reasons). The party offering the expert testimony bears the burden of proving its admissibility. *Lust v. Merrell Dow Pharms., Inc.,* 89 F.3d 594, 598 (9th Cir. 1996).

### III. Dr. Glasser's Opinion Should Be Excluded As Unreliable Under Rule 702

Asserted claims 37 and 38 of U.S. Patent No. 6,634,361 require, by virtue of their dependency on independent claim 36, the step of "permanently affixing a resilient structure within the fallopian tube" "so that at least a portion of the fallopian tube is open." (Dkt. No. 1-2 at 23:45.) In other words, at the time of permanent affixation of the device, the fallopian tube must be at least partially open. At trial, the evidence will show that the accused device functions in the opposite way. In this motion, Hologic does not challenge the correctness of Dr. Glasser's opinion; instead, it moves to exclude his opinion because it is not based upon ***any*** articulated scientific method or foundational analysis.

Dr. Glasser's opinion on the "permanently affixing" limitation appears at pages 30-34 of his Opening Report. (*See* Dkt. No. 275-18, Ex. R at 30-33.) The only portion of the report that appears to bear on whether permanent affixation occurs *while the fallopian tube is open* is as follows:

> During the Adiana procedure and subsequent tissue growth into and around the matrix, the matrix (resilient structure) is also permanently affixed within the fallopian tube.
>
> * * *
>
> Also, "at least a portion of the fallopian tube is open" at the time the Adiana matrix is permanently affixed within the fallopian tube. As previously noted, the matrix has a porous architecture that is open when the matrix is initially placed in the patient. Further, the fact that a portion of the fallopian [tube] remains open is demonstrated by patients having become pregnant by prematurely relying on the Adiana system before their fallopian tubes are occluded.[2]

---

[2] Dr. Glasser provides citations only for the last proposition – *i.e.,* that certain patients became pregnant by allegedly relying upon Adiana before their fallopian tubes were occluded. However,

(Footnote Cont'd on Following Page)

Hologic Mot. In Limine No. 1
Case No. 09-cv-02280-WHA                                  - 2 -

(*See id.* at 31-32.) Nothing in this section identifies any scientific method or foundation on which Dr. Glasser based his opinion, or even a basic explanation for his opinion such as *when* he believes that permanent affixation occurs, *how* he determined that permanent affixation occurs at a particular time, and/or *how* he determined that the fallopian tube remains partially open when permanent affixation occurs. Most notably, it was not until his reply report that Dr. Glasser first espoused his view as to when "permanent affixing" supposedly occurs in the Adiana system – *i.e.,* one to two weeks after the device is placed within the tube (*See* Dkt. No. 275-22, Ex. V at 28-29.)

### A. Dr. Glasser's Opinion Is Unsupported

Even if Dr. Glasser were permitted to testify as to his new opinion, it is not reliable under any of the *Daubert* factors. Dr. Glasser cites no evidence that there is a generally accepted view in the medical community of when permanent affixation occurs or most significantly that the fallopian tube would be open at that time. He cites no publications, peer reviewed or otherwise, to back up his opinion. He has performed no testing and fails to identify any test by which his theory could be validated. *See Daubert I,* 509 U.S. at 593-594; *Daubert II,* 43 F.3d at 1316-17. And even if Dr. Glasser had provided reliable evidence that certain medical devices were permanently affixed when tissue started to grow, he has not explained why this would be true of the Adiana device – *i.e.,* the "fit" requirement of *Daubert.*

As the Ninth Circuit explained in *Daubert II*, "one very significant fact to be considered is whether the expert[] [is] proposing to testify about matters growing naturally and directly out of research they have conducted independently of the litigation, or whether they have developed their opinions expressly for purposes of testifying." *Id.* at 1317. Here, there is no question that Dr. Glasser's "permanently affixing" while "open" opinion does not derive from research he conducted independently of this case. In fact, he is not a pathologist and had not previously provided an opinion of the type that Conceptus now proffers. (Dkt. 87-12 at 38:24-25, 45:20-46:8, 50:23-51:5.)[3]

---

(Footnote Cont'd From Previous Page)
none of the evidence he cites relates on its face to whether permanent affixation has occurred and Dr. Glasser provides no explanation in that regard. (*See* Dkt. No. 275-18, Ex. R at 32.)

