**ARNOLD & PORTER LLP**
MATTHEW M. WOLF (*pro hac vice*)
matthew.wolf@aporter.com
JOHN E. NILSSON (*pro hac vice*)
john.nilsson@aporter.com
SARA P. ZOGG (*pro hac vice*)
sara.zogg@aporter.com
555 Twelfth Street, NW
Washington, DC 20004
Telephone:     202-942-5000
Facsimile:     202-952-5999

JENNIFER A. SKLENAR (SBN 200434)
jennifer.sklenar@aporter.com
NICHOLAS H. LEE (SBN 259588)
nicholas.lee@aporter.com
777 South Figueroa Street, 44th Floor
Los Angeles, CA  90071
Telephone:     213-243-4000
Facsimile:     213-243-4199

MICHAEL A. BERTA (SBN 194650)
michael.berta@aporter.com
One Embarcadero Center, 22nd Floor
San Francisco, CA  94111-3711
Telephone:     415-356-3000
Facsimile:     415-356-3099

Attorneys for Defendant
HOLOGIC, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| CONCEPTUS, INC.,<br><br>                    Plaintiff,<br><br>      v.<br><br>HOLOGIC, INC.,<br><br>                 Defendant. | Case No.: 3:09-cv-02280 WHA<br><br>**HOLOGIC, INC.'S MOTION IN LIMINE NO. 2 TO EXCLUDE OPINIONS OF MARK GLASSER ON THE ISSUES OF CONTRIBUTORY AND INDUCED INFRINGEMENT**<br><br>Date:         September 16, 2011<br>Time:         9:00 a.m.<br>Courtroom:  9; 19th Floor<br>Judge:       Hon. William Alsup |

1    **I.     INTRODUCTION**

2         Defendant Hologic, Inc. ("Hologic") moves *in limine* under Fed. R. Evid. 702 to exclude

3    Plaintiff Conceptus, Inc.'s ("Conceptus") expert, Dr. Mark Glasser, from testifying on certain

4    elements of contributory or induced infringement.

5         The Supreme Court has recently confirmed in *Global-Tech Appliances, Inc., v. SEB S.A.*,

6    131 S.Ct. 2060 (2011) that both types of indirect infringement require ***knowledge*** that the induced

7    acts constitute ***patent infringement***.  *Global-Tech*, 131 S.Ct. at 2068.  While Dr. Glasser's report

8    suggests that he intends to offer an opinion as to Hologic's purported knowledge, any such opinion

9    would be inherently improper as state of mind is not generally an appropriate subject of expert

10   testimony.  Moreover, Dr. Glasser's assertions about Hologic's supposed knowledge are irrelevant

11   under the governing legal standards.   Thus, his opinion would be unhelpful to the jury.

12        Dr. Glasser's opening report also suggests that he will offer certain opinions about whether

13   components of the Adiana system are "*especially made and adapted to practice claims 37 and 38 of*

14   *the '361 patent*," an issue specific to contributory infringement.  In that section of his report,

15   however, Dr. Glasser again applies the wrong legal standard – *i.e.,* whether the components are

16   especially adapted for use *in the Adiana procedure* – rendering his opinion irrelevant.  Finally,

17   while Dr. Glasser's opening report suggests that he intends to offer a separate opinion on the issue

18   of induced infringement, there is no such section or analysis to be found in that report.  Dr. Glasser

19   should not be permitted to now testify on issues for which he failed to disclose the contents and

20   bases of his opinion.

21   **II.    APPLICABLE LEGAL STANDARDS**

22        In its role as Rule 702's "gatekeeper," the Court must "ensure that any and all scientific

23   testimony or evidence admitted is not only relevant, but reliable" before such evidence is admitted.

24   *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 499 (1993) ("*Daubert I*").  Thus, before an

25   expert can be permitted to give a scientific opinion under Rule 702,[1] the Court must undertake " a

---

[1]    Rule 702 of the Federal Rules of Evidence provides:

      If scientific . . . knowledge will assist the trier of fact to understand the evidence or to
      determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training,

(Footnote Cont'd on Following Page)

preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts at issue." *Id.*

## III.   DR. GLASSER SHOULD BE PRECLUDED FROM OFFERING TESTIMONY ON THE ISSUE OF CONTRIBUTORY INFRINGEMENT

In order to prove that Hologic contributed to infringement of claims 37 and 38, Conceptus must introduce timely and reliable evidence to show, among other things, that Hologic knew that the Adiana matrix was especially made or especially adapted for use *in an infringement of claims 37 and 38 of the '361 patent*. *See* 35 U.S.C. § 271(c).  The Supreme Court has recently confirmed in *Global-Tech* that contributory infringement, like induced infringement, requires **knowledge** that the induced acts constitute **patent infringement.**  *Global-Tech*, 131 S.Ct. at 2068.

