**ARNOLD & PORTER LLP**
MATTHEW M. WOLF (*pro hac vice*)
matthew.wolf@aporter.com
JOHN E. NILSSON (*pro hac vice*)
john.nilsson@aporter.com
SARA P. ZOGG (*pro hac vice*)
sara.zogg@aporter.com
555 Twelfth Street, NW
Washington, DC 20004
Telephone:    202-942-5000
Facsimile:    202-952-5999

JENNIFER A. SKLENAR (SBN 200434)
jennifer.sklenar@aporter.com
NICHOLAS H. LEE (SBN 259588)
nicholas.lee@aporter.com
777 South Figueroa Street, 44th Floor
Los Angeles, CA  90071
Telephone:    213-243-4000
Facsimile:    213-243-4199

MICHAEL A. BERTA (SBN 194650)
michael.berta@aporter.com
One Embarcadero Center, 22nd Floor
San Francisco, CA  94111-3711
Telephone:    415-356-3000
Facsimile:    415-356-3099

Attorneys for Defendant
HOLOGIC, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CONCEPTUS, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>HOLOGIC, INC.,<br><br>        Defendant. | Case No.  09-cv-02280 WHA<br><br>**HOLOGIC, INC.'S MOTION IN LIMINE NO. 4 TO EXCLUDE TESTIMONY AND EVIDENCE OF OBJECTIVE INDICIA OF NON-OBVIOUSNESS**<br><br>Date:      September 16, 2011<br>Time:     9:00 a.m.<br>Courtroom: 9; 19th Floor<br>Judge:    Hon. William Alsup |

## I. INTRODUCTION

Defendant Hologic, Inc. ("Hologic") moves *in limine* to preclude Plaintiff Conceptus, Inc. ("Conceptus") from proffering evidence or argument as to any purported objective indicia of non-obviousness of the asserted claims. The prior art upon which Hologic will primarily rely in this case – most of which was not cited to the patent office by Conceptus – is replete with descriptions of the medical method of the two remaining asserted claims. It appears that Conceptus' primary response will be to point not to the novelty of its patent claims, but rather to the merits of its commercial Essure product which supposedly embodies those claims. But the Federal Circuit has made clear time and again that, for such evidence (*e.g.*, commercial success of the claimed invention, long-felt need and failure of others) to be relevant to the question of non-obviousness, there must be a nexus between the proffered evidence as to a commercial embodiment and the purportedly novel features of the patent claims at issue.

Here, Conceptus did not – because it could not – identify the requisite nexus during discovery, and thus any evidence or argument attempting to use Essure to demonstrate the purported non-obviousness of the asserted claims would be irrelevant, prejudicial, and should be excluded under Fed. R. Evid. 402, 403, 602, 703 and Fed. R. Civ. P. 37(c)(1).

## II. ARGUMENT

Conceptus has repeatedly asserted in its expert reports and discovery responses that various objective indicia of non-obviousness demonstrate the non-obviousness of claims 37 and 38 of the '361 patent. In particular, Conceptus has relied almost exclusively on evidence regarding its own Essure device in this regard, including the alleged commercial success of its product, the fact that its product allegedly satisfied a long-felt need, the fact that Conceptus succeeded where other supposedly failed, a purported long-felt need, licensing or industry respect, skepticism and unexpected results.

This type of "objective indicia" (sometimes called "secondary considerations") ***may*** be evidence of the non-obviousness of a claimed invention. Critically, however, this type of evidence is relevant ***only if the patentee establishes a nexus between the evidence offered and the purportedly novel aspects of the claims at issue***. *In re Huai-Hung Kao*, 639 F.3d 1057, 1068 (Fed. Cir. 2011) (no nexus "[w]here the offered secondary consideration actually results from something other than what is

Hologic Mot. In Limine No. 4
Case No. 09-cv-02280-WHA
-1-

both claimed and *novel* in the claim") (emphasis in original); *Volterra Semiconductor Corp. v. Primarion, Inc.*, Case No. C-008-05129, 2011 WL 2600655, *5 (N.D. Cal. Jun. 30, 2011) (citation omitted) ("In order to be relevant, there must be a nexus between the[] secondary considerations and the claimed invention"); *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1327 (Fed. Cir. 2008) (citations omitted) (nexus required between the merits of the invention and the evidence); *In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996) (rejecting evidence where patentee did not carry his burden "to prove that a nexus exists between the [evidence] and the novel features claimed in the application").

