**ARNOLD & PORTER LLP**
MATTHEW M. WOLF (*pro hac vice*)
matthew.wolf@aporter.com
JOHN E. NILSSON (*pro hac vice*)
john.nilsson@aporter.com
SARA P. ZOGG (*pro hac vice*)
sara.zogg@aporter.com
555 Twelfth Street, NW
Washington, DC 20004
Telephone:   202-942-5000
Facsimile:    202-952-5999

JENNIFER A. SKLENAR (SBN 200434)
jennifer.sklenar@aporter.com
NICHOLAS H. LEE (SBN 259588)
nicholas.lee@aporter.com
777 South Figueroa Street, 44th Floor
Los Angeles, CA  90071
Telephone:   213-243-4000
Facsimile:    213-243-4199

MICHAEL A. BERTA (SBN 194650)
michael.berta@aporter.com
One Embarcadero Center, 22nd Floor
San Francisco, CA  94111-3711
Telephone:   415-356-3000
Facsimile:    415-356-3099

Attorneys for Defendant
HOLOGIC, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CONCEPTUS, INC.,<br><br>        Plaintiff,<br><br>   v.<br><br>HOLOGIC, INC.,<br><br>        Defendant. | Case No.: 3:09-cv-02280 WHA<br><br>**HOLOGIC, INC.'S MOTION IN LIMINE NO. 5 TO EXCLUDE ARGUMENT AND EVIDENCE THAT VIOLATE THIS COURT'S CLAIM CONSTRUCTION ORDER AND THE PLAIN LANGUAGE OF THE ASSERTED CLAIMS**<br><br>Date:        September 16, 2011<br>Time:       9:00 a.m.<br>Courtroom: 9; 19th Floor<br>Judge:       Hon. William Alsup |

Hologic Mot. In Limine No. 5
Case No. 09-cv-02280-WHA

**I.     INTRODUCTION**

Hologic, Inc. ("Hologic") moves *in limine* to exclude Conceptus, Inc. ("Conceptus") from proffering any evidence or argument that conflicts with this Court's claim construction order and the plain language of the asserted claims, particularly with regard to the claim language requiring that the "permanently affixing" of the "resilient structure" must be accomplished "with a lumen-traversing region" of that structure. Any such evidence or argument would be legally irrelevant and could only serve to confuse the jury.

In order to prove infringement, Conceptus must come forward with timely and reliable evidence that the Adiana device is permanently affixed (1) with a lumen traversing region of the device itself (addressed *infra*) and (2) at a time when the fallopian tube remains open (addressed in Motion in Limine #1). (*See* Dkt. No. 356 at 8.) But because the Adiana device is made of an inert silicone and has no components, such as sharp outer edges, that would allow it to be permanently affixed in a fallopian tube absent other means, Conceptus appears poised to assert that permanent affixation through the application of radiofrequency energy and tissue ingrowth may satisfy the requirements of the asserted claims. Any evidence or argument of this type should be excluded because it is contrary to the Court's claim construction and the unambiguous language of the claims that the "permanently affixing" requirement must be accomplished "with a lumen-traversing region" of the resilient structure.

**II.    ARGUMENT**

Claim 36 recites "***permanently affixing*** the resilient structure within the fallopian tube ***with a lumen-traversing region of the resilient structure*** so that at least a portion of the fallopian tube is open." (Dkt. No. 1-2 at 23:45-48.) The Court's claim construction confirms the role of the lumen traversing region in permanent affixation, construing "lumen traversing region" to mean "the region of the resilient structure that interacts with the wall of the fallopian tube to permanently affix the resilient structure within the fallopian tube lumen." (Dkt. No. 189 at 17.)

Dependent claim 37 then recites that the "permanently affixing" step of claim 36 includes "promoting tissue ingrowth of the tubal wall surrounding the resilient structure." (Dkt. No. 1-2 at 23:48-50.) This claim requires that the permanently affixing step of claim 36 – *i.e.,* with a lumen

traversing region – promotes tissue ingrowth. In other words, tissue ingrowth is encouraged or caused by the step of permanently affixing the resilient structure within the fallopian tube with its lumen-traversing region. The interrelationship between claims 36 and 37 is thus as follows:

(1) permanent affixation of a resilient structure within a fallopian tube with its lumen-traversing region occurs; and

(2) that the permanent affixation step – *i.e.,* affixing with the lumen-traversing region – also encourages tissue to grow.

