**ARNOLD & PORTER LLP**
MATTHEW M. WOLF (*pro hac vice*)
matthew.wolf@aporter.com
JOHN E. NILSSON (*pro hac vice*)
john.nilsson@aporter.com
SARA P. ZOGG (*pro hac vice*)
sara.zogg@aporter.com
555 Twelfth Street, NW
Washington, DC 20004
Telephone:    202-942-5000
Facsimile:    202-952-5999

JENNIFER A. SKLENAR (SBN 200434)
jennifer.sklenar@aporter.com
NICHOLAS H. LEE (SBN 259588)
nicholas.lee@aporter.com
777 South Figueroa Street, 44th Floor
Los Angeles, CA  90071
Telephone:    213-243-4000
Facsimile:    213-243-4199

MICHAEL A. BERTA (SBN 194650)
michael.berta@aporter.com
One Embarcadero Center, 22nd Floor
San Francisco, CA  94111-3711
Telephone:    415-356-3000
Facsimile:    415-356-3099

Attorneys for Defendant
HOLOGIC, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CONCEPTUS, INC., <br><br> Plaintiff, <br><br> v. <br><br> HOLOGIC, INC., <br><br> Defendant. | Case No.  09-cv-02280 WHA <br><br> **HOLOGIC, INC.'S SUPPLEMENTAL BRIEF REGARDING CONCEPTUS' MOTION IN LIMINE NO. 3** <br><br> Trial Date:   October 3, 2011 <br> Time:        7:30 a.m. <br> Courtroom:  8; 19th Floor <br> Judge:       Hon. William Alsup |

Hologic Supp. Br. Re: Dkt. Nos. 400, 409
Case No. 09-cv-02280-WHA

Pursuant to the Court's request during the September 16, 2011 pre-trial conference, Defendant Hologic, Inc. ("Hologic") provides supplemental briefing regarding the admissibility of evidence and testimony pertaining to Hologic's patents under Federal Rules of Evidence 103(c), 402 and 403. Attached hereto as Exhibits 1 through 3 are copies of Hologic's patents that are highlighted to show representative disclosures and claims that are relevant to (i) Hologic's good faith on the issue of alleged willful infringement and (ii) the fallacy of Conceptus' experts assertions about the enablement of the '361 asserted claims.

## I.   INTRODUCTION

Conceptus' only remaining argument for excluding Hologic's patents[1] – that the jury may be mislead into believing "that Hologic has the right to sell its products free of Conceptus' charge of infringement, or that Hologic cannot be an infringer because it has its own patents" (Dkt. No. 400 at 1) – can be easily negated with an appropriate instruction at the close of evidence and prior to the jury's deliberation. However, the prejudice that Hologic would suffer if its patents were excluded cannot be so easily remedied.

*First,* Hologic's patents are relevant, as in *King Instrument,* 767 F.2d 853, 867 (Fed. Cir. 1985), to show Hologic's good faith to rebut Conceptus' allegation of willful infringement. As explained below, the patents support Hologic's state of mind that it was practicing embodiments and claims of its own patents – which significantly do not have any requirement or disclosure as in each asserted claim of "permanently affixing … so that at least a portion of the fallopian tube is open."

*Second,* the patents are probative on the issue of enablement. In seeking to defeat Hologic's summary judgment motion on this very issue, Conceptus itself injected a Hologic patent – U.S. Patent No. 6,309,384 – into this case and proffered that such patent supported its position. (*See* Dkt. No. 299

---

[1] During the pre-trial conference, the Court determined that Conceptus' argument that "Hologic has not disclosed any expert opinions on whether any patent covers any aspect of Hologic's Adiana system or procedure" (Dkt. No. 400 at 2) is a non-starter.

In addition, with respect to Conceptus' relevance argument (Dkt. No. 400 at 2), as Hologic argued in its opposition and at the pre-trial conference, Hologic's patents are relevant to enablement, intent for willfulness and indirect infringement, secondary considerations and damages. (Dkt. No. 410; *see also* Section II(B) herein.)

at 16 n.13) Having made it past the summary judgment stage by relying, at least in part on a Hologic patent, Conceptus should not be permitted to dictate the evidence that Hologic is permitted to use to cross examine Conceptus' expert and defend itself in this case, particularly in the face of the permanent injunction and significant damages that Conceptus seeks.

