1
2
3
4
5
6       IN THE UNITED STATES DISTRICT COURT

7       FOR THE NORTHERN DISTRICT OF CALIFORNIA

8
9
10   CONCEPTUS, INC.,                                No. C 09-02280 WHA

11                 Plaintiff,

12       v.

13   HOLOGIC, INC.,

14                 Defendant.

15   _____/

16

17           **COURT'S PROPOSED CHARGE TO THE JURY**

18               **[AND SPECIAL VERDICT FORM]**

19            PROVIDED TO COUNSEL ON OCTOBER 7, 2011.

20

21           Appended hereto are drafts of the substantive portions of the charge to the jury and the

22   special verdict form given to both sides on **OCTOBER 7, 2011**, for discussion at the charging

23   conference at **7:30 A.M. ON OCTOBER 12, 2011**.  Counsel are reminded that all objections,

24   additions, or modifications must be made at the charging conference or else they shall be

25   deemed waived.

26

27

28

**United States District Court**
For the Northern District of California

1

2

3

4

5

6            IN THE UNITED STATES DISTRICT COURT

7            FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10   CONCEPTUS, INC.,                              No. C 09-02280 WHA

11            Plaintiff,

12     v.

13   HOLOGIC, INC.,

14            Defendant.

15   _____/

16

17                        **[DRAFT]**

18             **FINAL CHARGE TO THE JURY**

19             **AND SPECIAL VERDICT FORM**

20

21

22

23

24

25

26

27

28

1.

Members of the jury, it is my duty to instruct you on the law that applies to this case. A copy of these instructions will be available in the jury room for you to consult as necessary.

It is your duty to find the facts from all the evidence presented in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. You must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath promising to do so at the beginning of the case. In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. You must not read into these instructions or into anything the Court may have said or done as suggesting what verdict you should return — that is a matter entirely up to you.

2.

The evidence from which you are to decide what the facts are consists of:

      1.     The sworn testimony of witnesses, on both direct and cross-examination, regardless of who called the witness;

      2.     The exhibits which have been received into evidence;

      3.     The sworn testimony of witnesses in depositions read into evidence or played by video; and

      4.     Any facts to which all the lawyers have stipulated here in the courtroom before you. You must treat any stipulated facts as having been conclusively proven.

3.

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence and you may not consider them in deciding what the facts are. I will list them for you:

1        1.      Arguments and statements by lawyers are not evidence.

2    The lawyers are not witnesses.  What they have said in their opening statements,

3    closing arguments, and at other times is intended to help you interpret the

4    evidence, but it is not evidence.  If the facts as you remember them differ from the

5    way the lawyers have stated them, your memory controls.

6        2.      A suggestion in a question by counsel or the Court is not evidence

7    unless it is adopted by the answer.  A question by itself is not evidence.  Consider

8    it only to the extent it is adopted by the answer.

9        3.      Objections by lawyers are not evidence.  Lawyers have a duty to

10   their clients to consider objecting when they believe a question is improper under

11   the rules of evidence.  You should not be influenced by any question, objection,

12   or the Court's ruling on it.

13       4.      Testimony or exhibits that have been excluded or stricken, or that

14   you have been instructed to disregard, are not evidence and must not be

15   considered.  In addition, some testimony and exhibits have been received only for

16   a limited purpose;  where I have given a limiting instruction, you must follow it.

17       5.      Anything you may have seen or heard when the Court was not in

18   session is not evidence.  You are to decide the case solely on the evidence

19   received at the trial.

20                                          4.

21   Certain charts, animations, and summaries have been shown to you in order to help

22   explain the facts disclosed by the books, records, and other documents which are in evidence in

23   the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect

24   the facts or figures shown by the evidence in the case, you should disregard these charts and

25   summaries and determine the facts from the underlying evidence.

26                                          5.

27   Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as

28   testimony by a witness about what that witness personally saw or heard or did.  Circumstantial

evidence is proof of one or more facts from which you could find another fact.  By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.  However, other evidence, such as a turned-on garden hose, may explain the presence of water on the sidewalk.  Therefore, before you decide that a fact has been proven by circumstantial evidence, you must consider all the evidence in light of reason, experience, and common sense.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.  You should base your decision on all of the evidence, regardless of which party presented it.

6.

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says or part of it or none of it.  In considering the testimony of any witness, you may take into account:

     1.     The opportunity and ability of the witness to see or hear or know the things testified to;

     2.     The witness' memory;

     3.     The witness' manner while testifying;

     4.     The witness' interest in the outcome of the case and any bias or prejudice;

     5.     Whether other evidence contradicted the witness' testimony;

     6.     The reasonableness of the witness' testimony in light of all the evidence; and

     7.     Any other factors that bear on believability.

7.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  Nor does it depend on which side called the witnesses or produced evidence.  You should base your decision on all of the evidence, regardless of which party presented it.  You are not required to decide any issue according to the testimony of a number of

witnesses, which does not convince you, as against the testimony of a smaller number of witnesses or other evidence, which is more convincing to you.  The testimony of one witness worthy of belief is sufficient to prove any fact.  This does not mean that you are free to disregard the testimony of any witness merely from caprice or prejudice, or from a desire to favor either side.  It does mean that you must not decide anything by simply counting the number of witnesses who have testified on the opposing sides.  The test is not the number of witnesses but the convincing force of the evidence.

