IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CONCEPTUS, INC.,

    Plaintiff,

  v.

HOLOGIC, INC.,

    Defendant.

                              /

No. C 09-02280 WHA

**ORDER DENYING MOTION FOR PERMANENT INJUNCTION, GRANTING POST-JUDGMENT INTEREST, AND DENYING SUPPLEMENTAL DAMAGES AND PRE-JUDGMENT INTEREST**

## INTRODUCTION

In this patent infringement action involving intrafallopian contraceptive devices, plaintiff moves for a permanent injunction, supplemental damages, and pre- and post-judgment interest after a jury verdict finding infringement and awarding $18 million in damages. For the reasons stated below, the motion for permanent injunction is **DENIED**. The motion for post-judgment interest is **GRANTED**. The motion for supplemental damages and pre-judgment interest is **DENIED**.

## STATEMENT

The background was set forth in prior orders (Dkt. Nos. 356, 524). Plaintiff Conceptus sells a transcervically introduced permanent contraceptive product called Essure. It received FDA approval in 2002 and is Conceptus's only marketed product. Unlike tubal ligation, the Essure system requires no incisions and is minimally invasive. According to Conceptus, Essure can be placed within a woman's fallopian tubes by way of the cervix in a ten-minute, non-surgical

procedure that can be performed in a doctor's office without general anesthesia. Essure's contraceptive efficacy is supposedly achieved through occlusion of the fallopian tube.

Defendant Hologic owns and markets the infringing Adiana contraceptive system. The Adiana system, like the Essure system, involves the minimally invasive transcervical placement of a contraceptive device (referred to by Hologic as a "matrix") into a woman's fallopian tubes. Combined with the use of radiofrequency energy, the Adiana matrix — much like the Essure system — is intended to produce intrafallopian occlusion, which either prevents conception from occurring or blocks the passage of a fertilized ovum to the uterus. Adiana received FDA approval in July 2009. This is a two-product market: Essure and Adiana are the only two products available for transcervical hysteroscopic sterilization.

A jury trial commenced on October 3, 2011. After a two-week trial, the jury found that the Adiana system directly and indirectly infringed certain method claims of Conceptus's '361 patent and awarded $18,807,241 in damages. The insert itself was accused as well but it was found not to infringe in pretrial rulings. Two broad method claims were found to be infringed. Conceptus moves for a permanent injunction and to increase damages.

## ANALYSIS

### 1. PERMANENT INJUNCTION.

A patentee seeking a permanent injunction must make a four-part showing: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). There is no presumption of irreparable harm for patent infringement. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011).

#### A. Irreparable Injury.

"[T]he existence of a two-player market may well serve as a substantial ground for granting an injunction — for example, because it creates an inference that an infringing sale amounts to a lost sale for the patentee." *Bosch*, 659 F.3d at 1151.

2

Conceptus argues that it has suffered irreparable injury because its sole product Essure competes with Adiana in the two-supplier market of transcervical hysteroscopic sterilization, and Essure has lost market share in a market that is volatile and still developing.

It is undisputed that Hologic took market share away from Conceptus in the two-supplier market for transcervical hysteroscopic sterilization. Hologic's marketing strategy, in part, was to take away physicians using Essure because they were already trained in hysteroscopy (*see, e.g.*, TX 137 at 9980). This strategy siphoned off Conceptus's prior investments in creating the market for transcervical hysteroscopic sterilization. Prior to Adiana's launch, Essure was the only FDA-approved product in the market. But since Adiana's launch, Conceptus has had to compete. This led to loss of market share, loss of customers, and loss of access to potential customers. This is indicative of irreparable harm. *See Bosch*, 659 F.3d at 1153–54.

Essure is the core of Conceptus's business because it is the company's sole product. Harm to the core of a patentee's business also supports a finding of irreparable harm. *See Bosch*, 659 F.3d at 1152. This factor weighs in favor of a permanent injunction.