[3]   It is worth noting that at two prior stages in this case, Dr. Glasser – a consultant with close ties to Conceptus – has offered conclusory and unsupported opinions under oath only to later provide
(Footnote Cont'd on Following Page)

In the absence of evidence that a proffered opinion is based upon pre-litigation research or has been subject to peer review, "the expert[] must explain precisely how [he] went about reaching [his] conclusions and point to some objective source – a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like – to show that [he] has followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in [his] field." *Daubert II,* 43 F.3d at 1318-19.  Here, however, we have no explanation or objective supporting authority whatsoever.  Instead, the only connection that Dr. Glasser draws between "permanently affixing" of the Adiana device and whether the fallopian tube is still "open" is his own *ipse dixit* proclamation.  *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  As in *Daubert II*, "[p]ersonal opinion, not science, is testifying here."  *Daubert II*, 43 F.3d at 1319.

### B. Mere Reference to Hologic Documents Is Insufficient To Support Dr. Glasser's Opinions Or Render Them Admissible

Conceptus has previously asserted that Dr. Glasser's opinion on the "permanently affixing … so that at least a portion of the fallopian tube is open" requirement is supported by quotations or citations to Hologic's internal documents.  Yet, this is entirely unexplained in Dr. Glasser's opening report.  The bulk of the statements and cited evidence in the relevant section of Dr. Glasser's report do not relate at all to the issue of whether the Adiana device is "permanently affix[-ed]" within the fallopian tube while the fallopian tube is "open." Instead they relate to when the Adiana device is initially placed in the fallopian tube (a time at which he later opined that permanent affixation has *not* yet occurred (*see* Dkt. No. 275-22, Ex. V at 27 n. 38) or an occluded fallopian tube (*i.e.,* a time at which the fallopian tube is *not* open but rather closed).  (*See* Dkt. No. 275-18, Ex. R at 30-33.)

The Federal Circuit has upheld the exclusion of evidence where an infringement expert's opinion consisted almost entirely of quoting from defendants' documents and drawing inferences

---

(Footnote Cont'd From Previous Page)
contrary positions at deposition. (*See* Dkt. No. 154 at 1 n. 2, 12 and Dkt. No. 82 at 5:17-6:16 and cited evidence.) "Certainly, scientists may form initial tentative hypotheses. However, scientists whose conviction about the ultimate conclusion of their research is so firm that they are willing to aver under oath that it is correct prior to performing the necessary validating tests could properly be viewed by the district court as lacking the objectivity that is the hallmark of the scientific method." *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 503 (9th Cir. 1994).

Hologic Mot. In Limine No. 1
Case No. 09-cv-02280-WHA                           - 4 -

from those documents. In so doing, the court emphasized that "the jury was fully capable of understanding those materials without expert assistance and [the patentee's expert's] testimony should have been excluded." *See Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1355 (Fed. Cir. 2007). Here, Dr. Glasser has offered even less in the way of analysis than the expert whose testimony was excluded in *Pharmastem*. He has not provided any cogent explanation as to how *any* Hologic document bears on the "permanently affixing" while "open" requirement or supports his *ipse dixit* conclusion.

## IV.  Dr. Glasser's Untimely Reply Opinions Are Also Unreliable

After Hologic served its responsive expert report pointing out the significant deficiencies in Dr. Glasser's opinion, he belatedly tried to offer new evidence in his reply report to shore up his original position. Even if those portions of Dr. Glasser's reply had been timely,[4] they nevertheless should be excluded as unreliable. *First*, he cites the following chart and suggests that it somehow demonstrates permanent affixation while a tube is "open."