Conceptus appears intent on offering at trial the opinions of Dr. Glasser on certain issues purportedly relevant to contributory infringement.  Among other things, in his opening report, Dr. Glasser provides his opinions as to (i) Hologic's state of mind and (ii) whether components of the Adiana system are "especially adapted" to perform the Adiana procedure.  As explained below, these opinions should be excluded.

### A.   Dr. Glasser's Opinion As To Hologic's "Knowledge"

Dr. Glasser states at page 37 footnote 24 of his opening report that "Hologic … knew, based on its own instructions, training materials, and communications with physicians, that the *Adiana system components are especially adapted to carry out the Adiana procedure*, a method that practices [claims 37 and 38].  Hologic also knows that physicians are following the Adiana procedure as described in the Adiana IFU."  (Dkt. No. 275-18, Ex. R at 37 (citations omitted).) Nothing in Dr. Glasser's report or CV suggests why he should be considered to be an expert on the state of mind of corporate executives.  Moreover, there is ample authority that it is improper to offer expert testimony on a party's subjective belief or intent.  *Mukhtar v. Cal. State Univ.*, 299 F.3d

_____

(Footnote Cont'd From Previous Page)
or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

1053, 1066 n. 10 (9th Cir. 2002), *amended by* 319 F.3d 1073 (9th Cir. 2003); *see also In re REMEC Inc. Sec. Litig.*, 702 F.Supp.2d 1202, 1242 (S.D. Cal. 2010) (recognizing the impropriety of expert witness testimony regarding a party's mental state); *Estate of Gonzales v. Hickman*, Case No. 05-660 MMM (RCX), 2007 WL 3237727, *3 n. 34 (C.D. Cal. May 30, 2007) ("Rule 702 ensures that expert witnesses will not testify about 'lay matters which a jury is capable of understanding and deciding without the expert's help.' In other words, experts should not be permitted to 'supplant the role of counsel in making argument at trial, and the role of the jury in interpreting the evidence.' Examples of 'expert' testimony that courts have excluded on this basis include factual narratives and interpretations of conduct or views as to the motivation of parties.") (citing *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546-47 (S.D.N.Y. 2004)); *SEC v. Johnson,* 525 F.Supp.2d 70, 79 (D.D.C. 2007) (excluding expert testimony on intent).

In addition, the issue of whether Hologic knew that its Adiana product *is adapted to perform the Adiana procedur*e is legally irrelevant; indeed, *Global-Tech* confirmed that the relevant question is whether the accused infringer had knowledge that use of its product constitutes *patent infringement. See Global-Tech*, 131 S.Ct. at 2068. Thus, Dr. Glasser's opinion as to Hologic's state of mind would be unhelpful and likely serve only to confuse the jury.

### B.     Dr. Glasser's Opinion As Whether Components of Adiana Are "Especially Adapted" To Practice Claims 37 And 38

Dr. Glasser's opinion on the issue of whether Adiana is "especially adapted" to perform claims 37 and 38 fares no better.

#### 1.     Dr. Glasser's Opening Report

Although Dr. Glasser states very early in his opening report that he has been asked to opine on whether "components of the Adiana system, including the matrix, catheter, and RF generator, *are especially made and adapted to practice claims 37 and 38 of the '361 patent*," his actual opinion bears little, if any, relationship to that assignment. Instead, Dr. Glasser offers the somewhat cryptic opinions that each component of the Adiana system is especially adapted for use *in the Adiana procedure*. For example:

- "The Adiana matrix has a number of features that are especially adapted and made *to perform the Adiana procedure*, and that are not found on common components." (Dkt. No. 275-18, Ex. R at 37 (emphasis added).)

- "The Adiana catheter has a number of features that are especially adapted and made *to perform the Adiana procedure*, and that are not found on common components." (*Id.* at 39 (emphasis added).)