### A. Conceptus Has Not Tied Its "Objective Indicia" To Claims 37 and 38

According to Conceptus, the Essure device practices a lengthy list of patents and claims other than the two asserted '361 claims in this case. Essure's packaging is marked with at least twelve U.S. patent numbers, and in this litigation, Conceptus has contended that the Essure device practices thirty-one claims of the '667, '650 and '552 patents, as well claims 30, 33, and 36-38 of the '361 patent. (Dkt. No. 285-1 at 8.) But in its discovery responses and expert reports, Conceptus failed to provide any evidence to identify why the alleged commercial success of its Essure product and other supposed objective indicia of non-obviousness is based upon the purportedly novel features of claims 37 and 38 rather than the numerous other claims and patents that its product allegedly embodies. (Dkt. No. 285-8 at Interrog. No. 9; Dkt. No. 276-12, Ex. MM at 16-22.) *See, e.g., Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1289 (Fed. Cir. 2010) (rev'd other grounds) (where product embodies multiple patents, there is no presumption of nexus). Indeed, Conceptus has not provided any evidence to attribute any secondary evidence regarding the Essure device specifically to claims 37 and 38 of the '361 patent, the claims at issue here. (Dkt. No. 285-8 at Interrog. No. 9; Dkt. No. 276-12, Ex. MM at 16-22; *see also* Ex. 1 [Tunstall Tr. Aug. 31, 2010] at 177:24-178:15.)

In addition, Conceptus was forced to narrow independent claim 36 during prosecution to require "***permanently*** affixing the resilient structure within the fallopian tube with a lumen-traversing region of the resilient structure ***so that at least a portion of the fallopian tube is open***." (Emphasis added to show amendment.) Conceptus identified no evidence in discovery to establish a nexus between this specific purportedly novel aspect of the invention and Conceptus' claimed evidence of non-obviousness. With no such nexus, any evidence of secondary considerations is properly rejected.

*See Tokai Corp. v. Easton Enter., Inc.*, 632 F.3d 1358 (Fed. Cir. 2011) (finding of no nexus on summary judgment upheld where secondary consideration evidence was not connected to "the feature that purportedly distinguishes the claimed inventions from prior art").

In light of this failure, Conceptus' expected discussion of Essure in the context of an invalidity challenge would be manifestly improper, an obvious attempt to confuse a fact-finder not steeped in the distinction between patent claims on the one hand and commercial products on the other.

### B. Conceptus Has Not Identified Any Nexus Between Its Specific Proffered Objective Indicia And Claims 37 And 38

Moving from the general failure to the specific, none of Conceptus' Rule 30(b)(6) testimony, responses to contention interrogatories or expert opinions have provided any evidence that Conceptus' purported evidence of secondary considerations is tied to claims 37 and 38.

For example, Conceptus claims that the patented inventions enjoyed **commercial success**, relying on various sales figures, thousands of pages of financial information, and sales "awards." (*See, e.g.*, Dkt. No. 285-8 at 8-10; *see also* Ex. 1 at 79:3-9, 93:12-94:11.) Yet in all of the materials it cites, Conceptus never proffers any evidence that Essure's alleged commercial success is the result of the purported inventions of claims 37 and 38. Likewise, Conceptus' corporate designee could not identify which limitations of claims 37-38 – if any – contributed to the commercial success of Essure. (Ex. 1 at 177:24-178:15; *see also* Ex. 2 [Cote Tr. Aug. 19, 2010] at 181:12-16 (testifying that Conceptus has never marketed an "open" fallopian tube to its customers); Ex. 3 [Sieczkarek Tr. Aug. 12, 2010] at 223:12-230:2 (testifying that he did not know whether ten other marked patents contributed to success of Essure).) This undifferentiated evidence of the alleged commercial success of Essure should be precluded. *See, e.g.*, *In re Huang*, 100 F.3d at 139-140 (rejecting evidence where patentee provided no proof that the sales resulted from the unique characteristics of the claimed invention); *Rambus, Inv. v. Hynix Semiconductor, Inc.*, 254 F.R.D. 597, 602 (N.D. Cal. 2008) (where product embodies several inventions, there is no presumption that commercial success is due to the claimed invention); *id.* at 605 (precluding expert testimony of commercial success that the products incorporating the claimed invention have been successful); *King Pharm. v. Eon Labs*, 616 F.3d 1267, 1281 (Fed. Cir. 2010)

Hologic Mot. In Limine No. 4
Case No. 09-cv-02280-WHA

-3-

(commercial success evidence rejected where patentee "has not shown any nexus between the drug's alleged commercial success and the specific invention claimed in claim 5").