### A. CONCEPTUS' APPARENT INTENT TO ASSERT THAT THE CLAIMS ALLOW FOR PERMANENT AFFIXATION THROUGH TISSUE INGROWTH

Conceptus apparently intends to present to the jury evidence and argument that has the causation between permanent affixation (of claim 36) and tissue ingrowth (of claim 37) exactly backwards. According to Conceptus, it may prove infringement by showing that tissue ingrowth may *result in or lead to* permanent affixation and the recited "lumen-traversing region" of claim 36 simply indicates *where* the tissue ingrowth will occur. Specifically, Conceptus' experts have denied that the "lumen-traversing region" of claim 36 has any relationship to *how* the resilient device is affixed within the fallopian tube. (*See* Dkt. No. 349 at 6 ("[T]he reference to the 'affixing' limitation to the 'lumen traversing region of the resilient structure' tells *where* the device is affixed (lumen-traversing), *not how* it becomes affixed.").)

Conceptus' interpretation of the claims is at odds with the claim language and allowing it to present evidence directed to such an interpretation would, at best, waste the Court's time and also likely confuse the jury. Claim 36 is abundantly clear that the permanently affixing requirement must be done "with a lumen-traversing region" of the resilient structure and then claim 37 specifies that this permanently affixing step of claim 36 also encourages tissue ingrowth. Nothing in 37 suggests that the cause and effect may be reversed – *i.e.,* that permanent affixation may be accomplished through tissue in-growth – or that the permanently affixing step need not occur "with" a lumen-traversing region. Indeed, this Court's claim construction has confirmed the role of the "lumen-traversing region" in the permanent affixation. (Dkt. No. 189 at 17.) Conceptus' prior counsel also agreed at the claim construction hearing that the "lumen traversing region" is "what does the affixing" (Dkt. No. 217 at 97), further stating: "It's imposing an anchoring force, and it's

1   permanently affixing. That's all being done by the resilient structure" and that "if we go back to the
2   claim language, you are affixing the structure within the tube with that region. And the way the
3   patent describes doing that is with that ribbon, as an example." (*Id.* at 106.)

4   Other intrinsic evidence further supports Hologic's interpretation of the claims that
5   permanent affixation must occur "with a lumen-traversing region" of the resilient structure. The
6   example of a lumen-traversing region in the '361 patent includes a ribbon (28) with sharp outer
7   edges (29). (Dkt. No. 1-2 at 9:20-21.) In the file history of an application to which the '361 patent
8   purports to claim priority, the applicants described the ribbon as capable of "*permanently affixing*" a
9   contraceptive device within a fallopian tube. (Dkt. No. 297-12 Ex. L at 13.)[1]

10   Principles of claim differentiation further confirm Hologic's position. Though the
11   specification describes various means that might be used to affix a device within a fallopian tube,
12   the drafters of the '361 patent claims were quite specific in the various claims as to the way in
13   which affixation would occur (and whether or not permanent affixation was required). (*See* Dkt.
14   No. 1-2 at 19:40-42 (claim 9 reciting affixation through a tissue reaction), 21:31-36 (claim 21
15   reciting affixation by resilient expansion of a helical coil), 21:44-48 (claim 22 reciting affixation
16   through use of a retention structure), 22:29-33 (claim 28 reciting that an element, comprising an
17   electrode that is oriented to engage and desiccate the tubal wall, is adapted to affix).) Where a
18   patent includes multiple claims, directed to different embodiments, the Federal Circuit has
19   cautioned against straining to interpret each claim to cover all embodiments. *See Baran v. Med.*
20   *Device Technologies, Inc.*, 616 F.3d 1309, 1316 (Fed. Cir. 2010), *cert. denied*, 131 S. Ct. 1607, 179
21   L. Ed. 2d 501 (U.S. 2011) ("It is not necessary that each claim read on every embodiment."); *see*
22   *also Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008) ("It is
23   often the case that different claims are directed to and cover different disclosed embodiments.").