## II. HOLOGIC'S PATENTS ARE RELEVANT TO SHOW THAT HOLOGIC HAS NOT ACTED WITH WILLFULNESS

As explained in Hologic's opposition to Conceptus' Motion In Limine #3, Hologic's patents related to the Adiana product are relevant to rebut Conceptus' allegation of willfulness. In *King Instrument,* the Federal Circuit affirmed a finding of non-willfulness where a defendant's "management might reasonably have believed that its actions were protected as within its own patentably distinct claims, while falling outside the [asserted patent's] claims." *King Instrument*, 767 F.2d at 867.

The description of embodiments in the Hologic patents that correspond to the commercial Adiana device, as well as the claims, are absolutely silent to any notion that the accused Adiana matrix is first permanently affixed in the fallopian tube before occlusion occurs, as required by each asserted claim. These patents are consistent with Hologic's steadfast belief – a belief that was communicated to the FDA even before issuance of the '361 patent – that long term retention and "permanence" is obtained only through integration (*i.e.,* occlusion) of tissue into the matrix. For example, claims 1 and 17 of Hologic's '035 patent, claims 1 and 5 of Hologic's '384 patent, and claims 19 and 20 of Hologic's '810 patent all recite methods of occluding the ovarian pathway without any mention of permanent affixation occurring prior to occlusion.

## III. HOLOGIC'S PATENTS ARE RELEVANT TO AND INDICATIVE OF NON-ENABLEMENT OF THE ASSERTED CLAIMS

Hologic's patents also directly rebut the arguments that Conceptus will likely make at trial, namely, that application of RF energy in the fallopian tube was known and predictable and thus Conceptus was not required to provide details for its use in the '361 patent specification. (*See* Dkt. No. 299 at 15-16; *see also id*. at 13 (arguing that Hologic's expert "exaggerate[d] the difficulties faced by an engineer in 1997 attempting to use RF energy to promote tissue ingrowth").) The very fact that the Adiana engineers spent *multiple years* developing RF technology and disclosed such detail in the

Hologic patents in order to enable their own claims is probative of the gaps in the art and the difficulties surrounding RF energy even after the time of the alleged '361 inventions. *In re Wright*, 999 F.2d 1557, 1562 (Fed. Cir. 1993) ("The Matthews et al. article, published approximately 5 years after the effective filing date of Wright's application, adequately supports the Examiner's and the Board's position that, in February of 1983, the physiological activity of RNA viruses was sufficiently unpredictable . . . ."); *Plant Genetic Sys. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1344 (Fed. Cir. 2003) ("Report of a first success after 1987 indicates failure or difficulty in or before 1987. Thus, the district court properly used later reports as evidence of the state of the art existing in 1987.")

In comparison to the '361 specification's scant discussion of energy, the Hologic patents describe in detail embodiments and parameters that can be used to apply RF energy within the fallopian tube. As just one representative example, the Hologic patents (which are continuations of one another and therefore share the same specification) disclose methods and devices to thermally damage the superficial tissue of the fallopian tube using RF energy, thereby creating a superficial lesion and invoking a wound healing response that results in particular biological activity. (*See, e.g.*, Ex. 1 at col. 3, col. 5.) In order to achieve that desired wound healing response, the Hologic patents describe with specificity the preferred RF parameters, e.g., "power of 0.1 to 5 watts for about 5 to 60 sections … to maintain tissue temperature in the range of 40-80ºC," "maintaining temperature of about 70ºC for 7 seconds," "maintaining temperature in the range of 52-58ºC for 40-60 seconds" or "heating briefly to 70-80ºC (5 to 10 seconds) followed by heating to 40-60ºC for an additional 30 to 60 seconds." (*Id*. at col. 10.) The Hologic patents then describe that, following application of RF energy, an implant is placed in the region of the lesion to receive tissue ingrowth. (*Id*. at Abstract, col. 3, 5.) Unlike claims 36-38 of the '361 patent, each of the Hologic patents includes claims directed to application of RF energy in the fallopian tube, and to the resulting wound healing response. (*Id*. at col. 11-12, col. 13-14; Ex. 2 at col. 11-12, col. 13, col. 14-15; Ex. 3 at col. 11-14.) The fact that the PTO allowed Hologic's patent claims directed to the use of RF energy in the fallopian is probative of the

non-enablement of the asserted '361 claims, as is the comparison between the '361 patent's disclosure of energy and the disclosures in the Hologic patents.[2]