8.

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or to do something, that is inconsistent with the witness' present testimony.  If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

9.

Discrepancies in a witness' testimony or between a witness' testimony and that of other witnesses do not necessarily mean that such witness should be discredited.  Inability to recall is common.  Innocent misrecollection is not uncommon.  Two persons witnessing an incident or a transaction sometimes will see or hear it differently.  Whether a discrepancy pertains to an important matter or only to something trivial should be considered by you.

However, a witness willfully false in one part of his or her testimony is to be distrusted in others.  You may reject the entire testimony of a witness who willfully has testified falsely on a material point, unless, from all the evidence, you believe that the probability of truth favors his or her testimony in other particulars.

10.

In determining what inferences to draw from the evidence you may consider, among other things, a party's failure to explain or deny such evidence.

**United States District Court**
For the Northern District of California

11.

You have heard testimony from witnesses referred to as "expert witnesses."  These are persons who, because of education or experience, are permitted to state opinions and the reasons for their opinions.  Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness' education and experience, the reasons given for the opinion, and all the other evidence in the case. If an expert witness was not present at the events in question, his or her opinion is necessarily based on an assumed set of circumstances.  In evaluating the opinion during the trial, you should take into account the extent to which you do agree or do not agree with the circumstances assumed by the expert witness.

12.

In these instructions, I will often refer to a party's burden of proof.  I will be discussing two different burdens of proof.  The first is known as a burden of proof by a preponderance of the evidence.  When a party has the burden of proof on any issue by a preponderance of the evidence, it means you must be persuaded by the evidence that the issue is more probably true than not true. To put it differently, if you were to put the evidence favoring plaintiff and the evidence favoring defendant on opposite sides of a scale, the party with the burden of proof on the issue would have to make the scale tip somewhat toward its side.  If the party fails to meet this burden, then the party with the burden of proof loses on that issue.  Preponderance of the evidence basically means "more likely than not."

The second burden of proof involved in this case is known as a burden of proof by clear and convincing evidence.  When a party has the burden of proving any issue by clear and convincing evidence, it means you must be persuaded by the evidence that the contention is highly probable.  This burden requires a higher standard of proof than proof by a preponderance of the evidence.

13.

If you find that plaintiff carried its burden of proof as to an issue, your verdict should be for plaintiff on that specific issue.  If you find that plaintiff did not carry its burden of proof, you

7

1    must find against plaintiff on that issue.  This same principle also applies to defendant on issues

2    on which it has the burden of proof.

3                                                    14.

4              I now will turn to the law that applies to this case.  As you know, in this lawsuit

5    Conceptus seeks money damages from defendant Hologic for allegedly inducing or contributing

6    to the infringement of claims 37 and/or 38 of the '361 patent.  I will refer to claims 37 and 38 as

7    the "asserted claims."  The method that Conceptus contends infringes the asserted claims is

8    Hologic's Adiana procedure.  I will refer to the Adiana procedure as the "accused method."

9    Hologic denies infringement and contends that the asserted claims are invalid.

10            Your job is to decide the issues of infringement and validity.  If you decide that either

11   claim has been infringed and is valid, you will then need to decide on any monetary damages and

12   on whether the infringement was willful.

13                                                  15.

14            As you know, the patent claims are the numbered paragraphs at the end of the patent.  The

15   claims are important because they specifically define the exclusive rights granted by the patent

16   office.  The figures and the specification in the rest of the patent provide a description and/or

17   examples of the invention and provide a context for the claims but the claims define how broad or

18   narrow the patent holder's rights are.  It is often the case that a patent specification and its figures

19   disclose more than the specific matter claimed as inventions, so it is important to keep straight

20   what the specification says versus what the claims say.

21                                                  16.

22            In a patent, an *independent* claim is one that is a stand-alone claim and does not

23   incorporate any other claim.  A *dependent* claim is one that depends on an earlier claim by

24   incorporating it by reference and then adding one or more additional elements.  Such

25   incorporation imports the entirety of the incorporated claim, including all of its elements, into the

26   dependent claims.  You will note that both of the asserted claims are dependent claims.  Claim 37

27   incorporates claim 36.  Claim 38 incorporates claim 37 and thereby also incorporates claim 36.

28

United States District Court
For the Northern District of California

1   Thus, claim 36 is incorporated into both of the asserted claims, even though claim 36 by itself is

2   not asserted.  I now want to explain how this affects the logic of the issues before you.

3          You do not need to decide whether claim 36 is infringed or valid, because claim 36 is not

4   asserted.  You must consider only the asserted claims.

5          If claim 37 is not infringed, then by default claim 38 cannot be infringed.  In other words,

6   if a claim 37 element is missing from the accused method, then it also is missing, by definition, as

7   to claim 38.  If claim 37 is infringed, however, claim 38 may or may not also be infringed.  This is

8   because claim 38 adds an extra limitation.  For invalidity purposes, I will address these logical

9   relationships later on in these instructions.