### B.     Adequate Remedy at Law.

Difficulty in estimating monetary damages is evidence that remedies at law are inadequate. *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010). Absent an injunction, Hologic plans to continue selling the Adiana system (Thayer Decl. ¶ 2, Exh. A). Conceptus argues that it has suffered and would continue to suffer non-financial harms that "defy attempts at valuation" such as "diverting its resources from expanding the market, loss of market share, and loss of morale" (Tr. 688–89). For example, Conceptus argues that its stock price would fall, which in turn would hurt its ability to attract and retain talented employees. Conceptus also argues that it has never licensed the '361 patent and would not do so. Furthermore, Conceptus argues that without injunctive relief, "it would take years and would cost Conceptus significant time and sums of money to bring another suit to recover for additional damages flowing from Hologic's [future infringement]" (Br. 10). This order disagrees.

As stated in an earlier order herein denying a preliminary injunction, "it will be reasonable and practical to estimate the extent of damages, given the track record over the last seven years.

3

If plaintiff prevails at trial, then damages will reparable and defendant will be able to respond to an award" (Dkt. No. 131 at 10). Conceptus does not argue that the jury verdict of $18 million in lost profits and twenty-percent royalty rate was incorrect. And it would disingenuous to do so because Conceptus's own expert argued for both amounts (Tr. 778). As for compensating past damages, the jury's lost profits award of $18 million was even higher than the reasonable royalty rate and directly compensated for losing sales to Adiana (*compare* Tr. 759 (lost profit calculation of $18 million) *with* Tr. 789–90 ($5.67 million in lost hypothetical royalties)). As for future damages, Conceptus's expert took into account Conceptus's investment to build the transcervical hysteroscopic sterilization market (Tr. 780–81) and the competitive nature of the parties (Tr. 783) in calculating the twenty-percent reasonable royalty rate.

Conceptus would not have to re-litigate the entire action if it sought to collect damages for the period after the last damages period litigated. And Conceptus does not dispute that Hologic can pay the judgment and ongoing damages. Because Conceptus can be adequately compensated for its harm, this factor weighs against a permanent injunction.

### C. The Balance of Hardships.

In addition to the harms already discussed, Conceptus argues that its hardship is exacerbated by the fact that it is a much smaller company with only one product. On the other side of the hardship scale, Conceptus argues that Hologic's hardship would not be great because it sells other products that provide greater revenue than Adiana does, and Hologic can continue to sell Adiana overseas. That is, Hologic's size and diverse product portfolio will allow it to better weather any hardship caused by an injunction.

Hologic argues that it would have to lay off nearly three hundred employees who are directly related to the manufacture and research of Adiana if an injunction is imposed (Petrovic Decl. ¶¶ 11–12). Furthermore, Hologic's investment in the development of the FDA-approved Adiana system, valued at $215 million, would be lost (*id.* at ¶¶ 13–16). Adiana is not a copycat product. It was independently developed and provides important advantages over Essure for patients.

4

Even though Hologic is a larger and more diversified company, it has identified substantial hardship that would occur if a permanent injunction is imposed. As discussed above, a monetary award for ongoing infringement will adequately compensate for Conceptus's harm. This factor weighs against a permanent injunction.

### D. The Public Interest.

The public interest would undoubtedly be harmed by an injunction. Enjoining the sale of Adiana would leave only one product for transcervical hysteroscopic sterilization. Public health has benefitted, and will continue to benefit, from having a choice of products for transcervical hysteroscopic sterilization. This is especially important because the products are different. Removing Adiana from the market would have eliminated an important alternative for patients.

Essure and Adiana are not interchangeable products and procedures. With Essure, there is a risk of perforations because of its long corkscrew-like tail. Evidence at trial also showed that some patients do not want Essure because it is metallic. For example, Essure is not available to patients who have nickel allergies. With Essure, there is a concern that the trailing coils could interfere with certain types of endometrial ablation procedures. There is also the possibility of pain after placement of Essure coils (TX 137 at 9976–78).