---

[4]  Dr. Glasser's untimely opinions and evidence should be stricken under Fed. R. Civ. P. 37(c)(1) and this Court's Case Management Order. The Court specifically instructed the parties that reply expert reports "must be limited to true rebuttal." (Dkt. No. 130 ¶ 8.) In response to Hologic's prior motion to strike that raised similar timeliness issues (denied without prejudice), Conceptus offered the mutually inconsistent excuses that: (1) it was somehow defendant Hologic's fault that Dr. Glasser was forced to present new evidence on reply because Hologic had not made it sufficiently clear that it was disputing the "permanently affixing" while "open" requirement; and (2) Dr. Glasser's reply arguments and evidence were, in fact, not actually new and could be found in the opening report. (Dkt. No. 317 at 13-17.) Both arguments are without merit. First, Conceptus cannot credibly contend that it did not understand that it had to present reliable evidence to meet its burden on each claim limitation. Second, any argument that Dr. Glasser's belated opinions were somehow disclosed in his opening report is wrong. Because Conceptus has nothing specific to point to, it instead must cobble together scattered quotes and phrases from Dr. Glasser's opening report on *other* claim limitations that were never offered or explained as relevant to when permanent affixation occurs or whether it occurred when the fallopian tube remained partially open. (Dkt. No. 317 at 16; Dkt. No. 275-18, Ex. R at 25 -36.) Regardless, simply quoting the wording of documents without providing a reliable scientific opinion as to how it relates to the claim limitation at issue is not appropriate expert testimony and would not be helpful to the jury. *See Pharmastem*, 491 F.3d at 1355.

Hologic Mot. In Limine No. 1
Case No. 09-cv-02280-WHA                          - 5 -



(*See* Dkt. No. 275-22, Ex. V at 28.) Yet, Dr. Glasser's sole explanatory remark about this chart is that it shows that "tissue ingrowth into the matrix proceeds over time." (*Id.* at 27.) He fails to provide any explanation for the data contained in this chart, how it relates to permanent affixation in a fallopian tube, or how it supposedly evidences that permanent affixation occurs while the tube remains partially open. Given his failure to tie this chart to his underlying conclusory opinion or the claim requirement at issue, it would be highly prejudicial for Dr. Glasser to be able show it to the jury and testify that it somehow provides evidence of infringement.[5]

*Second,* Dr. Glasser's reply report quotes certain "design goals" in an Adiana document that the Adiana matrix be "[c]apable of maintaining position for a short period (1 to 3 weeks) until cellular ingrowth maintains the matrix position in the tubal lumen." (*Id.*) Yet, he fails to provide any medical or scientific explanation as to why "maintain[ing] the matrix position" can be equated with the claim requirement of "permanent" affixation while the fallopian tube is partially "open," an important foundational issue since claim 36 originally recited "affixing" and was amended during prosecution to require "*permanently* affixing . . . *so that at least a portion of the fallopian tube is open*" Compare Dkt. No. 275-18, Ex. R at 30-34 (opening report) *with* Dkt. No. 275-22, Ex. V at 27-30 (reply report); Dkt. No. 271 at 5. Simply parroting the wording of a document without providing a reliable scientific opinion as to how it relates to the claim limitation at issue is not appropriate expert testimony and would not be helpful to the jury. *See Pharmastem*, 491 F.3d at 1355.

*Third*, Dr. Glasser's reply report recites a number of conclusory statements, which bear directly on his ultimate opinion of infringement. For instance, he declares that,

---

[5] Dr. Glasser also suggests that the histology chart somehow confirms *when* tissue ingrowth will occur. (Dkt. No. 275-22, Ex. V at 28.) Given that there is no time data in the chart shown along the x-axis, this opinion is also unsupported and unreliable and would not be helpful to the jury.

Hologic Mot. In Limine No. 1
Case No. 09-cv-02280-WHA - 6 -

> The tissue from the fallopian tube will grow into the matrix from the edge of the matrix anchored to the tubal wall inward. During this period of tissue ingrowth, the matrix permanently affixed. Also during the period of tissue ingrowth, the fallopian tube remains open after the matrix is permanently affixed and until the matrix is fully integrated.

(*See* Dkt. No. 275-22, Ex. V at 28.)  Yet, these statements are each bereft of any citations or any identifiable scientific methodology or foundation to support them.

*Fourth,* Dr. Glasser tries to fill in gaps in his opinion with a new document and hearsay. Specifically, he cites a document from the Adiana clinical trial, which indicates that an ultrasound would be performed on patients prior to discharge from the procedure. Dr. Glasser then proceeds to recite previously unmentioned several-year old hearsay from an unidentified person who allegedly told him that "the protocol changed [to two weeks post procedure] because the matrix would not be visible until some ingrowth of fibrous tissue occurred." (*Id.* at 29.)  He then concludes that "[t]his [ingrowth] happens at one to two weeks when the matrix becomes permanently affixed with tissue ingrowth but while the tube is still open," again with no support whatsoever. (*See id.*)

*Fifth,* Dr. Glasser attempts to offer supposed histological evidence about the tissue ingrowth resulting from **Conceptus'** commercial Essure product as apparent evidence of the tissue ingrowth that would result from **Hologic's** commercial Adiana product. (*Id.* at 29.)  Dr. Glasser never explains how or why data concerning Conceptus' commercial product bears on Hologic's accused Adiana product, particularly since Essure and Adiana are different systems that utilize different designs and materials.[6]  Dr. Glasser's suggestion that the Essure tissue ingrowth data "confirm[s]" anything about Adiana is thus just another conclusory, untested and unreliable proclamation. (*Id.*)

Dated:  August 29, 2011                                Respectfully submitted,

By:  */s/ Nicholas H. Lee*
     Nicholas H. Lee (SBN 259588)

**Arnold & Porter LLP**
44th Floor
777 South Figueroa Street
Los Angeles, CA  90071

---

[6]    In fact, one of the FDA panel members who reviewed Adiana for FDA approval noted that the tissue ingrowth between the two companies' products was different. (Dkt. No. 95-6 at 129-131.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Telephone:  (213) 243-4000
Facsimile:  (213) 243-4199
Email:  nicholas.lee@aporter.com

*Attorneys for Defendant HOLOGIC, INC.*

Hologic Mot. In Limine No. 1
Case No. 09-cv-02280-WHA             - 8 -

**SIDLEY AUSTIN LLP**
M. PATRICIA THAYER (SBN 90818)
pthayer@sidley.com
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone:   415-772-1200
Facsimile:    415-772-7400

BRYAN K. ANDERSON (SBN 170666)
bkanderson@sidley.com
AARON R. BLEHARSKI (SBN 240703)
1001 Page Mill Road, Building 1
Palo Alto, CA 94304
Telephone:   650-565-7000
Facsimile:    650-565-7100

NITIN REDDY (SBN 229451)
nreddy@sidley.com
TASHICA T. WILLIAMS (SBN 256449)
ttwilliams@sidley.com
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Telephone:   213-896-6000
Facsimile:    213-896-6600

Attorneys for Plaintiff
Conceptus, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CONCEPTUS, INC.,<br><br>            Plaintiff,<br><br>     v.<br><br>HOLOGIC, INC.,<br><br>            Defendant. | Case No. 09-cv-02280-WHA<br><br>**CONCEPTUS' OPPOSITION TO HOLOGIC'S MOTION *IN LIMINE* #1**<br><br>Trial Date:    September 16, 2011<br>Time:           9:00 am<br>Courtroom:   9, 19th Floor<br>Judge:          Hon. William H. Alsup |

Conceptus respectfully requests that this Court deny Hologic MIL #1 and permit Dr. Glasser to testify concerning his opinions and the evidence showing that the Adiana matrix is permanently affixed while the fallopian tube remains open.[1]

## ARGUMENT

Hologic's argument concerning whether the Adiana matrix is permanently affixed by tissue ingrowth while the fallopian tube remains open (MIL #1) was considered by the Court in denying the parties cross-motions for summary judgment. As the Court explained:

> The crux of the argument is on the facts, and the question of whether the Adiana procedure satisfies the requirements of the asserted method claims is a fact issue for the jury to decide. Specifically, the question of when the Adiana matrix becomes "permanently affixed" in one on which reasonable jurors could disagree. By way of simple analogy, if one were to permanently affix two foot-long steel bars to each other by welding them together lengthwise, reasonable jurors could disagree as to how much of the foot-long weld joint must be completed before the bars are permanently affixed. So to here; reasonable jurors could disagree as to how much (if any) tissue ingrowth must take place before the Adiana matrix is permanently affixed within the fallopian tube.

Dkt. No. 356 at 12:4-12. Hologic's MIL #1 must fail because Dr. Glasser's opinions are reliable, and were timely disclosed.

Conceptus has previously addressed Hologic's efforts to exclude Dr. Glasser from testifying in Conceptus' Opposition to Hologic's Motion to Strike Expert Opinions. Dkt. No. 329. Contrary to Hologic's repetitive arguments, Dr. Glasser's analysis is amply supported by scientifically valid methods, reasoning and data that can be applied to the facts of this case, and which were timely disclosed.

As an initial matter, Hologic's motion invites the Court to reconsider whether the jury should decide if permanent affixation occurs before or after occlusion. However, "it is not the district court's role under *Daubert* to evaluate the correctness of facts underlying an expert's testimony.

---

[1] Twice this Court has warned the parties not to file additional summary judgment motions. The June 16, 2011 Order Setting Trial cautioned that "[f]or the final pretrial conference, both sides may file up to five motions in limine, preferably short ones *and not disguised summary judgment motions*." Dkt. No. 373 (emphasis added). The August 9, 2011 Order Denying Motion for Leave to File Summary Judgment Motion stated that "Hologic's request raises issues that already were litigated during the first round of summary judgment motions" and "Hologic has not shown good cause for revisiting the summary judgment rulings at this late stage." Dkt. No. 379. Despite these admonitions, Hologic effectively seeks another chance at its summary judgment motion of non-infringement in the guise of four motions in limine (MIL #1 and #5 concern affixation, while MIL #2 and #4 concern indirect infringement).

CONCEPTUS' OPPOSITION TO HOLOGIC'S MOTION *IN LIMINE* #1
CASE NO. 09-cv-02280-WHA

Questions about what facts are most relevant or reliable … are for the jury." *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010), *aff'd* 131 S.Ct. 2238 (2011).  Nor does *Daubert* empower trial courts to determine which of several competing theories has the best provenance.  *See Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998).  As the Ninth Circuit has stated:

> The test is whether or not the reasoning is scientific and will assist the jury.  If it satisfies these two requirements, then it is a matter for the finder of fact to decide what weight to accord the expert's testimony.  In arriving at a conclusion, the fact finder may be confronted with opposing experts, additional tests, experiments, and publications, all of which may increase or lessen the value of the expert's testimony.  But their presence should not preclude the admission of the expert's testimony – they go to the weight, not the admissibility.

*Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230-31 (9th Cir. 1998).  "Disputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony." *Id.* at 1231 (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995)); *see also i4i*, 598 F.3d at 856 ("As the Supreme Court explained in *Daubert*, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence'") (citation omitted).  Dr. Glasser's opinion and analysis that tissue ingrowth affixes the matrix prior to occlusion is admissible as scientific, and because his testimony will assist the jury in navigating the FDA materials, histological data, and peer reviewed publications concerning the progress of tissue ingrowth.

Dr. Glasser clearly opined in his opening report that "'at least a portion of the fallopian tube is open' at the time the Adiana matrix is permanently affixed within the fallopian tube."  Dkt. No. 275-18 (Ex. R) at 32.  Dr. Glasser carefully explained his reasoning in reaching an opinion that the Adiana matrix is permanently affixed while the fallopian tube remains open.  For example, he explained that "The Adiana method of permanent sterilization consists of four steps" in which … (2) the **Adiana matrix is deployed within the patient's fallopian tubes** within the region where the RF energy was delivered **resulting in tissue ingrowth and eventual occlusion of the fallopian tube** along the length of the matrix"  Dkt. No. 275-18 (Ex. R) at  25 (emphasis added).  He also described how "[d]uring the Adiana procedure and subsequent tissue growth into and around the

-2-

matrix, the matrix (resilient structure) is also permanently affixed within the fallopian tube." *Id.* at 31. Dr. Glasser referred throughout his analysis to the FDA approved Adiana Instructions For Use, including his analysis of "the Adiana system's mechanism of action, the Adiana IFU states that the tissue growth into and around 'the matrix is the ***expected end result*** which in turn results in tubal occlusion.'" *Id.* at 33(emphasis added). Dr. Glasser referred Hologic produced records to stating that "histological tests demonstrated that '[t]he Adiana procedure results in the host response, which is expected for soft tissue implants . . . which integrates the device within the surrounding tissue'" (*Id.* at 34) and that the "[h]istological data shows that the matrix becomes biologically integrated within the fallopian tube ***a few weeks after placement***." *Id.* at 36 (emphasis added).[2]

In support of his opinion, Dr. Glasser described and relied upon numerous reliable and scientific pre-litigation sources, including Hologic's own representations to the FDA concerning the Adiana mechanism of action, the FDA mandated descriptions of the Adiana mechanism of action, and Hologic's internal design specifications for the Adiana matrix. For example, a section of the Adiana PMA cited by Dr. Glasser's discussion of tissue ingrowth states "[t]he matrix has been designed to provide a suitable architecture for tissue in-growth during this wound healing response" and "[t]he action of the matrix is not simply to mechanically occlude the tube, but rather to create a tissue scaffold leading to occlusion through the natural healing response." Thayer Decl. at ¶ 2, Ex. A (HOL-CON 0000046). *See also id.* at ¶ 3, Ex. B (HOL-CON 0073857). Another section of the Adiana PMA showed that in the clinical trials, 49 patients had patent (open) fallopian tubes 12 weeks after the Adiana procedure, and 18 of these patients had occluded fallopian tubes at 24 weeks. *Id.* at ¶ 4, Ex. C (HOL-CON 0001659).

Dr. Glasser also identified, extensively quoted from, and cited to the Adiana FDA panel presentation in support of his opinions. Dkt. No. 275-18 (Ex. R) at 27-29, 31, 33-36, B-8, B-10, B-29. The FDA panel presentation transcript confirms "over the next few weeks [after the Adiana procedure], the wound-healing response results in tissue ingrowth and ultimately tubal occlusion."

---

[2] Hologic's motion misrepresents Dr. Glasser's analysis of affixation through tissue ingrowth by failing to identify the full and fair scope of his analysis. In addition to his background discussion of Adiana, Dr. Glasser's analysis of the progress of tissue ingrowth includes not only his discussion of claim 36, but also his analysis of claims 37 and 38, and his analysis of the Adiana system. *See, e.g.*, Dkt. No. 275-18 (Ex. R) at 22-24, 34-37, 38.

-3-

1 Dkt. No. 300-7 (Ex. 7) at HOL-CON 0004790. Dr. Glasser's opening disclosures also quoted from, cited to, and identified Hologic's design specifications for the Adiana matrix, as well as Hologic's 30(b)(6) testimony concerning these specifications, as support for the porous architecture of the matrix promoting tissue ingrowth into the matrix. Dkt No. 275-18 (Ex. R) at 37. These design specifications also state that tissue ingrowth "maintains" the matrix in place in one to three weeks after the Adiana procedure. Dkt. No. 281-10 (Ex. 21) at HOL-CON 0092453, HOL-CON 0092463, HOL-CON 0092481, HOL-CON 00092490; Dkt. No. 300-4 (Ex. 4) at HOL-CON 0005986.

Also in his opening report, Dr. Glasser offered opinions that the Essure method practices the claimed method through tissue ingrowth permanently affixing the device while the fallopian tube is open. Dr. Glasser stated, for example "[t]he Essure micro-implant is also permanently affixed within the patient's fallopian tube. As the Essure IFU explains, this is accomplished through the combination of the mechanical anchoring force of the Essure implants Nitinol coil in the near term, and the tissue ingrowth from the tubal wall into the Essure implant…." Dkt. No. 275-18 (Ex. R) at 20 (footnote omitted). Dr. Glasser further opined that "[a]fter the Essure implant is affixed in the patient's fallopian tube, a portion of the tube is open; i.e. not completely occluded" (*Id.*), explaining that "histological data confirmed that tissue ingrowth began as early as 8 days after the Essure procedure, and that by 5 ½ weeks significant tissue ingrowth had occurred. By 12-13 weeks, the Essure implant was completely incorporated into the fallopian tube tissue." *Id*. at 23-24 (citations omitted).

Dr. Glasser relied upon materials submitted to the FDA and peer reviewed articles for his analysis of tissue ingrowth. For example, Dr. Glasser's citations at page 20-21 of his opening report to Valle, F *et al*. Tissue Response to the STOP microcoil transcervical permanent contraceptive device: results from a prehysterectomy study. Fertility and Sterility. 76; 5:974-980 (2001) is to a peer-reviewed article that discussed the histological evidence concerning the progress of tissue ingrowth into the Essure micro-insert over time. Thayer Decl. at ¶ 5, Ex. D (CON00034519-520). Dr. Glasser also explained that patients who had open fallopian tubes three months after their

-4-

1 procedure were shown to have occluded fallopian tubes six months after the procedure. *Id.* at 23.[3]

2 Hologic's cited cases do not support exclusion of Dr. Glasser's opinions. In *Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1355 (Fed. Cir. 2007), the excluded expert relied principally on marketing and investor relation materials for her infringement opinion. In contrast, Dr. Glasser has relied on FDA submissions, design specifications, the Adiana Instructions for Use, physician training materials, and peer reviewed articles in forming his opinions relevant to the progress of tissue ingrowth. The Ninth Circuit reversed the trial court's exclusion of an expert's opinions based on a lack of epidemiological or animal studies, because the expert had relied on relevant data from clinical trials and peer-review publications. *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1228-30 (9th Cir. Cal. 1998).[4]

Dr. Glasser's reply report also appropriately responded to Hologic's expert by stating the reasons for his disagreement with Dr. Anderson's opinions concerning permanent affixation. (Dkt. No. 275-22 (Ex. V) at 2-3, 14, 27-32). Because the opinions that Hologic attacks were disclosed, Hologic's demand that they be excluded pursuant to Rule 37 should also be denied. *See Informatica Corp. v. Bus. Objects Data Integration, Inc.*, 2007 U.S. Dist. LEXIS 16247, *12-13 (N.D. Cal. Feb. 23, 2007)("Any inconsistencies may be adequately addressed by cross-examination.") (citation omitted).

## **CONCLUSION**

Conceptus respectfully requests that Hologic's MIL #1 be denied.

---

[3] While Hologic may seek to argue that tissue ingrowth is different between Essure and Adiana, that theory is not a basis to exclude Dr. Glasser's contrary opinion.

[4] In contrast to the pre-litigation studies and data relied upon by Dr. Glasser, the Ninth Circuit affirmed exclusion of an expert where the only relevant study the expert relied on was prepared for litigation. *Lust by & Through Lust v. Merrell Dow Pharms.*, 89 F.3d 594, 597 (9th Cir. Cal. 1996) ("Although Done published the 1984 article prior to this litigation, he was at that time already a professional plaintiff's witness.")

-5-

| | | |
|---|---|---|
| 1 | Dated: September 8, 2011 | SIDLEY AUSTIN LLP |

                                                      /s/  M. Patricia Thayer
                                        M. PATRICIA THAYER (SBN 90818)
                                        pthayer@sidley.com
                                        555 California Street, Suite 2000
                                        San Francisco, CA 94104
                                        Telephone:     415-772-1200
                                        Facsimile:     415-772-7400

                                        BRYAN K. ANDERSON (SBN 170666)
                                        bkanderson@sidley.com
                                        AARON R. BLEHARSKI (SBN 240703)
                                        ableharski@sidley.com
                                        1001 Page Mill Road, Building 1
                                        Palo Alto, CA 94304
                                        Telephone:     650-565-7000
                                        Facsimile:     650-565-7100

                                        NITIN REDDY (SBN 229451)
                                        nreddy@sidley.com
                                        TASHICA T. WILLIAMS (SBN 256449)
                                        ttwilliams@sidley.com
                                        555 West Fifth Street, Suite 4000
                                        Los Angeles, CA 90013
                                        Telephone:     213-896-6000
                                        Facsimile:     213-896-6600

                                        ***Counsel for Plaintiff Conceptus, Inc.***

-6-

CONCEPTUS' OPPOSITION TO HOLOGIC'S MOTION *IN LIMINE* #1
CASE NO. 09-cv-02280-WHA