- "The Adiana RF generator has a number of features that are especially adapted and made *to perform the Adiana procedure*, and that are not found on common components." (*Id.* at 40 (emphasis added).)

It is simply irrelevant whether components of the Adiana system are especially adapted for use in the Adiana procedure. Indeed, one would expect that most companies' products are specifically designed to be used in the procedure for which they are sold. The relevant question, instead, is whether components of the Adiana system are especially made or adapted to perform claims 37 and 38. *See* 35 U.S.C. § 271(c). Yet, Dr. Glasser does not tie his opinions to specific claim limitations.

For example, the totality of his opinion on whether the Adiana matrix is especially adapted to infringe claims 37 and 38 is below:

The Adiana matrix is especially made or adapted for use in the Adiana procedure, a method that practices claims 37 and 38 of the '361 patent. The Adiana matrix is not a common component suitable for other uses. The Adiana matrix has a number of features that are especially adapted and made to perform the Adiana procedure, and that are not found on common components. A graphic provided to FDA explains some of these features:



HOL-CON 0005333. *See also* HOL-CON 0009972.

As noted previously:

The matrix functions as a benign and permanent scaffold during wound healing. Within the region surrounding the solid core of the matrix, a porous architecture encourages a tissue in-growth response eventually leading to total occlusion of the tube.

The procedure results in a host response which is expected for soft tissue implants such as the matrix. The initial response is due to the actual surgical procedure itself, and is similar to any acute healing mechanism. * * * Integration of this fibrous tissue into the matrix is the expected end result which in turn results in tubal occlusion.

IFU-3 to IFU-4.  See also HOL-CON 0004788-89.  The training material for the Adiana procedure includes slides of the matrix demonstrating such tissue ingrowth.  HOL-CON 0103283.  The IFU also states:

> The matrix is made of silicone and is comprised of a solid core surrounded by a porous architecture (Figure 3).  It is approximately 3.5 mm in length and 1.6 mm in diameter …

IFU-4.  As noted previously, this is a size that permits the matrix architecture to apply an anchoring force to the fallopian tube walls.

(*See, e.g.*, Dkt. No. 275-18, Ex. R at 37-39.)

The only specific claim limitation that Dr. Glasser comes anywhere close to mentioning is the "imposing an anchoring force" limitation of independent claim 36.  (*See, e.g.*, Dkt. No. 275-18, Ex. R at 38-39 (the size of the Adiana matrix "permits the matrix architecture to apply an anchoring force to the fallopian tube walls").)[2]  The remainder of his limited opinion simply consists of quoting or citing documents without any analysis or explanation about how they may bear on the asserted claim limitations.

The *Pharmastem* case is directly on point.  There, the Federal Circuit upheld the exclusion of evidence on the issue of contributory infringement, where the expert's opinion consisted almost entirely of quoting from defendants' documents and drawing inferences from those documents.  In so doing, the court emphasized that "the jury was fully capable of understanding those materials without expert assistance and [the patentee's expert's] testimony should have been excluded."  *See Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1355 (Fed. Cir. 2007).  Here too, Dr. Glasser offers nothing but unsupported conclusions and unexplained citations to documents.  His opinion should be excluded.

### 2.    Dr. Glasser's Reply Report

After Hologic's expert pointed out in his rebuttal report that Dr. Glasser's opinions appeared untethered to the limitations of claims 37 and 38, Dr. Glasser belatedly attempted to cure some of those deficiencies in his reply report.  (Dkt. No. 275-22, Ex. V at 33-36.)  There, for the very first

---

[2]    However, even for that claim limitation, he fails to mention or analyze the full claim requirement "imposing an anchoring force … by resiliently engaging an inner surface of the tubal wall."  (Dkt. No. 1-2 at 23:41.)

1    time, he tried to tie his opinion to specific claim limitations, in so doing quoting new portions of

2    documents and citing new evidence.  These belated opinions and evidence violate the Federal Rules

3    of Civil Procedure and Case Management Order and should be excluded.  (*See* Dkt. No. 130 ¶ 8.)

4            Fed. R. Civ. P. 26(a) requires that expert reports "shall contain," among other things, "a

5    *complete statement of all opinions* to be expressed and the *basis and reasons therefore*."  Fed. R.

6    Civ. P. 26(a)(2)(B) (emphasis added).  The required disclosures "shall be made at the times and in

7    the sequence directed by the court."  Fed. R. Civ. P. 26(a)(2)(C).  This Court specifically instructed

8    the parties in the Case Management Order, that reply expert reports "must be limited to true

9    rebuttal."  (Dkt. No. 130 ¶ 8.)  Additional detail that could have been included in an opening report,

10    as well as attempts to cure deficiencies in an opening report, is prohibited on reply.  (*See id.*)

11            Excluding expert evidence as a sanction for failure to timely disclose expert opinions is

12    "automatic" and "self-executing."  *Yeti By Moll, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101,

13    1106 (9th Cir. 2001).  Unless a party has substantial justification for its failure to disclose

14    information required by Rule 26(a) in its original report (or unless the omission was "harmless"), it

15    may not use that information at trial.  Fed. R. Civ. P. 37(c)(1).  Parties "will pay a price for failure

16    to comply strictly with scheduling and other orders, and that failure to do so may properly support

17    severe sanctions and exclusions of evidence."  *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052,

18    1060 (9th Cir. 2005).  As this Court has noted, "an expert's testimony shall be limited in substance

19    to what he considered in his opening report. Thereafter, the expert cannot fix its deficiencies."

20    *Keytrack, Inc. v. Key Register LLC*, No. C-03-00870 WHA, 2004 WL 2944043, at *3 (N.D. Cal.

21    Mar. 30, 2004).

22            Here, Conceptus has no substantial justification for failing to tie Dr. Glasser's opinion on

23    whether components of the Adiana system are especially made and adapted to practice claims 37

24    and 38 to the specific limitations of the claims.  Even if his opinions were timely, they again consist

25    mostly of unsupported assertions and drawing inferences from quotations in documents.  Thus, his

26    opinion is not only untimely but unhelpful and should be excluded.  *Pharmastem*, 491 F.3d at 1355.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.  DR. GLASSER SHOULD BE PRECLUDED FROM OFFERING TESTIMONY ON THE ISSUE OF INDUCED INFRINGEMENT

In his opening report, although Dr. Glasser indicates that he was separately asked to opine on whether Hologic "instructs and trains physicians to practice claims 37 and 38," he does not devote any section of his report to this issue and nowhere purports to provide an analysis of it.  (*See generally* Dkt. No. 275-18, Ex. R at 3 (listing the issues on which he was asked to opine), 37-42 (discussing contributory infringement, but not inducement).)  Dr. Glasser's reply report is similarly silent, with the only exceptions being cryptic comments about the Instructions for Use in a section of his reply report that discusses contributory infringement:

- "Dr. Anderson does not offer any opinions or evidence that Hologic did not know of the '361 patent, or did not intend that physicians follow the IFU instructions, or did not know that physicians follow the IFU instructions."

- "Hologic's instructions to physicians are very clear than when the Adiana matrix is placed in the fallopian tube, and while tissue ingrowth is proceeding, the fallopian tube remains open."

- "[P]hysicians are repeatedly instructed by Hologic through the Adiana IFU that the Adiana procedure disrupts the architecture of the fallopian tubes from the initial procedure through tissue ingrowth, eventually leading to total occlusion."

(Dkt. No. 275-22, Ex. V at 33, 34.)  It is unclear from these statements whether Conceptus intends to have Dr. Glasser provide an opinion at trial on the alleged inducement of infringement of claims 37 and 38, but any such attempts should be barred as improper and untimely.

Dated:  August 29, 2011          Respectfully submitted,

By:  */s/ Nicholas H. Lee*
Nicholas H. Lee (SBN 259588)

ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA  90071
Telephone:  (213) 243-4000
Facsimile:  (213) 243-4199
Email:  nicholas.lee@aporter.com

*Attorneys for Defendant HOLOGIC, INC.*

1  **SIDLEY AUSTIN LLP**
   M. PATRICIA THAYER (SBN 90818)
2  pthayer@sidley.com
   555 California Street, Suite 2000
3  San Francisco, CA 94104
   Telephone:    415-772-1200
4  Facsimile:    415-772-7400

5  BRYAN K. ANDERSON (SBN 170666)
   bkanderson@sidley.com
6  AARON R. BLEHARSKI (SBN 240703)
   1001 Page Mill Road, Building 1
7  Palo Alto, CA 94304
   Telephone:    650-565-7000
8  Facsimile:    650-565-7100

9  NITIN REDDY (SBN 229451)
   nreddy@sidley.com
10 TASHICA T. WILLIAMS (SBN 256449)
   ttwilliams@sidley.com
11 555 West Fifth Street, Suite 4000
   Los Angeles, CA 90013
12 Telephone:    213-896-6000
   Facsimile:    213-896-6600
13
   Attorneys for Plaintiff
14 Conceptus, Inc.

15                    UNITED STATES DISTRICT COURT

16                  NORTHERN DISTRICT OF CALIFORNIA

17                      SAN FRANCISCO DIVISION

18

19 CONCEPTUS, INC.,                      Case No. 09-cv-02280-WHA

20              Plaintiff,               **CONCEPTUS' OPPOSITION TO
                                         HOLOGIC'S MOTION *IN LIMINE* #2**
21        v.
                                         Trial Date:    September 16, 2011
22 HOLOGIC, INC.,                        Time:          9:00 am
                                         Courtroom:     9, 19th Floor
23              Defendant.               Judge:         Hon. William H. Alsup

24

25

26

27

28

1    Conceptus respectfully requests that this Court deny Hologic MIL #2 and permit Dr. Glasser

2    to offer his testimony and opinions concerning Hologic's contributory and induced infringement.

3    <u>**ARGUMENT**</u>

4    Hologic's arguments on indirect infringement apply an incorrect standard for "knowledge"

5    and fail to accurately address how Dr. Glasser's opinions will assist the jury in deciding whether

6    Hologic indirectly infringed claims 37 and/or 38 of the '361 patent.

7    **A.    Elements of Indirect Infringement.**

8    The jury will only consider whether to hold Hologic liable for indirect infringement after

9    they find that physicians using the Adiana system to practice the Adiana procedure in accordance

10   with the Adiana IFU directly infringe claim 37 and/or claim 38.  If the jury finds direct infringement,

11   it will then consider whether Hologic contributed to the infringing use of the Adiana method by

12   supplying an important component of the Adiana method that is not a common component suitable

13   for non-infringing use; and whether Hologic supplied the component with the knowledge of the '361

14   patent and knowledge that the component was especially made or adapted for use in an infringing

15   manner.  *See* Model Patent Jury Instructions for the Northern District of California, Instruction 3.9

16   (November 29, 2007); *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1337 (Fed. Cir.

17   2008).

18   Also, the jury must find direct infringement before considering whether Hologic induced

19   such infringement because Hologic intentionally took action that actually induced direct

20   infringement by another; was aware of the '361 patent; and knew or should have known that its

21   actions would cause direct infringement by another.  Model Patent Jury Instructions for the Northern

22   District of California, Instruction 3.10 (November 29, 2007); *DSU Med. Corp. v. JMS Co.*, 471 F.3d

23   1293, 1305 (Fed. Cir. 2006).  Dr. Glasser's opinions and testimony are relevant to each of these

24   inquiries, including the objective knowledge element of contributory and induced infringement, and

25   the subjective intent element of inducement.

26

27

28

-1-

**B.    Dr. Glasser's Opinions And Testimony Are Relevant To The Jury's Assessment of Hologic's Knowledge.**

Hologic's MIL #2 (as well as Hologic's MIL #3) is premised on an erroneous view of what constitutes knowledge of infringement.  Contrary to Hologic's continued efforts to equate knowledge with subjective intent, knowledge of patent infringement for purposes of indirect infringement is an objective inquiry that examines whether the alleged inducer or contributor was on notice that the patentee accused it of inducing or contributing to the direct infringement.  *See, e.g.*, *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964) ("*Aro II*")(letter notifying alleged infringer that "anyone selling ready-made replacement fabrics for these automobiles would be guilty of contributory infringement … affords Aro no defense").  The United States Supreme Court recently adopted the knowledge standard applied in *Aro II* to contributory infringement as an element of inducement.  *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2067-68 (2011).[1]

Hologic also incorrectly asserts (MIL #2 at 3:12-16) that knowledge that the Adiana system is "especially adapted" to perform the Adiana procedure is irrelevant.  The fact that the Adiana system can only be used in the Adiana procedure[2] is relevant to whether Hologic supplied the Adiana system to physicians with the knowledge that the system was especially made or adapted for use in an infringing manner:

> It appears to be undisputed that, assuming direct infringement is found, Quanta would be liable under § 271(c) if it imported into or sold within the United States a bare component (say, a microcontroller containing routines to execute the patented methods) that had no use other than practicing the methods of the '552 and '755 patents.  Such a component, specially adapted for use in the patented process and with

[1] Settled authority following *Aro II* is clear that knowledge of infringement is established by objective knowledge, and not subjective belief.  *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990) ("proof of a defendant's knowledge, not intent, that his activity cause infringement was necessary to establish contributory infringement"); *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1330 (Fed. Cir. Sept. 20, 2010) ("In this case, Philips provided a letter that identified the '952 patent and stated that all 802.11 compliant products infringe.  Construing all facts in a light most favorable to Philips, we cannot hold that Net-Gear did not have the requisite knowledge as a matter of law."); *Ricoh Co., Ltd v. Quanta Computer Inc.*, 550 F.3d 1325, 1336, 1340 (Fed. Cir. 2008) ("Unlike contributory infringement, induced infringement liability under § 271(b) requires proof that 'the inducer [has] an affirmative intent to cause direct infringement'").

[2] Which the jury will have found directly infringes before considering indirect infringement.

no substantial noninfringing use, would plainly be "good for nothing else" but infringement of the patented process.

*Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1337 (Fed. Cir. 2008).  *See also Spansion, Inc. v. ITC*, 629 F.3d 1331, 1355 (Fed. Cir. 2010) ("because license negotiations indicated that Appellants were aware of the '419 patent, and Tessera successfully showed that the accused devices did not have any substantial non-infringing uses, the Commission presumed the requisite knowledge for contributory infringement. *Id*. This conclusion was not erroneous.").

Dr. Glasser's opinions and testimony are relevant to Hologic's objective knowledge of infringement.  They confirm Hologic's training and directions to physicians on the use of the Adiana system to perform Adiana procedures, and will therefore assist the jury in deciding whether Hologic objectively knew how physicians use the Adiana system.  *See, e.g.*, Dkt No. 275-18 (V) at 10-11, 24. Further, Dr. Glasser's opinions and testimony confirm that Hologic especially adapted the Adiana system to perform the Adiana method, and that the system may only be used for this purpose.  So, his testimony will assist the jury in deciding whether Hologic knew the Adiana system was especially adapted to be used in the infringing Adiana procedure.  *See, e.g.*, Dkt No. 275-18 (V) at 37-42.

Further, Dr. Glasser's reply report responding to arguments raised by Hologic's expert was timely and appropriate.  Dr. Glasser notes that "Dr. Anderson's opinions on indirect infringement appear confined to the proposition that the Adiana procedure as taught by Hologic, and as practiced by physicians using the Adiana system, does not directly infringe claims 37 and 38."  Dkt. No. 275-22 (Ex. V) at 33.  Dr. Glasser's reply report then addresses Dr. Anderson's contentions in a similar manner.  Dkt. No. 275-22 (Ex. V) at 33-35.  The opinions offered by Dr. Glasser are the same opinions disclosed by his opening report, arranged so as to respond to Dr. Anderson.  *Compar*e Dkt. No. 275-18 (V) at 37-42.  Because Dr. Glasser's opinions were timely and adequately disclosed, Hologic's vague attempt to limit his opinions should be denied.[3]

---

[3] *Cf. Informatica Corp. v. Bus. Objects Data Integration, Inc.*, 2007 U.S. Dist. LEXIS 16247, *12-13 (N.D. Cal. Feb. 23, 2007)("Any evolution in Plaintiff's [infringement] position is not so severe or prejudicial as to justify such an exclusionary sanction .... Any inconsistencies may be adequately addressed by cross-examination.") (citation omitted); *Cornell Research Found., Inc. v. Hewlett-Packard Co.*, 2007 U.S. Dist. LEXIS 89637, *62-64 (N.D.N.Y Jan. 31,

*(Footnote continued)*

### C. Dr. Glasser's Opinions And Testimony Are Relevant To Hologic's Intent to Induce.

Hologic's motion to exclude Dr. Glasser's opinions and testimony concerning inducement should also be denied. Dr. Glasser did not offer an opinion as to Hologic's subjective "intent" to infringe, and will not do so at trial. However, Dr. Glasser's opinions and testimony will assist the jury in assessing Hologic's intent to induce infringement. Hologic's intent may be established through such circumstantial evidence, and presents a fact issue for the jury. *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006); *Lucent Techs, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1322 (Fed. Cir. 2009).[4]

As set forth in Dr. Glasser's report, Hologic trains physicians to perform the Adiana method, and Hologic employees and agents oversee (proctor) the first three Adiana procedures performed by each physician. *See, e.g.*, Dkt No. 275-18 (V) at 10-11, 24. Such instructional evidence is relevant to the jury's consideration of Hologic's intent. *DSU,* 471 F.3d at 1305 (quoting *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005))("[e]vidence of 'active steps . . . taken to encourage direct infringement,' such as … instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe, and a showing that infringement was encouraged overcomes the law's reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful use.").

Dr. Glasser also explains that, according to Hologic's own instructions, the Adiana system may not be used for anything other than the Adiana procedure. *See, e.g.*, Dkt No. 275-18 (V) at 37-42. The fact that Hologic knows precisely how the physicians it trains will practice the Adiana method also evidences Hologic's intent. *See Ricoh*, 550 F.3d at 1338.

---

(*… continued footnote*)

2007)(declining to strike expert declaration that did not inject theories undisclosed in expert's prior reports and deposition testimony).

[4] Hologic's cited cases on expert testimony and intent are not to the contrary. These cases concern experts "decoding white behavior" in a discrimination matter (*Mukhtar v. Cal. State Univ.*, 299 F.3d 1053 (9th Cir. 2002), *amended by* 319 F.3d 1073 (9th Cir. 2003)), an expert's opinion that a defendant "participated" in a decision (*Estate of Gonzales v. Hickman*, Case No. 05-660 MMM (RCX), 2007 WL 3237727 (C.D. Cal. May 30, 2007)), an expert's commentary that defendant acted willfully, intentionally, recklessly (*In re REMEC Inc. Sec. Litig.*, 702 F.Supp.2d 1202, 1242 (S.D. Cal. 2010)), and experts opining directly on the intent of the defendant (*In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546-47 (S.D.N.Y. 2004); *SEC v. Johnson*, 525 F.Supp.2d 70, 79 (D.D.C. 2007))

1

**D.      The Materials Dr. Glasser Relies Upon Are Sufficient and Reliable.**

2      Hologic's reliance on *Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1355

3   (Fed. Cir. 2007) is grossly misplaced.  In *Pharmasten,* the excluded expert relied principally on

4   marketing and investor relation materials for her infringement opinion.  In contrast, Dr. Glasser has

5   relied on FDA submissions, design specifications, the Adiana Instructions for Use, physician

6   training materials, and peer reviewed articles in forming his opinions relevant to direct and indirect

7   infringement.  Dkt. No. 275-18 (Ex. R).  For example, the graphic that Hologic includes in its MIL

8   #2 at 4:18-20 comes from the December 13, 2007 presentation by Hologic to the FDA advisory

9   panel.  This presentation was extensively discussed and relied on by Dr. Glasser in his opening

10  report, and is no mere marketing fluff.  *See, e.g.,* Dkt. No. 275-18 (Ex. R) at 27, 31, 35, 36, 38, 39,

11  41.

12                                   <u>**CONCLUSION**</u>

13      Conceptus respectfully requests that Hologic's MIL #2 be denied.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: September 8, 2011

SIDLEY AUSTIN LLP

/s/  M. Patricia Thayer
M. PATRICIA THAYER (SBN 90818)
pthayer@sidley.com
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone:     415-772-1200
Facsimile:     415-772-7400

BRYAN K. ANDERSON (SBN 170666)
bkanderson@sidley.com
AARON R. BLEHARSKI (SBN 240703)
ableharski@sidley.com
1001 Page Mill Road, Building 1
Palo Alto, CA 94304
Telephone:     650-565-7000
Facsimile:     650-565-7100

NITIN REDDY (SBN 229451)
nreddy@sidley.com
TASHICA T. WILLIAMS (SBN 256449)
ttwilliams@sidley.com
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Telephone:     213-896-6000
Facsimile:     213-896-6600

*Counsel for Plaintiff Conceptus, Inc.*