Similarly, with respect to **long-felt need** and **failure of others**, Conceptus' evidence centers around how the Essure device allegedly has remedied a long-felt need in the industry or has succeeded where others have failed. Whether or not this is so, Conceptus again fails to provide any evidence to tie its contentions about Essure to the asserted '361 claims. Instead, Conceptus cites factors such as low cost, ease of use and efficacy without explaining how these factors are attributable to the claims at issue. (*See, e.g.*, Dkt. No. 276-12 at 16-17 (generally discussing need for a procedure that would be effective, easy to perform, minimally invasive, result in minimal side effects and low cost, and that could be performed on an out-patient basis, but failing to explain how claims 37 and 38 provide these features for Essure to the exclusion of all of the other patents and claims that Essure allegedly practices); *id*. at 17-18 (identifying failures due to toxicity, procedural difficulties, lack of practitioner interest, safety or efficacy data, expulsions, pain, or perforations, but failing to explain how these issues are solved by claims 37 and 38, as opposed to other patents and claims); *see also* Dkt. No. 285-8 at Interrog. No. 9 (same deficiencies).)

Conceptus' evidence of **industry praise** and **awards** suffers from the same deficiencies. For example, Conceptus identifies four awards that it has received – a Congressional Certificate, inclusion in Deloitte & Touche's Fast 500 list, the Phoenix Award and an award from Frost & Sullivan. But Conceptus identifies no evidence showing or even suggesting that these awards have anything to do with the alleged inventions of claims 37 and 38 of the '361 patent. (*See, e.g.*, Ex. 1 at 78:11-79:9, 90:22-91:2 (Conceptus received the Congressional Certificate in 2009 for "service to the community" and was included on the Deloitte and Touch Fast 500 list for being a "fast[] growing company").) These awards should be excluded. *Muniauction*, 532 F.3d at 1328 (award for use of patented system lacked requisite nexus where evidence of award focused on only one of two types of systems claimed).

With respect to Conceptus' alleged evidence of the "**unexpected benefits**" of the claimed invention, such evidence should be excluded for failure to establish, or even articulate, a nexus between the supposed unexpected benefits and the particular claimed inventions at issue. For example, Dr. Glasser's opinions of "unexpected benefits" are tied to the alleged efficacy rate of Essure as

compared to the efficacy rates of "other methods of contraception," including surgical procedures and various non-permanent contraceptives. First, however, as admitted by one of the named inventors, the asserted method claims do not require any threshold efficacy rate. (Ex. 4 [Bacich Tr. Aug. 31, 2010] at 190:7-14.) There is therefore no nexus between the alleged unexpected results and the claimed invention. *See In re Denis Rouffet, Yannick Tanguy and Frederic Berthault*, 149 F.3d 1350, 1355 (Fed. Cir. 1997) (objective evidence of non-obviousness includes unexpected results created by the claimed invention and unexpected properties of the claimed invention). Second, as with the other secondary evidence cited above, Dr. Glasser does not disclose any opinion as to how to tie these supposed benefits of Essure particularly to the inventions claimed in claims 37 and 38, as opposed to the benefits of the inventions claimed in all of the other claims of the '361 patent and the claims of the other patents that Essure allegedly embodies.[1]

Similarly, Dr. Glasser asserts that there is evidence of "**skepticism**" of the claimed invention, relying on testimony of Conceptus' corporate designee on skepticism, Kathryn Tunstall. In turn, her testimony focused on the purported skepticism of venture capitalists, not skilled artisans, and she claimed that the solution to such skepticism pertained generally to the "benefits" of Essure, not to the claimed invention. (Ex. 1 at 222:1-6, 226:10-227:7, 229:12-233:25.) This testimony, and Dr. Glasser's reliance thereon, should be excluded under Fed. R. Evid. 402, or alternatively Fed. R. Evid. 403, because it lacks the required nexus. *Muniauction*, 532 F.3d at 1328 ("market force skepticism also lacks the requisite nexus to the claimed invention").

---

[1] In addition, evidence of unexpected results is probative of non-obviousness only if the claimed invention is compared to the closest prior art. *Kao Corp. v. Unilever United States, Inc.*, 441 F.3d 963, 970 (Fed. Cir. 2006)("results must be shown to be unexpected compared with the closest prior art")(quoting *In re Baxter Travenol Labs.*, 952 F.2d 388, 392 (Fed. Cir. 1991)); *In re De Blauwe*, 736 F.2d 699, 705 (Fed. Cir. 1984)(must compare claimed invention to the closest prior art); *In re Wayne O. Johnson*, 747 F.2d 1456, 1460-61 (Fed. Cir. 1984)(same). Dr. Glasser's opinions do not meet this standard. Dr. Glasser repeatedly distinguishes Essure from tubal ligation (which is conducted laparoscopically) on the grounds that Essure provides permanent transcervical intrafallopian contraception (which is conducted hysteroscopically). Because permanent transcervical intrafallopian contraceptives admittedly existed in the prior art (*see, e.g.*, Dkt. No. 276-12, Ex. MM at 18-19), the "other means" identified by Dr. Glasser are not the closest prior art to the claimed invention. On this additional basis, his opinions should be excluded.

Finally, Conceptus has made much of Hologic expert Dr. Anderson's positive statements during preliminary injunction proceedings regarding Conceptus' technology, implying that these statements have some bearing on the patent claims at issue. (*See, e.g.*, Dkt. No. 276-12, Ex. MM at 20.) As Conceptus well knows, the '361 patent was not even at issue during the preliminary injunction phase of this case, so such testimony could not have been (and was not) directed to the inventions in claims 37 and 38 of the '361 patent. (*See also* Ex. 5 [Anderson Reply Report] ¶¶ 32, 35 (Dr. Anderson had read the three patents asserted in the preliminary proceedings, but not the '361 patent, at the time of his deposition).)[2] Such general testimony that Conceptus has characterized as praise for Essure or for Conceptus' technology bears no nexus to the claims at issue (as opposed to all the other claims that Essure practices or other technology that Conceptus has patented). Such undifferentiated – and thus irrelevant – evidence includes Conceptus' claims that Essure was granted expedited review from the FDA, and its claims that Essure offers reduced costs as a result of insurance reimbursement, better recovery times, higher efficacy, faster procedure time or lower adverse events. Such generalized evidence does not have the required nexus to the specific claims at issue and is thus unduly prejudicial and should be excluded.

### C. Licensing

As a final matter, Conceptus should also be barred from raising any suggestion that **licensing** is relevant to the alleged non-obviousness of the claims at issue. Although it purports to rely upon this factor, it has not come forward with any evidence that it has licensed the claimed inventions, or that anyone has sought licenses to the '361 patent. The only witness to provide any information on licensing was Conceptus' CEO and president, who testified during his deposition that one company approached him for a patent license, but never specified any particular patent numbers. (Ex. 3 at 200:8-201:20.) Likewise, its Rule 30(b)(6) corporate deponent on the same topic was unprepared to

---

[2] If Conceptus is permitted to use Dr. Anderson's testimony and suggests it has some bearing on the '361 patent, Hologic should be permitted to have Dr. Anderson explain which patent claim was at issue when he was deposed and the fact that this claim was dismissed with prejudice after the Court determined that Hologic had raised a substantial question as to non-infringement and invalidity. (Dkt. Nos. 131, 141.)

1  answer questions on licensing, did not have personal knowledge of Conceptus' licensing efforts, had not spoken to the persons she identified as potentially having knowledge of licensing, and could not confirm whether any party had ever approached Conceptus for a license to the '361 patent. (Ex. 1 at 63:8-19, 64:8-16, 65:24-66:2, 203:17-204:15, 209:20-211:10.) Because Conceptus cannot establish that any company sought a license to the '361 patent, evidence of licensing should be excluded under Fed. R. Evid. 402 as irrelevant. *See Iron Grip Barbell co., Inc. v. USA Sports, Inc.*, 392 F.3d 1317, 1324 (Fed. Cir. 2004) (patentee must demonstrate a nexus between the merits of the invention and the licenses of record); *In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995) (because affidavits reciting licensing history of patent in suit did not establish which patent claims the licensing program incorporates, patentee had not shown that licensing arose out of recognition and acceptance of claimed subject matter).

## III.  CONCLUSION

For the reasons set forth above, Hologic respectfully requests that the Court preclude Conceptus from offering evidence of long-felt need, failure of others, licensing, industry respect, skepticism, commercial success and unexpected results by relying on Essure or other evidence for which Conceptus has not provided any evidence of a nexus to the claimed inventions.

Dated:  August 29, 2011                                  Respectfully submitted,

By:  */s/ Nicholas H. Lee*
     Nicholas H. Lee (SBN 259588)

**ARNOLD & PORTER LLP**
44th Floor
777 South Figueroa Street
Los Angeles, CA  90071
Telephone:  (213) 243-4000
Facsimile:  (213) 243-4199
Email:  nicholas.lee@aporter.com

*Attorneys for Defendant HOLOGIC, INC.*

**SIDLEY AUSTIN LLP**
M. PATRICIA THAYER (SBN 90818)
pthayer@sidley.com
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone:    415-772-1200
Facsimile:    415-772-7400

BRYAN K. ANDERSON (SBN 170666)
bkanderson@sidley.com
AARON R. BLEHARSKI (SBN 240703)
1001 Page Mill Road, Building 1
Palo Alto, CA 94304
Telephone:    650-565-7000
Facsimile:    650-565-7100

NITIN REDDY (SBN 229451)
nreddy@sidley.com
TASHICA T. WILLIAMS (SBN 256449)
ttwilliams@sidley.com
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Telephone:    213-896-6000
Facsimile:    213-896-6600

Attorneys for Plaintiff
Conceptus, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CONCEPTUS, INC.,<br><br>            Plaintiff,<br><br>     v.<br><br>HOLOGIC, INC.,<br><br>            Defendant. | Case No. 09-cv-02280-WHA<br><br>**CONCEPTUS' OPPOSITION TO HOLOGIC'S MOTION *IN LIMINE* #4**<br><br>Trial Date:    September 16, 2011<br>Time:            9:00 am<br>Courtroom:   9, 19th Floor<br>Judge:          Hon. William H. Alsup |

Hologic's Motion in Limine #4 ("MIL 4") aims at preventing the jury from learning damaging facts, such as statements from *both* of its experts that discovering a method of transcervical contraception was considered the "Holy Grail" of sterilization for *decades* before Conceptus invented its patented method.  As discussed below, Hologic provides no basis for excluding objective evidence of nonobviousness, rather than allowing the witnesses to discuss, and the jury to deliberate on, its weight.  *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538-39 (Fed. Cir. 1983) (evidence of secondary considerations should always be considered and given its proper weight); *see also Geo. M. Martin Co. v. Alliance Mach. Sys. Int'l, LLC*, 634 F.Supp. 2d 1024, 1038-39 (N.D. Cal. 2008) (evidence of secondary considerations should "be considered as part of all the evidence, not just when the decisionmaker remains in doubt after reviewing the art").

## ARGUMENT

### A. Objective Indicia Of Non-Obviousness Prior To The Invention:  Long-Felt Need, Failure Of Others And Skepticism.

Conceptus has compelling, objective evidence negating the opinion of Hologic's proffered expert, Thomas Ryan, that the method of the '361 patent would have been obvious to one of ordinary skill in the art in 1994/95.  <u>First</u>, for decades before Conceptus' invention, there was a long-standing and widely-articulated problem without a solution:  how to achieve permanent contraception for women without incisions.  The evidence is not debatable.

- One of the founders of Adiana wrote, in a patent issued in 1992, that "there is a desperate need for a reliable method of female sterilization."  Thayer Decl. at ¶ 6, Ex. E (U.S. Pat. No. 5,095,917 at col. 1:15-16).[1]
- In 1996, Mr. Ryan filed a patent application stating that a "[s]afe, effective, inexpensive minimally invasive method of transcervical tubal sterilization could have a major impact on women's health."  *Id.* at ¶ 7, Ex. F (U.S. Pat. No. 6,066,139 at col. 5:29-31).[2]
- In 1999, Mr. Ryan admitted that "[l]igation of the fallopian tubes without surgery has been called the **Holy Grail of gynecology** and women's health. … There is an enormous demand for an optimal sterilization method in both developed and developing countries.  Although the trend has been toward more minimally invasive procedures, surgery is still required for contemporary tubal sterilization and no scientifically validated transcervical method is available."  *Id.* at ¶ 8, Ex. G (HOL-CON0116138 (emphasis added)).

---

[1] This patented method was one of many that failed and never reached the market—or women in need of contraception.

[2] Notably, Mr. Ryan's proposed solution to the long-standing problem also has never reached the market.

-1-

CONCEPTUS' OPPOSITION TO HOLOGIC'S MOTION *IN LIMINE* #4
CASE NO. 09-cv-02280-WHA

- Hologic's physician expert testified that "this has sort of been the **holy grail** of sterilization for many years, and attempts to achieve sterilization by hysteroscopic technique date way back to the '70s and '80s, as far as I'm aware." *Id.* at ¶ 9, Ex. H (Anderson Dep. at 11:17-21) (emphasis added).

Second, before Conceptus invented its claimed method, many had tried and failed to satisfy the demand for a safe and effective solution. In 1999, Ryan wrote that "[m]any techniques have been tried for over 150 years to achieve transcervical sterilization." *Id.* at ¶ 8, Ex. G (HOL-CON0116168).[3] He explained: "[a]fter decades of attempts to occlude the fallopian tube through mechanical, cautery and chemical techniques, no practical solution has yet attained wide clinical success and usage." *Id.* at ¶ 8, Ex. G (HOL-CON0116137). And, he advised in 1999 against pursuit of *any* contraceptive technique using an implant because, in such cases, "the natural peristalsis of the fallopian tube causes these implants to migrate and become expelled." *Id.* Conceptus overcame those failures using the patented method.

Third, there is undeniable evidence of skepticism even beyond investors and venture capitalists, on which Hologic's motion focuses. MIL 4 at p. 5. Skepticism was voiced by the physicians who tried and failed to develop an effective method of permanently blocking the fallopian tubes without surgery. *Id.* at ¶ 11, Ex. J. (Nikolchev 30(b)(6) Dep. at 37-42). That skepticism was not directed specifically at the claimed method because the method had not yet been invented. By the early 1990s (and even the late 1990s in the case of Mr. Ryan), the scientific community had concluded that one simply could not retain an implant in the fallopian tubes long term without causing untold damage and other complications.[4] The inventors will testify that Conceptus swam against this current and proved otherwise.

Hologic does not want the jury to hear any of this cogent and objective evidence of the non-obviousness of Conceptus' method. Yet, as Judge Learned Hand wrote in *Automatic Devices*: "the

---

[3] "Transcervical sterilization" is the means to achieve permanent contraception without surgical incisions.

[4] Moreover, the views of Silicon Valley venture capitalists are not irrelevant, given the broad and deep research that underlies decisions to invest in early stage technology. Indeed many VC firms are headed by, or employ, PhD scientists precisely because they need to have a profound understanding of the technology in order to assess the risk. Thayer Decl. at ¶ 10, Ex. I (Tunstall Dep. at 223:5-229:10). At a minimum, Conceptus should be permitted at trial to draw the connections between technology assessment and investment decisions.

-2-

best test of what persons of routine ingenuity can do is what they have done." *Automatic Devices Corp. v. Cuno Eng'g Corp.*, 117 F.2d 361, 364 (2d Cir. 1941), *rev'd on other grounds*, 314 U.S. 84 (1941). Hologic asks the Court to discard the evidence because Conceptus has not proven that there was a long-felt need for, failed attempts at, and skepticism about ***the very solution to the problem that Conceptus invented***. MIL 4 at p. 2-5.

There is no requirement in law (or in logic) that the particular invention be in the minds of the scientists who want and need, but cannot themselves invent, a new solution before the objective evidence is admissible. *See M-B-W Inc. v. Multiquip, Inc.,* 2009 U.S. Dist. LEXIS 90418, at *78-79 (E.D. Wis. Sept. 29, 2009) (denying motion for summary judgment on invalidity); *Indian Head Indus. v. Ted Smith Equip. Co.*, 859 F. Supp. 1095, 1107-08 (E.D. Mich. 1994) (upholding non-obviousness). Rather, where these pre-invention, objective indicia exist, they establish an overarching problem for which many have tried but failed to solve and about which experts are skeptical that there is a solution. *Texas Instruments v. United States ITC*, 988 F.2d 1165, 1178 (Fed. Cir. 1993) (upholding ITC's finding of non-obviousness and stating "long-felt need is analyzed as of the date of an articulated identified problem and evidence of efforts to solve that problem").

As Hologic's experts admit, the problem here was the absence—for decades—of a safe and effective means of transcervical sterilization. Claims 37 and 38 claim a method of doing just that, which is embodied in a device that was the first ever to receive FDA approval for use in women. And, the success of Essure proves that the invention did, in fact, solve the problem. The pre-invention objective evidence of non-obviousness is highly relevant and should be admitted.

**B.  Objective Indicia Of Non-Obviousness After Invention: Awards And Accolades From Medical Device Community, Unexpected Benefits, Commercial Success**

The other evidence Hologic seeks to exclude concerns the scientific and business communities' responses to Essure, which is the only product sold by Conceptus since its approval in 2002. Hologic also objects to argument connecting the exponential sales growth in Essure since 2002 until the introduction of Hologic's infringing product to non-obviousness.

-3-

### 1. Conceptus' Witnesses Will Establish A Nexus.

The Federal Circuit has held that the patentee has the burden to establish a prima facie case of nexus between commercial success and the merits of the patented invention, which can be met by showing that the process is commercially successful and is the invention disclosed and claimed in the patent. *See Demaco Corp. v. F. Von Langsdorff Licensing, Ltd.*, 851 F.2d 1387, 1392-94 (Fed. Cir. 1988) (reversing finding of obviousness); Chisum On Patents § 5.05[2][f][ii] at 5-679. Dr. Glasser's and Ms. Elsten's reports (and testimony at trial) fully meet that burden. Thus, at trial, Hologic will have the burden to show that the undeniable success of Essure is due to other factors. *Demaco*, 851 F.2d at 1393; Chisum § 5.05[2][f][ii] at 5-680. Hologic cannot, by motion in limine, prevent the Court or the jury from hearing Conceptus' evidence merely because Hologic believes that its cross-examination and counterarguments will win the day. *See Stratoflex*, 713 F.2d at 1538-39.

Ms. Tunstall will describe the company's receipt of the Phoenix Award, voted by CEOs of medical device companies to honor Essure as an "enabling" technology. The award honors Essure because the device broke through the existing barrier to non-surgical methods of permanent contraception. Because Essure is an embodiment of claims 37 and 38, such an award is relevant to obviousness and admissible. Ms. Tunstall also will discuss awards from the investment community acknowledging Conceptus as one of the fastest growing companies, which puts into context Mr. Cote's testimony regarding the growth in annual sales revenues.

Hologic maintains there is no nexus between the awards, sales and "the point of novelty" of the claimed invention. But it seriously misconstrues the file history when it states that the only novel "feature" of the claimed methods is permanently affixing a resilient structure while the fallopian tube is open. MIL 4 at p. 2. First, claims 37 and 38 were not amended; only claim 36 was. Moreover, the "permanently affixing" element was added after a rejection, but ***it was never used to distinguish prior art***. Thayer Decl. at ¶ 12, Ex. K (CON00028883-895). Rather, Conceptus argued that the cited prior art (Erb) did not involve placing a preformed, resilient structure into the fallopian tube; instead, it injected an uncured elastomer into the oviduct. *Id.* (at CON00028892-94). Moreover, while Conceptus did not make additional arguments during prosecution (because claims 37 and 38 had not been rejected), the Erb reference clearly does not promote tissue ingrowth, permanently affix

-4-

a structure through tissue ingrowth, or use tissue ingrowth to occlude the tube. Dkt. No. 276-12, Ex. MM at p. 19. All of those are elements in the asserted claims and they are points of novelty as well.

While commercial success must be tied to the novel features of the claimed invention and not to features present in the prior art, Hologic has transformed that principle into a evidentiary standard not embraced by the case law. None of the cases cited by Hologic discuss exclusion of evidence.[5]

Hologic suggests that Conceptus must prove that patients have elected the Essure procedure *solely* based on *one* of the steps in the method that ensures its effectiveness. But, Conceptus need not prove now, or at trial, that no other aspect of the product contributes in any small way to its popularity. It is sufficient to establish that the patented invention is a core driver of Essure placements. *See Demaco*, 851 F.2d at 1392 ("if the patented invention is only a component of a commercially successful machine or process – the patentee must show prima facie a legally sufficient relationship between that which is patented and that which is sold"). Both Dr. Nikolchev and Dr. Glasser will explain the claimed methods to the jury and their testimony will sufficiently tie commercial success to the claimed invention.[6]

In the end, Hologic's arguments go to the weight of the evidence, and not its admissibility. Hologic certainly may argue to the jury that some non-patented aspects of the product contribute to its sales (such as Conceptus' highly trained sales force, or the easy-to-use handle). But, those aspects do not require exclusion of the contrary evidence. Rather, cross examination is the better course.

### 2. The Existence Of Multiple Patented Features Does Not Negate Commercial Success As A Matter Of Law.

Hologic's main argument regarding commercial success rests on a legal principle for which Hologic provides no citation: If a product or process is covered, in some part, by multiple patent claims, all evidence of commercial success is inadmissible because there can be no nexus between

---

[5] Citing *In re Kao*, Hologic criticizes Dr. Glasser for comparing the efficacies of Essure and tubal ligation. MIL 4 at p.5 n.1. But, while there were examples of prior art more similar to Essure, the few instances where the devices had clinical results were disastrous by comparison. Dkt. No. 276-12, Ex. MM at p. 18 (Glasser Rebuttal Report). Thus, any such comparison would be even more favorable than the one to tubal ligation, which was the "gold standard" of contraception.

[6] *See* Dkt. No. 275-18, Ex. R at p. 7-10 (Glasser Report discussing tubal ligation, effectiveness of Essure and benefits of over tubal ligation), p. 16-37, (Glasser Report indicating that Essure practices claims 37 and 38 of the '361 patent); Dkt. No. 276-12, Ex. MM at p. 16-22 (Glasser Rebuttal Report discussing evidence of secondary considerations).

the objective indicia of nonobviousness and any particular patent claim. MIL 4 at p. 1-3. That is not the law. *Cf. Demaco*, 851 F.2d at 1392-94; *see also* Chisum § 5.05[2][f][ii] at 5-681 (when multiple patents cover a commercially successful process, "proving nexus becomes more difficult").[7]

Hologic tasks Conceptus to prove nexus to only one element of the method. That is wrong, as explained above. Moreover, the asserted method claims cannot be dissected this way. Conceptus succeeded where dozens failed because of the short and long-term interplay between all of the recited steps: first, implant into a target region a structure resilient enough to apply a force against the fallopian tubes but not solid, like a plug, to allow room for tissue ingrowth; second, promote tissue ingrowth to prevent the structure's expulsion from the tube in the first days/weeks; and third, continue tissue ingrowth so that the fallopian tubes are fully occluded over a period of months. Essure practices this method, and so does Adiana. *See* Dkt. No. 275-18, Ex. R at p. 16-37 (Glasser Report stating that both Essure and Adiana practice claims 37 and 38 of the '361 patent). In fact, there is no approved method of transcervical permanent birth control that does not practice Conceptus' method.

Particularly where, as here, the asserted claims are not narrowly directed to an improvement of a prior art device, but instead cover the new approach developed at Conceptus to solve a difficult problem, a nexus between the objective indicia and the patented invention is presumed. Some of the patents marked on the Essure package have narrow claims that relate to specific elements of the product, while some issued long after the Essure product was launched.[8] Others claim the device that is central to the method claimed in the '361 patent. Hologic cites no case suggesting that the existence of a method and device patent claims, covering the same commercial product, obviates commercial success arguments as to either one, or require Conceptus to prove the percentage of success attributable to one versus the other. For both, the success of the product negates obviousness

---

[7] *Therasense* does not hold otherwise. In that case, the plaintiff had a patent that was **prior art** to the patent in suit and that was marked on the same product as the later-filed patent in suit. Because the defendants presented "uncontroverted evidence" that the product's success was due to features already disclosed in the prior art patent, "the district court did not err in rejecting Abbott's assertion that commercial success supported a finding of nonobviousness." 593 F.3d 1289, 1299 (Fed. Cir. 2010). Here, none of the Conceptus patents is suggested to be prior art to the '361 patent.

[8] Moreover, Hologic filed suit in Boston last year alleging that two of the marked patents do not apply to Essure and asserting a false marking claim for damages. *Hologic v. Conceptus*, Civ. No. 10-11355-PBS.

-6-

CONCEPTUS' OPPOSITION TO HOLOGIC'S MOTION *IN LIMINE* #4
CASE NO. 09-cv-02280-WHA

1  because the financial reward available to the person or ordinary skill in the art should have prompted

2  development of the product much earlier, if it had been obvious to do so.

3      **C.    Licensing/General Attributes.**

4      Conceptus does not intend to introduce evidence regarding licensing of the patent-in-suit.  As

5  for the general attributes of Essure mentioned in marketing materials but not recited *in haec verba* in

6  the patent claims, Hologic's argument goes too far.  To the extent that an attribute—such as ease of

7  the procedure—derives directly from the claimed method, whose purpose was to enable doctors to

8  avoid surgery while applying a contraceptive method, it is proper evidence of nonobviousness.

9

10  **<u>CONCLUSION</u>**

11      Conceptus respectfully requests that Hologic's MIL #4 be denied.

12

13  Dated: September 8, 2011        SIDLEY AUSTIN LLP

14          /s/ M. Patricia Thayer
15          M. PATRICIA THAYER (SBN 90818)
        pthayer@sidley.com
16          555 California Street, Suite 2000
        San Francisco, CA 94104
17          Telephone:   415-772-1200
        Facsimile:   415-772-7400

18          BRYAN K. ANDERSON (SBN 170666)
        bkanderson@sidley.com
19          AARON R. BLEHARSKI (SBN 240703)
        ableharski@sidley.com
20          1001 Page Mill Road, Building 1
        Palo Alto, CA 94304
21          Telephone:   650-565-7000
        Facsimile:   650-565-7100
22
23          NITIN REDDY (SBN 229451)
        nreddy@sidley.com
24          TASHICA T. WILLIAMS (SBN 256449)
        ttwilliams@sidley.com
25          555 West Fifth Street, Suite 4000
        Los Angeles, CA 90013
26          Telephone:   213-896-6000
        Facsimile:   213-896-6600

27          ***Counsel for Plaintiff Conceptus, Inc.***

28

CONCEPTUS' OPPOSITION TO HOLOGIC'S MOTION *IN LIMINE* #4
CASE NO. 09-cv-02280-WHA