---

[1] The intrinsic record further describes that the interaction between the outer coil of the device and the tubal wall injures the tissue to provoke tissue ingrowth. (Dkt. No. 1-2 at 13:41-53, 15:12-23.) In other words, the intrinsic record contemplates that permanent affixation with a lumen traversing region of the resilient structure can cause tissue to grow.

Hologic Mot. In Limine No. 5
Case No. 09-cv-02280-WHA                    - 3 -

Simply put, Conceptus should be precluded from presenting evidence or argument that the permanently affixing step may be accomplished through tissue ingrowth, as such an argument would be contrary to the claim language and Court's claim construction and could only obfuscate the relevant issues for the jury. *See Regents of the Univ. of Cal. v. Micro Therapeutics, Inc.*, No. C 03-05669 JW, 2007 WL 2429412, at *2-3 (N.D. Cal. Aug. 23, 2007) (striking opinion where expert did not comply with court's claim construction).

### B. CONCEPTUS' APPARENT INTENT TO ASSERT THAT THE CLAIMS ALLOW FOR PERMANENT AFFIXATION THROUGH RADIOFREQUENCY ENERGY

Similarly, Conceptus should be precluded from presenting evidence or argument that the permanently affixing step of the asserted claims may be accomplished through radiofrequency energy. Throughout its contentions and expert reports in this case, Conceptus has suggested that application of radiofrequency energy in the Adiana procedure may satisfy, at least in part, the "permanently affixing" requirement of claim 36 and result in the "promot[ion] of tissue ingrowth" of claim 37. Any such evidence would also be, at best, unhelpful to the jury because it is irrelevant to the requirement of the asserted claim.

Dependent claim 37 recites that "***the affixing step of claim 36***" includes "promoting tissue ingrowth of the tubal wall surrounding the resilient structure." (Dkt. No. 1-2 at 23:48-50.) It is black letter claim construction law that the "the affixing step" of claim 37 must refer back to that specific step when first introduced – *i.e.,* permanently affixing with a lumen-traversing region of claim 36 – and not another type of affixation. *Microprocessor Enhancement Corp. v. Texas Instr. Inc.*, 520 F.3d 1367, 1379-80 n.8 (Fed. Cir. 2008). Thus, it is the referenced antecedent "permanently affixing … with a lumen-traversing region …" that must promote tissue ingrowth and not some other unspecified mechanism. Conceptus' reading of the claims would improperly change the language of claim 36 to permanently affixing "***[to]*** the lumen-traversing region" as opposed to permanently affixing "***with*** the lumen-traversing region" as actually recited, and any evidence or argument directed to such a mis-reading should be excluded.

Once again, the drafters of the '361 patent claims were quite specific in each claim as to the way in which affixation would occur. They included claims that specifically recite the use of

Hologic Mot. In Limine No. 5
Case No. 09-cv-02280-WHA                - 4 -

1  electrical means in affixing a device.  (*See* Dkt. No. 1-2 at 22:29-33 (claim 28 reciting that an

2  element, comprising an electrode that is oriented to engage and desiccate the tubal wall, is adapted

3  to affix).)   In contrast, claim 36 is abundantly clear that permanently affixing occurs "*with a lumen*

4  *traversing region*."   The asserted claims should not be rewritten to encompass types of affixation

5  that are recited in other claims.  *See Baran*, 616 F.3d at 1316; *Helmsderfer*, 527 F.3d at 1383.

6        Thus, any evidence that the permanently affixing step may be accomplished through

7  radiofrequency energy should be excluded.

Dated:  August 29, 2011                                         Respectfully submitted,

By:   */s/ Nicholas H. Lee*
      Nicholas H. Lee (SBN 259588)

**ARNOLD & PORTER LLP**
44th Floor
777 South Figueroa Street
Los Angeles, CA  90071
Telephone:  (213) 243-4000
Facsimile:  (213) 243-4199
Email:  nicholas.lee@aporter.com

*Attorneys for Defendant HOLOGIC, INC.*

**SIDLEY AUSTIN LLP**
M. PATRICIA THAYER (SBN 90818)
pthayer@sidley.com
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone:   415-772-1200
Facsimile:    415-772-7400

BRYAN K. ANDERSON (SBN 170666)
bkanderson@sidley.com
AARON R. BLEHARSKI (SBN 240703)
1001 Page Mill Road, Building 1
Palo Alto, CA 94304
Telephone:   650-565-7000
Facsimile:    650-565-7100

NITIN REDDY (SBN 229451)
nreddy@sidley.com
TASHICA T. WILLIAMS (SBN 256449)
ttwilliams@sidley.com
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Telephone:   213-896-6000
Facsimile:    213-896-6600

Attorneys for Plaintiff
Conceptus, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CONCEPTUS, INC.,<br><br>                Plaintiff,<br><br>       v.<br><br>HOLOGIC, INC.,<br><br>                Defendant. | Case No. 09-cv-02280-WHA<br><br>**CONCEPTUS' OPPOSITION TO HOLOGIC'S MOTION *IN LIMINE* #5**<br><br>Trial Date:   September 16, 2011<br>Time:           9:00 am<br>Courtroom:  9, 19th Floor<br>Judge:         Hon. William H. Alsup |

Conceptus respectfully requests that this Court deny Hologic MIL #5 because claims 37 and 38 of the '361 patent permit both affixation through tissue ingrowth and the use of RF-energy to promote tissue ingrowth.

## ARGUMENT

Hologic's MIL #5 seeks to alter this Court's claim construction and summary judgment decisions concerning whether the claimed permanent affixation may be accomplished by tissue ingrowth into the lumen-traversing region of the resilient structure and whether RF energy may be used in promoting tissue ingrowth. Dkt. Nos. 189, 356. As the Court explained in denying the cross-motions:

> The crux of the argument is on the facts, and the question of whether the Adiana procedure satisfies the requirements of the asserted method claims is a fact issue for the jury to decide. Specifically, the question of when the Adiana matrix becomes "permanently affixed" is one on which reasonable jurors could disagree. By way of simple analogy, if one were to permanently affix two foot-long steel bars to each other by welding them together lengthwise, reasonable jurors could disagree as to how much of the foot-long weld joint must be completed before the bars are permanently affixed. So to here; reasonable jurors could disagree as to how much (if any) tissue ingrowth must take place before the Adiana matrix is permanently affixed within the fallopian tube.

Dkt. No. 356 at 12:4-12. Hologic's MIL #5 must fail because tissue ingrowth can be a means of permanently affixing under the claims, and energy may be used to practice the claims.

Hologic's attempt to limit the claims to mechanical affixation and exclude RF-energy is refuted by this Court's construction of the claims. This Court recognized in construing claims 36 through 38 that "the invention contemplates various means of affixing the device within the fallopian tube … (*see* cols. 11:42-45 …)." Dtk. No. 189 (Claim Construction Order) at 16:17-20. The '361 patent explicitly refers to "tissue ingrowth" at the cited column 11, lines 42-45. In deciding the parties' motions for summary judgment, this Court recognized that permanent affixation under claims 36-38 may occur through tissue ingrowth. Dkt. No. 356 (Summary Judgment Order) at p. 12:10-12 ("reasonable jurors could disagree as to how much (if any) tissue ingrowth must take place before the Adiana matrix is permanently affixed within the fallopian tube"). The Court has also considered and rejected Hologic's efforts to import a "helical coils" limitation into claim 36:

`

> A person having ordinary skill in the relevant art at the time the application was filed would have understood that the "resilient structure" need only be resilient enough to serve its intended purpose. It need not be made out of metal coils, or even metal at all.

Dkt. No. 189 (Claim Construction Order) at 10:13-15. Hologic's renewed effort to import the metal coil limitation is not justified by Hologic's move from anchoring to affixation as the rational.

The plain language of claim 36 does not limit the means by which the lumen traversing region may interact with the tubal lumen to permanently affix the resilient structure within the fallopian tube.[1] Rather, dependent claim 37 is met by methods in which the affixing step of claim 36 "comprises promoting tissue ingrowth of the tubal wall surrounding the resilient structure." Because promoting tissue ingrowth includes permanent affixation, it is not independent from or merely a result of such permanent affixation. Such ingrowth from the tubal wall into the lumen traversing region is clearly an interaction that permanently affixes the resilient structure. In other words, the resilient structure may be permanently affixed within the fallopian tube with the lumen traversing region by means which cause tissue to grow into that region, and such means may include the use of energy.

The claim language and intrinsic evidence also refutes Hologic's proposition that the tissue ingrowth of claims 36, 37 and 38 excludes the application of RF energy. Claims 36, 37 and 38 do not limit the means by which tissue ingrowth is promoted. The use of the term "comprising" in each of claims 36, 37 and 38 indicates that the claims do not exclude RF-energy. *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l*, 246 F.3d 1336, 1348 (Fed. Cir. 2001)("In the parlance of patent law, the transition 'comprising' creates a presumption that the recited elements are only a part of the device, that the claim does not exclude additional, unrecited elements.")

That tissue ingrowth can be a means of affixation, and that such tissue ingrowth may be promoted by a number of means including energy, is repeatedly confirmed by the '361 patent's specification:

---

[1] That certain claims are limited to specific means of affixation does not mean that claim 36 is so limited. Because the drafters knew how to limit a claim by means of affixation, their failure to do so in claim 36 indicates that the means of affixation are not so limited.

-2-

CONCEPTUS' OPPOSITION TO HOLOGIC'S MOTION *IN LIMINE* #5
CASE NO. 09-cv-02280-WHA
SF1 1735940v.1

> cols. 4:5-12: "The tissue will often help impede conception by . . . restraining the intrafallopian tubal device within the tube";[2]
>
> 8:32-35: "The polyester fibers promote increased tissue growth around the coil, thus further reducing the possibility of expulsion of the device from the fallopian tube";
>
> 11:8-16: "passing a current through the corewire to the intrafallopian device prior to withdrawing the corewire. Fallopian tube tissue in contact with the intrafallopian device is desiccated, and thus attached to the present intrafallopian device";
>
> 12:59-62: "heat, electrical current, and/or some other energy which induces scarring, electrocautery, or the like, so as to attach the contraceptive device within the fallopian tube"
>
> 20:40-42: "inciting a tissue reaction of tubal tissues with an element of the contraceptive device so as to affix the contraceptive device within the fallopian tube".

Dkt. 268-30 (Ex. 30). In contrast, the file history to which Hologic refers concerns different claims in a different patent, and merely recognizes that a certain embodiment may be affixed in a mechanical fashion. Dkt. No. 297-12 (Ex. L) at 13.

Because Dr. Glasser's opinion that the Adiana matrix is permanently affixed through tissue ingrowth is consistent with (and supported by) this Court's construction of the claims, the claim language, and the intrinsic record, Hologic's motion in limine concerning mechanical affixation should be denied and Conceptus' corresponding MIL #1 granted.

## **CONCLUSION**

Conceptus respectfully requests that Hologic's MIL #5 be denied.

---

[2] The '361 patent specification teaches that tissue ingrowth may be promoted by a number of means. '361 patent col. 4:1-5.

-3-

Dated: September 8, 2011

SIDLEY AUSTIN LLP

　/s/  M. Patricia Thayer
M. PATRICIA THAYER (SBN 90818)
pthayer@sidley.com
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone:   415-772-1200
Facsimile:    415-772-7400

BRYAN K. ANDERSON (SBN 170666)
bkanderson@sidley.com
AARON R. BLEHARSKI (SBN 240703)
ableharski@sidley.com
1001 Page Mill Road, Building 1
Palo Alto, CA 94304
Telephone:   650-565-7000
Facsimile:    650-565-7100

NITIN REDDY (SBN 229451)
nreddy@sidley.com
TASHICA T. WILLIAMS (SBN 256449)
ttwilliams@sidley.com
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Telephone:   213-896-6000
Facsimile:    213-896-6600

*Counsel for Plaintiff Conceptus, Inc.*