      Conceptus's counsel suggested at the pre-trial hearing that Hologic does not need to use its own patents to show the level of detail required for enabling disclosure on the issue radiofrequency energy, because there are multiple prior art references that Hologic could use to make this very point. Yet, Conceptus neglects that the issue at hand is whether the '361 patent discloses sufficient details about the use of radiofrequency energy to enable *"permanently affixing [a] resilient structure . . ."* under its interpretation of the asserted claims.[3] The patents selected by Conceptus are misleading as purported evidence of the state of the art at or prior to the time of the claimed inventions because they do not disclose the use of permanent implants in conjunction with application of RF energy, which will be a central issue at trial, both for enablement and non-infringement. (*Compare* Dkt. No. 389 at 4-5, Hologic's Motion in Limine No. 5 (claim 36 does not cover permanent affixation through RF energy and subsequent tissue ingrowth) *with* Dkt. No. 398 at 2, Conceptus' Motion in Limine No. 1 (arguing that permanent affixation may be accomplished through tissue ingrowth that results from RF energy).) A specific listing of each patent that Conceptus suggests that Hologic use at trial, rather than the evidence that Hologic itself selects, is below, along with a description of why such patents are far less probative than Hologic's patents:

| Patent | Identification of Deficiencies In Comparison to Hologic's Patents |
|---|---|
| U.S. Patent No. 5,095,917 to Vancaillie | Vancaillie discloses a biodegradable device, not a device that is intended to remain permanently in the fallopian tube to provide occlusion and contraception. Thus, it is unclear how this patent is relevant to enablement of the claim limitation at issue. Moreover, the fact that the Vancaillie patent was granted in 1992, yet it took Adiana engineers years to develop the RF technology described in |

---

[2] The '361 patent was disclosed in an Information Disclosure Statement during prosecution of U.S. Patent No. 7,842,035 to Harrington et al., "Method and Apparatus for Tubal Occlusion" (*see* Ex. 3 at p. 2), which is a continuation of the '810 patent (Ex. 2) and the '384 patent (Ex. 1). The '035 file history indicates that the Examiner considered the '361 patent. Therefore, this evidence is relevant to Hologic's alleged indirect infringement and willful infringement, which require knowledge of infringement. (*See* Dkt. Nos. 386 (discussing knowledge and intent requirements), 387 (same), 407 (Hologic's own invention is relevant to knowledge and intent), 409 at 2-3 (same).)

[3] The asserted claims do not on their face recite the use of energy for permanent affixation, but instead rather permanent affixation "with a lumen-traversing region"

| | Hologic's patents further undermines Conceptus' position. |
|---|---|
| U.S. Patent No. 3,858,586 to Lessen | This patent is not directed to permanently affixing an implant within the fallopian tube through the use of energy; rather it is directed to the use of energy without an implant. |
| U.S. Patent Nos. 6,066,139, 6,972,018 and 6,964,274 to Ryan et al. | These patents are similarly not directed to permanently affixing an implant within the fallopian tube through the use of energy; rather they are directed to the use of energy without an implant. |
| U.S. Patent No. 4,057,063 to Gieles et al., "Device for Sterilization by Transuterine Tube Coagulation" | Conceptus objected to this patent on the Joint Exhibit List pursuant to Fed. R. Evid. 402, 403, 802 and 901. (Dkt. No. 403-2 at Ex. 422.) Regardless, it is not directed to permanently affixing an implant within the fallopian tube through the use of energy; rather it is directed to the use of energy without an implant. |
| U.S. Patent Nos. 6,176,240 and 6,705,323 to Nikolchev et al. | These are additional *Conceptus* patents that like the '361 patent, do not specifically mention RF energy and are completely devoid of any kind of specificity as to how to utilize RF energy to permanently affix an implant in the fallopian tube. What probative value these patents would have rather than Hologic's own more detailed patents is entirely unclear. |

## IV. CONCLUSION

For the reasons set forth above, Hologic respectfully requests that the Court deny Conceptus' motion in limine no. 3 (Dkt. No. 400) in its entirety.

Dated: September 19, 2011               Respectfully submitted,

                                    By:   */s/ Nicholas H. Lee*
                                          Nicholas H. Lee (SBN 259588)

                                          **ARNOLD & PORTER LLP**
                                          44th Floor
                                          777 South Figueroa Street
                                          Los Angeles, CA 90071
                                          Telephone: (213) 243-4000
                                          Facsimile: (213) 243-4199
                                          Email: nicholas.lee@aporter.com

                                          *Attorneys for Defendant HOLOGIC, INC.*