10                                              17.

11         I am now going to instruct you on the meaning of some of the words and phrases in the

12  patent claims at issue.  You must accept and use these meanings in your deliberations.

13         *A pre-formed resilient structure*:  The phrase "a pre-formed resilient structure" appears in

14  claim 36, which is incorporated into the asserted claims.  The phrase means a pre-formed resilient

15  intrafallopian device.

16         *Lumen-traversing region of the resilient structure:*  The phrase "lumen-traversing region

17  of the resilient structure" appears in claim 36, which is incorporated into the asserted claims.  The

18  phrase means a region of the resilient structure that interacts with the wall of the fallopian tube

19  lumen to permanently affix the resilient structure within the fallopian tube lumen.

20         *Permanently affixing the resilient structure within the fallopian tube with a lumen-*

21  *traversing region of the resilient structure*:  The phrase "permanently affixing the resilient

22  structure within the fallopian tube with a lumen-traversing region of the resilient structure"

23  appears in claim 36, which is incorporated into the asserted claims.  For purposes of claim 37, the

24  phrase means permanently affixing the resilient structure within the fallopian tube with a

25  lumen-traversing region of the resilient structure by (at least) promoting tissue ingrowth of the

26  tubal wall surrounding the resilient structure.

27         *So that at least a portion of the fallopian tube is open*:  The phrase "so that at least a

28  portion of the fallopian tube is open" appears in claim 36, which is incorporated into the asserted

United States District Court
For the Northern District of California

9

United States District Court

For the Northern District of California

1   claims.  The phrase means so that at least a portion of the fallopian tube is not

2   completely occluded at the time when permanent affixation occurs.

3       You must accept these definitions as established for purposes of your deliberations and

4   verdict.  You may, however, consider all of the evidence in the case as to whether or not the

5   accused method meets these definitions.  If a witness has based his view on meanings of the terms

6   contrary to my stated definitions, you should discount that part of his testimony accordingly.

7                                          18.

8       Conceptus has the burden of proof on infringement.  Conceptus must persuade you that it

9   is more likely than not that Hologic has induced or contributed to the infringement of claims 37

10  and/or 38 of the '361 patent.

11      Induced infringement and contributory infringement are two different types of *indirect*

12  infringement.  A patented method is directly infringed by a party who practices the method.  A

13  patented method is indirectly infringed by a party who either induces another party to practice the

14  method or contributes to the practicing of the method by another party.  Only if one party directly

15  infringes can another party be found to indirectly infringe.  That is, indirect infringement by one

16  party must be based on direct infringement by another party.

17      In this case, defendant Hologic is accused of indirect infringement based on direct

18  infringement by doctors who perform the Adiana procedure.  There is no claim for direct

19  infringement in this case, and there are no doctors named as defendants in this case.  Yet, you

20  must decide whether the Adiana procedure performed by doctors directly infringed the asserted

21  claims.  This question of direct infringement is a prerequisite to the question whether defendant

22  Hologic indirectly infringed the asserted claims.

23                                         19.

24      For Conceptus to carry its burden of proof on direct infringement, it must show that each

25  and every step of the claimed method is found in the accused method.

26                                         20.

27      In deciding whether the accused method infringes the asserted claims, you must compare

28  the Adiana procedure to the specific elements of each asserted claim.  You must not compare the

United States District Court

For the Northern District of California

1    Adiana procedure to the Essure procedure.  The Essure procedure is not relevant to the

2    infringement analysis.  Only the specific claims of a patent can be the basis for infringement.  A

3    product made by a patent owner may or may not practice the claims and therefore cannot be the

4    basis for infringement.

5                                                21.

6           If all steps of an asserted claim have been proven, it is not a defense to infringement that

7    the accused method includes an additional step not called out in the patent claim or that the

8    accused method carries out a step in the asserted claim in a way not described in the examples in

9    the patent specification.  For infringement to be proven, the step must be carried out as per the

10   claim language.  For example, if a patented method claim calls out three steps to paint a wall, it

11   would be infringed by a method including the same three steps in the claim and it would be no

12   defense that a fourth step is also done or that one step is carried out in a way different from the

13   examples in the patent specification.  For infringement to be proven, the step must be carried out

14   as per the claim language.

15                                               22.

16          To prove infringement by the doctors, it is not necessary to prove that any infringement

17   was intentional or willful.  Innocent infringement is still infringement.  The question of

18   willfulness by Hologic is a separate issue that will be addressed later.

19                                               23.

20          The fact, if true, that the accused method was independently developed without any

21   copying of the patent owner's method is not a defense.  All that matters for purposes of

22   infringement is whether all limitations of the claim reside in the accused method.  Independent

23   development in the same approximate time frame as the claimed invention, however, may be

24   considered by you on the issue of obviousness, an invalidity question.

25                                               24.

26          To assist you on the infringement issue, counsel gave you a handout that identified the

27   limitations in dispute and underlined in red the elements disputed.  Conceptus contends that the

28   accused procedure satisfies all the limitations of the asserted claims.

11

25.

Now, who is a person of ordinary skill in the art?  It is up to you to decide the level of ordinary skill in the field.  You should consider all the evidence introduced at trial in making this decision, including:

      1.      The levels of education and experience of persons working in the field;

      2.      The types of problems encountered in the field; and

      3.      The sophistication of the technology.

Sometimes I will refer to such a person as a "skilled artisan."

26.

For Conceptus to carry its burden of proof on induced infringement, it must show that Hologic actively induced doctors to directly infringe the asserted claims.  Specifically, Conceptus must show the following three elements:  (1) that Hologic intentionally took action that actually induced direct infringement by doctors; (2) that Hologic knew of the '361 patent; and (3) that Hologic knew its action would cause direct infringement by the doctors.

If you find that there has been no direct infringement by doctors performing the Adiana procedure, of course, then there was no infringement in the first place and no need for you to address the question of induced or contributory infringement.

Regarding the knowledge component, Conceptus need not prove that Hologic specifically intended to infringe the asserted claims.  Rather, Conceptus must prove that Hologic knew or should have known that the '631 patent existed and that its acts would induce doctors to perform a procedure which you now find to infringe.  Willful blindness by Hologic, however, cannot defeat liability for induced infringement.

27.

For Conceptus to carry its burden of proof on contributory infringement, it must show the following four elements:  (1) that the asserted claims were directly infringed by doctors performing the Adiana procedure; (2) that Hologic supplied an important component of the infringing part of the procedure; (3) that the component had no substantial non-infringing use;

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   and (4) that Hologic supplied the component with knowledge of the '361 patent and knowledge

2   that the component was especially made or adapted for use in an infringing manner.

3       If you find that there has been no direct infringement by doctors performing the Adiana

4   procedure, of course, then there was no infringement in the first place and no need for you to

5   address the question of induced or contributory infringement.

6       Regarding the knowledge component, Conceptus need not prove that Hologic specifically

7   intended to infringe the asserted claims.  Rather, Conceptus must prove that Hologic knew of

8   the '361 patent and knew that the component it supplied was especially made or adapted for use

9   in a procedure which you now find to infringe.

10                                              28.

11      Now, let's turn to the affirmative defenses raised by defendant.  We will first address the

12  invalidity defenses.  A patent issued by the Patent Office is presumed to be valid.  The burden is

13  on defendant Hologic to prove to the contrary.  Hologic must do so by clear and convincing

14  evidence.  When a party has the burden of proving any issue by clear and convincing evidence, it

15  means you must be persuaded by the evidence that the issue is highly probable.

16                                              29.

17      The first invalidity defense is called anticipation.  Hologic contends that the asserted

18  claims were anticipated by various prior-art references.

19      Patents are supposed to be limited to new revelations, among other requirements.  A

20  patent claim is invalid if the claimed invention was not new at the time of the patent application.

21  For a claim to be invalid because it is not new, all of its elements must have already existed in a

22  single procedure before the claimed invention or must have been described in a previous

23  publication or patent before the claimed invention.  In patent law, previous publications or patents

24  are called "prior art" or "prior-art references."  All of the "claimed" elements must be contained

25  within a single reference.

26      For anticipation to apply, it is not enough that all of the elements could have been found

27  among two or more references.  If, at the time of the patent application, a single prior-art

28  reference already described all of the elements of the claimed invention and would have informed

                                                13

1   those skilled in the art that those elements could have been arranged as in the claimed invention,

2   then the prior-art reference is deemed to "anticipate" the claimed invention and thereby render it

3   unpatentable and thus invalid.  It would not be enough, however, that all of the elements were in

4   random passages in the reference.  By the same token, for anticipation to apply, it is not necessary

5   that the prior-art reference expressly lay out the elements in the exact way laid out in the claim.

6   Rather, for anticipation, it is sufficient if the single reference would have informed those skilled

7   in the art that all of the claimed elements could have been arranged as in the claimed invention.

8                                                     30.

9           To assist you, counsel gave you a handout that identified the elements concededly found

10  in the prior art and highlighted in blue or green for you the elements disputed.  This was only as

11  to two of the prior-art references.  You must keep in mind that defendant Hologic advances more

12  than two items of prior art as anticipatory.

13                                                    31.

14          Now, we turn to the issue of obviousness.  Even when a claimed invention *is* new and is

15  not anticipated in the prior art, it may still be found unpatentable and invalid by reason of

16  obviousness.  This is the next ground for invalidity asserted by defendant.  I will now explain the

17  ground rules for obviousness.

18                                                    32.

19          No one is entitled to obtain a patent on a claimed invention that would have been obvious

20  to those of ordinary skill in the field at the time of the invention.  Put differently, if a skilled

21  artisan, knowing all the prior art, would have known that all of the claimed elements already

22  existed in the prior art, that those elements could have been arranged in the manner of the claimed

23  invention, and would have seen the benefit of doing so, then the claimed invention should not

24  receive a patent.  This means that even if all of the requirements of the claim cannot be found in a

25  single prior art reference, the claimed invention was obvious if a person of ordinary skill in the

26  relevant field who knew about all the prior art would have come up with the claimed invention by

27  combining the prior art references, or by combining a single prior art reference with the

28  knowledge and creativity of one of ordinary skill in the art.  In deciding what would have been

                                                     14

obvious to a skilled artisan, remember that a person of ordinary skill is also a person of ordinary creativity, not an automaton.

33.

A patent claim combining several elements, all of which were already known in the prior art, is not necessarily invalid.  To the contrary, many valid patent claims are new combinations of features already known.  To be obvious, the particular combination and arrangement must have been obvious to those skilled in the art at the time of the invention.

You must be careful not to use hindsight;  many valid inventions might seem obvious after the fact.  You should put yourself in the position of a person of ordinary skill in the field at the time the claimed invention was made and you should not consider what is known today or what is learned from the teaching of the patent.

34.

In evaluating the obviousness issue, you should consider whether the trial evidence has identified a persuasive reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention. For example, market forces or other design or manufacturing incentives might have naturally led to new combinations of prior art elements.  Such circumstances may indicate obviousness. You should also consider whether there was some teaching or suggestion in the prior art to combine the elements claimed in the patent.  If, however, the teachings of the prior art directed a person skilled in the art away from combining certain known elements, the discovery of a successful way to combine those elements was more likely to be nonobvious.  Also, you should consider whether the claimed invention applied a known technique that had already been used to improve a similar device in a similar way.  You should also consider whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to a problem with a reasonable expectation of success by those skilled in the art.  You should also consider whether there was a design need or market pressure to solve a problem with a finite number of identified, predictable solutions, such that persons of ordinary skill in the art would have had good reason to pursue the known possible

United States District Court
For the Northern District of California

15

solutions within his or her technical grasp. Such circumstances would be indicative, not of innovation, but of straightforward application of ordinary skill and common sense, meaning that it was obvious.

35.

The ultimate conclusion of whether a claim is obvious should be based upon your determination of several points. *First*, you must decide the level of ordinary skill in the field that someone would have had at the time the claimed invention was made. *Second*, you must decide the scope and content of the prior art. *Third*, you must decide what difference, if any, existed between the claimed invention and the prior art. The ultimate question is whether the differences between the prior art and the claimed invention were so insubstantial that the claimed invention would have been obvious to those of ordinary skill in the art. In this you must presume that those of ordinary skill in the art would have known and understood all of the relevant prior art, including all relevant patents and articles.

If you decide that a particular prior-art reference did not anticipate the claimed invention, that is, that it would not have informed those skilled in the art that the claimed elements could be arranged as in the claimed invention, you should nonetheless consider whether that reference standing alone or in combination with other prior art rendered the claimed invention obvious as of the date of invention.

36.

In addition, you should consider any of the following factors that you find have been shown by the evidence. These are sometimes called "secondary considerations:"

1.    commercial success of a product due to the merits of the claimed invention;

2.    a long-felt need for the solution provided by the claimed invention;

3.    unsuccessful attempts by others to find the solution provided by the claimed invention;

4.    copying of the claimed invention by others;

5.    unexpected and superior results from the claimed invention;

**United States District Court**
For the Northern District of California

16

**United States District Court**
For the Northern District of California

6.      acceptance by others of the claimed invention as shown by praise

from others in the field or from the licensing of the claimed invention;

7.      other evidence tending to show non-obviousness;

8.      independent invention of the claimed invention by others before or

at about the same time as the named inventor thought of it; and

9.      other evidence tending to show obviousness.

The presence of factors 1–7 may be considered by you as an indication that the claimed invention *would not have* been obvious at the time the claimed invention was made.  The presence of factors 8–9 may be considered by you as an indication that the claimed invention *would have* been obvious at such time.  Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

37.

When a patentee can demonstrate commercial success, usually shown by significant sales in a relevant market, and that the successful product is the invention disclosed and claimed in the patent, it is presumed that the commercial success is due to the patented invention.  If a patentee makes the requisite showing of nexus between commercial success and the patented invention, the burden shifts to the challenger to prove that the commercial success is instead due to other factors extraneous to the patented invention, such as advertising or superior workmanship.

If the successful product embodies the claimed features but is not coextensive with them, however, there is no presumption that the commercial success is due to the patented invention.  For example, a single product may embody multiple different inventions.  In such an instance, the burden remains with the patentee to prove a nexus between the success of the product and the claimed invention.

You must consider all the evidence that was presented to you by both sides in your consideration of all the secondary considerations.  Although you must consider such evidence, the importance of any of them to your decision on the issue of obviousness is up to you.

17

United States District Court

For the Northern District of California

38.

In deciding whether Hologic has carried its burden of proof as to anticipation or obviousness, you may consider the extent to which any claimed prior-art reference was before the examiner. A given prior-art reference may have been cited to the patent examiner or may not have been cited to the examiner. A cited reference may or may not have been explained to the examiner, and the examiner may or may not have addressed the reference in a written opinion. You are not bound by the action of the Patent Office and must make your own decision as to validity. You may take into account whether you heard evidence that the Patent Office had no opportunity to evaluate before granting the patent.

39.

For purposes of identifying the relevant body of prior art, you must look only to art prior to the date of invention. Now, what is a date of invention under the law? The presumed date of invention is the date of the patent application, namely in our case: June 1, 1999. Conceptus, however, contends that the inventors made the invention of the asserted claims at an earlier date — before the dates of certain prior-art references identified by Hologic.

The date of invention is either the presumed date of invention or, if earlier, the date by which the invention was reduced to practice. To show actual reduction to practice, the inventor must have performed a process that met all the limitations of the claimed invention and that worked for its intended purpose. Depending on the character of the invention and the problem it solved, this showing may require test results. Less complicated inventions and problems do not demand stringent testing. In fact, some inventions are so simple and their purpose and efficacy so obvious that they do not require any testing at all to demonstrate workability.

Where a party seeks to show an actual reduction to practice through the oral testimony of an inventor, the testimony must be "corroborated." In assessing the corroboration requirement, you must apply a rule of reason analysis. Under a rule of reason analysis, an evaluation of all pertinent evidence must be made. Although the testimony of a co-inventor cannot be used to corroborate the testimony of another, evidence related to the entire inventive process may be considered by you in determining whether — and when — the named inventors reduced the

18

invention to practice.  No corroboration requirement need be met where a party seeks to prove

reduction to practice through the use of physical exhibits.  In this regard, you must determine,

with the aid of testimony of those skilled in the art, what any such documents show.

With all of the evidence from both sides before you, Hologic has the burden to persuade

you by clear and convincing evidence that as of the date of invention as determined by you from

all the evidence in the case, the claimed inventions were already anticipated or obvious in light of

the prior art.  If you determine that a given prior-art reference was not known before the date of

invention of the '361 patent, then you may not consider it as prior art for anticipation purposes

and may only consider it with respect to obviousness as a possible secondary consideration.

40.

The next defense is called lack of an adequate written description.  This relates to whether

the specification, figures, and/or claims as originally filed adequately described the

asserted claims.

Defendant Hologic can meet its burden of proving that the asserted claims are invalid by

showing that the patent specification, figures, and/or claims as originally filed did not contain an

adequate written description for those claims.  The purpose of this written description

requirement is to make sure that a patent specification, figures, and/or claims as originally filed

described the claimed invention so as to demonstrate that the named inventor or inventors were in

possession of the invention at the time the application for the patent was originally filed, which,

as stated, is the presumed date of invention.

Sometimes, new claims are requested while the prosecution is underway, and the new

claims may or may not have been discussed in the original application.  So, it is important that it

be demonstrated that the inventor or inventors were in possession of the claimed invention as

eventually allowed.  Here, no evidence has been presented indicating that the patent application

as originally filed was substantially different from the patent that ultimately issued so you may

use the patent that issued to determine whether the written description requirement has

been satisfied.

United States District Court
For the Northern District of California

19

A claim will not be invalidated on written description grounds simply because the embodiments of the specification do not contain examples explicitly covering the full scope of the claim language.  That is because the patent specification is written for a person of skill in the art, and such person comes to the patent with the knowledge of what has come before.  Put differently, the specification does not need to describe every possible embodiment covered by a claim.  Placed in that context, it is unnecessary to spell out every detail of the invention in the specification; only enough must be included to convince a person of skill in the art that the inventor possessed the invention at the time the application for the patent was filed.

41.

The next defense is called lack of enablement.  This relates to whether the specification, figures, and/or claims as originally filed disclosed the invention in a way that enabled those skilled in the art to make and use it.

Defendant Hologic can meet its burden of proving that the asserted claims are invalid by showing that the patent specification, figures, and/or claims as originally filed did not contain a description of the claimed invention that was sufficiently full and clear to enable a person of ordinary skill in the field to make and use the invention.  The purpose of this enablement requirement is to make sure that a patent specification, figures, and/or claims as originally filed fully disclosed the invention to the public in return for the limited monopoly granted by the government to the inventor with the patent.

The patent may be enabling even though it does not expressly state some information if a person of ordinary skill in the field could make and use the invention without having to do excessive experimentation.  In determining whether excessive experimentation is required, you may consider the following factors:

       1.       the scope of the claimed invention;

       2.       the amount of guidance presented in the patent;

       3.       the amount of experimentation necessary;

       4.       the time and cost of any necessary experimentation;

       5.       how routine any necessary experimentation was in the field;

United States District Court

For the Northern District of California

1          6.          whether the patent disclosed specific working examples of the

2    claimed invention;

3          7.          the nature and predictability of the field; and

4          8.          the level of ordinary skill in the field.

5          The question of whether a patent is enabling is judged as of the date the original

6    application for the patent was first filed.

7                                                        42.

8          In deciding whether the claims were enabled by the specification and drawings in the

9    patent, you must take into account the specific method accused in ths case.  Spefically, if you

10   found that claim 37 or claim 38 covers the accused method, then you must decide whether the

11   specification and drawings enabled one of ordinary skill in the art to practice the accused method,

12   at least as to those steps called out by the claim.  If you decide that claim 37 or claim 38 does not

13   cover the accused method, then you must exclude that method from your consideration in

14   deciding the enablement issue, that is, you must decide whether the claims are otherwise enabled

15   without regard to the accused method.

16                                                       43.

17         I will now instruct you on the issue of damages.  By instructing you on damages, I am not

18   suggesting which party should win on any issue.  I am instructing you on damages only so that

19   you will have guidance on how to consider the evidence on damages if you reach this issue.  If

20   you find that Hologic has induced or contributed to infringement of either asserted claim, and that

21   the infringed claim(s) is/are valid, then you must determine the amount of money damages to be

22   awarded from Hologic to Conceptus to compensate it for the infringement.

23                                                       44.

24         Under the law, a patent holder is entitled to receive damages starting from the date of first

25   infringement.  For the products at issue here, you must determine the appropriate date for

26   commencement of damages.  That date will be the date you determine infringement began.

27

28

45.

Under the law, the amount of damages must be adequate to compensate the patent holder for the infringement.  A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred.  You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.  There are two different ways to calculate damages:  the "lost profits" method and the "reasonable royalty" method.

46.

The first possible way to calculate damages is by the "lost profits" method.  To recover lost profits for infringing sales, Conceptus must show that but for the infringement there is a reasonable probability that it would have made sales that Hologic made of the infringing method. Conceptus must show what share, if any, of Hologic's sales that it would have made if the infringing method had not been on the market.

You must allocate the lost profits based upon the customer demand for the patented features of the infringing method.  That is, you must determine which profits derive from the patented invention, and not from other features of the Adiana system.

47.

Conceptus is entitled to lost profits if it proves all of the following:

        1.     that there was a demand for the patented feature(s);

        2.     that no acceptable non-infringing substitutes were available;

        3.     that Conceptus had the manufacturing and marketing capacity to make any infringing sales actually made by Hologic for which Conceptus seeks lost profits; and

        4.     the amount Concepts would have made if Hologic had not infringed.

You do not need to determine the second element, because it already has been decided in this case.  You must assume that there were no acceptable non-infringing substitutes available. This does not necessarily mean that each Adiana sale would have been an Essure sale if Adiana

United States District Court

For the Northern District of California

1  had not been on the market. Conceptus must meet its burden of proving what additional profits it

2  would have made but for any infringement by Hologic.

3                                              48.

4          The second possible way to calculate lost damages is by the "reasonable royalty" method.

5  If Conceptus has not proved its claim for lost profits, or has proved its claim for lost profits for

6  only a portion of the infringing sales, then Conceptus should be awarded a reasonable royalty for

7  all infringing sales for which it has not been awarded lost profits damages.

8          Let me define for you what I mean by the terms "royalty" and "reasonable royalty." A

9  royalty is a payment made to a patent holder by a non-owner in exchange for getting a license,

10 which gives a person the right to make, use, or sell the claimed invention. A reasonable royalty is

11 the payment that would have resulted from a hypothetical negotiation between a reasonable patent

12 holder and a reasonable party needing a license as of the time when infringement first began in

13 July 2009.

14         In considering the nature of this negotiation, your focus should be on what the reasonable

15 expectations of Conceptus and Hologic would have been had they entered into a royalty

16 agreement in lieu of this litigation and acted *reasonably* in their negotiations. The law does not

17 require actual negotiations of a reasonable royalty between the parties. Instead, the law requires a

18 jury in a case like this to estimate what royalty would have been agreed to had reasonable parties

19 in like circumstances conducted negotiations when infringement first began. However, you must

20 assume that both parties believed the patent was valid and infringed. This is because you only

21 decide damages in the event you decide in favor of infringement and validity. In addition, you

22 must assume the parties were willing to enter into an agreement. Your job is to determine what

23 that agreement would have been.

24                                             49.

25         In determining the reasonable royalty, you may consider real world facts including the

26 fifteen factors that both sides presented to you via their damages expert witnesses. It is up to you

27 to decide how much weight to give to any of these factors.

28

23

50.

As the party seeking damages, Conceptus has the burden of proving the amount of damages by a preponderance of the evidence.  While Conceptus is not required to prove damages with mathematical precision, it must prove its damages with reasonable certainty.  If Conceptus has met its burden, your damages award should put Conceptus in approximately the financial position it would have been in had the infringement not occurred.

51.

You may only award Conceptus damages that are adequate to compensate for infringement.  You may not award any more or less damages.  Although Conceptus may recover future damages (after the cut-off date) that it can prove with reasonable certainty, Conceptus is not entitled to speculative damages, which means compensation for future loss or harm which, although possible, is conjectural or not reasonably certain.  Your award must be based upon evidence and not upon speculation, guesswork, or conjecture.

Nor may you include any amount for the purpose of punishing Hologic or setting an example.

52.

In this case, Conceptus argues that Hologic willfully infringed the asserted claims.  If you found that Hologic induced or contributed to direct infringement of either of the asserted claims, then you must decide the question of willfulness as to any such claim.

Conceptus has the burden of proving willfulness by clear and convincing evidence.  To meet its burden of proving willfulness, Conceptus must persuade you that it is highly probable that Hologic acted with reckless disregard of the asserted claims.

To demonstrate "reckless disregard," Conceptus must satisfy a two-part test.  The first part of the test is objective.  Conceptus must persuade you that Hologic acted despite an objectively high likelihood that its actions constituted indirect infringement of a valid patent.  Hologic's state of mind is not relevant to this first inquiry.  Rather, the appropriate inquiry is whether the defenses put forth by Hologic fail to raise any substantial question with regard to infringement or

1   validity.  Only if you conclude that the defenses fail to raise any substantial question with regard

2   to infringement or validity do you need to consider the second part of the test.

3       The second part of the test does depend on Hologic's state of mind.  Conceptus must

4   persuade you that Hologic actually knew, or it was so obvious that Hologic should have known,

5   that its actions would induce or contribute to infringement of a valid patent.

6       In deciding whether Hologic acted with reckless disregard of the '361 patent, you should

7   consider all of the facts surrounding the alleged infringement including, but not limited to,

8   the following:

9           1.      whether Hologic acted in a manner consistent with the standards of

10          commerce for its industry;

11          2.      whether Hologic intentionally copied a product of Conceptus

12          covered by the '361 patent;

13          3.      whether Hologic relied on a legal opinion that was well-supported

14          and believable and that advised Hologic that the Adiana procedure did not

15          infringe the asserted claims or that those claims were invalid; and

16          4.      whether Conceptus sought or received a preliminary injunction

17          against Hologic for infringing the asserted claims.

18      Willfulness is a separate issue from damages.  Regardless whether you find that Hologic

19  acted willfully or not, you must not consider willfulness when deciding damages.

20                                          53.

21      When you begin your deliberations, you should elect one member of the jury as your

22  foreperson.  That person will preside over the deliberations and speak for you here in court.

23  I recommend that you select a foreperson who will be good at leading a fair and balanced

24  discussion of the evidence and the issues.

25                                          54.

26      In your deliberations it is usually a mistake to take a straw vote early on.  This is due to

27  the risk of jury members expressing a premature opinion and then, out of pride, digging their

28  heels.  Rather, it is usually better to discuss the evidence, pro and con, on the various issues

before proceeding to take even a straw vote.  In this way, all the viewpoints will be on the table before anyone expresses a vote.  These are merely recommendations, however, and it is up to you to decide on how you wish to deliberate.

55.

Your verdict as to each issue and as to damages, if any, must be unanimous.  A failure to reach a unanimous verdict is a different result from a verdict that the party with the burden of proof failed to prove its case.  Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

56.

Do not be afraid to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.  It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

57.

Some of you have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of what was said.  Notes are only to assist your memory.  You should not be overly influenced by the notes.

58.

When you retire to the jury room to deliberate, the Clerk will bring you the following:

      1.      All of the exhibits received into evidence;

      2.      An index of the exhibits;

      3.      A work copy of these jury instructions for each of you;

      4.      A work copy of the verdict form for each of you; and

      5.      An official verdict form.

You do not have to discuss the questions in the strict sequence indicated in the special verdict form, but you must, by the end, answer them unanimously as indicated in the form.

United States District Court
For the Northern District of California

When you recess at the end of a day, please place your work materials in the brown envelope provided and cover up any easels containing your work notes so that if my staff needs to go into the jury room, they will not even inadvertently see any of your work in progress.

59.

A United States Marshal will be outside the jury-room door during your deliberations. If it becomes necessary during your deliberations to communicate with me, you may send a note through the Marshal, signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing, and I will respond to the jury concerning the case only in writing or here in open court.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone — including me — how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the Court.

60.

I have told you that you will be required to be here each day from 7:45 a.m. to 1:00 p.m. Now that you are going to begin your deliberations, however, you are free to modify this schedule within reason.  For example, if you wish to continue deliberating in the afternoons after a reasonable lunch break, that is fine.  The Court does, however, recommend that you continue to start your deliberations by 8:00 a.m.

It is very important that you let the Clerk know in advance what hours you will be deliberating so that the lawyers may be present in the courthouse at all times the jury is deliberating.

61.

You may only deliberate when all of you are together.  This means, for instance, that in the mornings before everyone has arrived, or when someone steps out of the jury room to go to the restroom, you may not discuss the case.  As well, the admonition that you are not to speak to anyone outside the jury room about this case still applies during your deliberations.

62.

After you have reached a unanimous agreement on a verdict, your foreperson will fill in, date, and sign the verdict form and advise the Court through the marshal that you have reached a verdict.  The foreperson should hold on to the filled-in verdict form and bring it into the courtroom when the jury returns the verdict.  Thank you for your careful attention.  The case is now in your hands.  You may now retire to the jury room and begin your deliberations.


Dated:  October __, 2011.

                                      _____

                                      WILLIAM ALSUP
                                      UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

28