On the other hand, Adiana is not a metallic coil but is a small foam cylinder. It is not screwed into the fallopian tube. Instead, the fallopian tube is "burned" slightly by radiofrequency energy. As the tube heals, the healing tissue grows into the foam insert. The insert itself infringes nothing. The *procedure* for inserting it was found by the jury to infringe the *method* claims in suit. Nonetheless, the precise mechanism of action has important advantages over Essure, such as a non-metalic body, no risk of perforation, and use of radiofrequency energy.

In this action, the public benefit of having two products with different qualities in the transcervical hysteroscopic sterilization market militates strongly against an injunction.

Prior to and at the hearing, the Court offered Conceptus the possibility of receiving an ongoing royalty payment of twenty percent, the rate awarded by the jury, until a final decision on appeal. This would have been another factor militating against an injunction. Conceptus, however, rejected that royalty rate as inadequate to compensate for ongoing lost profits and stated

5

it would prefer to file a supplemental complaint and to seek lost profits. Therefore, Conceptus may file a supplemental complaint for damages. Payment of the twenty percent royalty will not be required. An injunction is not warranted in any event.

### 2. SUPPLEMENTAL DAMAGES AND INTEREST.

Pursuant to FRCP 59, Conceptus requests that the $18 million judgment be increased to award (1) supplemental damages after June 30, 2011, the last date in the calculation of past damages presented to the jury; (2) pre-judgment interest between July 2009 and October 18, 2011, the time between first infringement and judgment; and (3) post-judgment interest after October 18, 2011.

#### A. Supplemental Damages for Harm between July 1, 2011 and October 18, 2011.

The last month for which Hologic provided financial data to Conceptus's damages expert was June 2011. The jury's award of $18,807,241 represented compensation for Conceptus's lost profits between July 2009 through June 2011 (*see* Tr. 759). Conceptus is requesting supplemental damages from the time of the damages report to the end of trial.

As discussed above, Conceptus has rejected the jury's generous twenty percent royalty rate award for ongoing damages. At the recent hearing, Conceptus stated it would prefer to file a supplemental complaint and to seek lost profits. It may do so. Lost profits will not be awarded now. The parties will have to litigate damages beginning from the end of the prior damages period, June 2011, including a new trial on damages and a new royalty rate. The motion for supplemental damages is **DENIED**.

#### B. Motion for Pre-Judgment Interest Is Denied.

The district court has discretion to set the rate of pre-judgment interest. *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1580 (Fed. Cir. 1988). Pre-judgment interest should ordinarily extend "from the date of infringement to the date of judgment." *Nickson Indus., Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 800 (Fed. Cir. 1988). Here, the date of first infringement was July 6, 2009.

Conceptus requests $717,471 in pre-judgment interest, which is based on the prime rate, compounded annually (Elsten Decl. ¶ 3). Throughout the infringement period, Conceptus had

more than $18.8 million in debt at a rate higher than prime. Conceptus's debt, however, was incurred before the Adiana system was launched and unrelated to infringement. The jury award was generous enough. Motion for pre-judgment interest is **DENIED**.

### C. Conceptus Is Entitled to Post-Judgment Interest at the Statutory Rate.

Post-judgment interest is calculated from the date of judgment, at a rate equal to the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding. 28 U.S.C. 1961(a). Interest on any money judgment is "computed daily to the date of payment . . . and shall be compounded annually." 28 U.S.C. 1961.

Here, the applicable statutory rate is 0.11 percent, meaning about one-tenth of one percent. The daily post-judgment interest shall be calculated using the statutory rate, and the jury's damages award plus supplemental and pre-judgment interest. The post-judgment interest began accruing on October 18, 2011.

### CONCLUSION

For the reasons stated above, the motion for permanent injunction is **DENIED**. The motion for post-judgment interest, calculated in conformity with this order, is **GRANTED**. Motions for supplemental damages and pre-judgment interest are **DENIED.**

**IT IS SO ORDERED.**

Dated: January 9, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE